Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendant*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | ) | Case No. 23-217-ELG |
| | ) | |
| Charles Paxton Paret | ) | (Chapter 7) |
| | ) | |
| Debtor. | ) | |
| | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| | ) | |
| Charles Paret | ) | Adversary Case No. 23-10025-ELG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Daniel Huertas | ) | |
| | ) | |
| Defendant. | ) | |

## **MOTION TO DISMISS**

Comes now Daniel Huertas ("Mr. Huertas" or the "Defendant"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6), and moves this Honorable Court to dismiss the complaint (the "Complaint," as found at DE #1-1, pp. 1-5) filed by Charles Paxton Paret (the "Debtor"), and in support thereof state as follows:

1

**I.     Introduction**

The Debtor asserts that a District of Columbia statutory partnership, apparently implicating "in excess of $1,000,000,000.00 in total debt and equity," Complaint, DE #1-1, at ¶ 11, was formed by sending a one word e-mail. He asks this Honorable Court to disregard the plain language of the land records of the District of Columbia, finding that 13 separate properties in the city (together with one in the Commonwealth of Virginia) are assets of this partnership-by-email notwithstanding his inability to allege that any of the properties were ever owned by the putative partnership or subject to debt obligations held by the putative partnership. And in support of this proposition, he offers forth a scant 20 paragraphs of text.

The Complaint merits dismissal not merely because the assertions set forth therein would – if accepted – fundamentally upend real estate law dating to feudal Europe but, too, because (i) the allegations are so fantastical as to run afoul of governing Supreme Court precedent; and (ii) the allegations are so thin as to fail the rigors the Federal Rules of Civil Procedure. This is, at core, a nuisance case, and should be disposed of as such.

**II.    Standard**

As recently observed by the United States District Court for the District of Columbia, "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357–58 (D. D.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (quoting *Iqbal*, 556 U.S. at

678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating a motion to dismiss, "the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions." *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).

### III.  Debtor's Allegations

The Debtor instantly alleges[1] that he entered into a statutory partnership with Mr. Huertas when, on September 20, 2019, he responded to an e-mail from Mr. Huertas by typing "Agree." Complaint, DE #1-1, at ¶ 9. The terms, *vel non*, of that partnership are claimed to have been laid out in a prior digital missive from Mr. Huertas. *Id.* at ¶ 8. The prior missive is not entirely clear but, upon multiple readings, appears to suggest that (i) Mr. Huertas will provide limited financing for the development of real estate; (ii) Mr. Paret will be "responsible solely for all debt obligations" prior to the date of the e-mail; and (iii) Mr. Paret will not "incur any additional debt or loans." *Id.*

---

[1] The Defendant accept certain allegations as true for the express and limited purpose of this motion. Any reference to the Complaint's allegations herein, even if devoid of an accompanying use of the word "alleged" or similar verbiage, ought not be construed as an admission of any assertions contained in the Complaint.

3

A plain reading of the text does not suggest the creation of a joint venture or partnership, so much as an agreement that (a) Mr. Huertas will facilitate the loaning of funds to third party projects, provided Mr. Paret also furnish funds to the projects; and (b) Mr. Huertas will condition his provision of capital to these projects upon significant financial oversight. *Id.*

The Debtor then alleges this "partnership" covers some 14 properties. *Id.* at 14.

### IV. Facts Not Alleged in the Complaint

The remarkably brevity of the Complaint is telling. The Debtor uses 20 paragraphs to assert a $1,000,000,000.00 partnership – roughly $50 million per paragraph. And some emphasis is thusly well placed on what is *not* alleged in the Complaint:

1. The Debtor never alleges the putative partnership purchased any real estate.

2. The Debtor never alleges the putative partnership loaned any monies.

3. The Debtor never alleges Mr. Huertas personally loaned any monies.

4. The Debtor never alleges he personally loaned any monies.

5. The Debtor never alleges Mr. Huertas personally made any capital contributions.

6. The Debtor never alleges he personally made any capital contributions.

7. The Debtor never alleges the putative partnership held any monies.

8. The Debtor never alleges the putative partnership filed tax returns as a partnership.

9. The Debtor never alleges he received a Form K-1 from the putative partnership.

10. The Debtor never alleges the putative partnership obtained a federal taxpayer identification number.

11. The Debtor never alleges the putative partnership opened any bank, credit union, or escrow accounts.

V.   **Argument: The Complaint Fails the Plausibility Standard of *Iqbal***

It is, quite simply, not plausible to surmise that a $1 billion dollar partnership was formed through (i) the sending of a five sentence e-mail; and (ii) the sending of a one word response thereto. The Complaint appears to be focused on loans made by WCP Fund I LLC and/or 1Sharpe Opportunity Intermediate Trust, Complaint, DE #1, at ¶ 11,[2] yet does not allege either entity to be a party to the putative partnership. And there is accordingly a core issue afoot, inasmuch as the Complaint is simultaneously so thin and so outlandish as to be non-plausible on its face.

As noted by the Supreme Court, "determining whether a complaint states a plausible claim is context specific, requiring the **reviewing court to draw on its experience and common sense**." *Iqbal*, 556 U.S. at 663–64 (citing *Twombly*, 550 U.S. at 556) (emphasis added). *See also, Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) ("We must draw on our experience and common sense in evaluating the plausibility of a claim.") (citing *Iqbal*, 556 U.S. at 679).

Here, the Complaint does not allege the putative partnership ever purchased property, financed property, loaned monies, received income, or did much of anything else. The Debtor, rather, takes an enormous – and ultimately-fatal – leap from (i) alleging the *ipso facto* formation of a partnership; to (ii) alleging "properties involving the partnership," Complaint, DE #1-1, at ¶ 14, without ever alleging how or why those properties "involve" the alleged partnership.

To be sure, there must be something more. By way of intentionally-hyperbolic example, someone could e-mail an old college friend about forming a partnership that involves the Brooklyn Bridge, the Bay Bridge, and the Golden Gate Bridge, but that would not create an economic interest

---

[2] Upon information and belief, 1Sharpe Opportunity Intermediate Trust is not a direct lender, as surmised in paragraph 12 of the Complaint. As noted *supra*, however, the allegations of the Complaint are accepted as true for the sole and limited purpose of this Motion.

in any of those bridges, the tolls they collect, the improvements they undertake, or the sale of artwork in which they are featured. There is, necessarily, a middle link – a need for the partnership to actually acquire an interest in property (real or personal, tangible or intangible), and to thereby be something more than a legal stranger to the target(s) of its formation.

This is not a hypothetical or purely academic qualm. Mr. Paret cannot allege the partnership ever acquired buildings or land, financed loans, or did anything else, precisely because the fictitious partnership did not. Indeed, it would appear that the Debtor cannot so much as allege he acquired assets or financed debt for the benefit of the partnership since, again, he did not. The same goes for Mr. Huertas. Yes – the Debtor is believed to hold an individual interest in various limited liability companies that may have engaged in financial activity, but that is a far cry from him doing so himself, just as Mr. Huertas' interest in a company that facilitates loans is different than Mr. Huertas personally lending monies.

Under District of Columbia law, "[a] limited liability company is an entity distinct from its member or members." D.C. Code § 29-801.04(a). The Debtor appears unable to allege that either he or Mr. Huertas ever undertook any activity outside the confines of limited liability companies – entities that, per the foregoing statute, are legally distinct from the Debtor and Mr. Huertas. And there is accordingly an enormous gap in the subject pleading.

This gap is, of course, buttressed by the bigger issue: what the Complaint suggests is, quite palpably, implausible, if not downright fantastical. It is essential that the Debtor plead the various actions of the alleged partnership precisely because his suggestion that Mr. Huertas – a sophisticated local businessman – would enter into a $1 billion partnership, through an e-mail and a one word response thereto, is simply not believable. The notion that a partnership to develop significant chunks of urban real estate was formed in such a haphazard manner simply belies this

6

Honorable Court's "experience and common sense." *Iqbal*, 556 U.S. at 663–64. And dismissal is accordingly appropriate.

### VI. Conclusion

WHEREFORE, the Defendant respectfully prays this Honorable Court (i) dismiss the Complaint with prejudice; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: September 8, 2023      By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendant*

*[Certificate of Service on Following Page]*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of September, 2023, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to:

Donald M. Temple, Esq.
1310 L Street, NW
Suite 750
Washington, DC 20005
*Counsel for the Plaintiff*

I FURTHER CERTIFY that a copy of the foregoing is being sent, of even date herewith, via first class mail, postage prepaid, to:

Wendell W. Webster, Esq.
1101 Connecticut Avenue, NW
Suite 402
Washington, DC 20036

Charles Paxton Paret
1140 3rd Street, NE
Suite 2152
Washington, DC 20002

Charles Paxton Paret
343 First Street
Berryville, Virginia 22611

Donald M. Temple, Esq.
1310 L Street, NW
Suite 750
Washington, DC 20005

/s/ Maurice B. VerStandig
Maurice B. VerStandig