**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

In re:

CHARLES PAXTON PARET,

Debtor.

Case No. 23-217-ELG

Chapter 11

CHARLES PAXTON PARET
Address
Address

Plaintiff

v.

DANIEL HUERTAS
Address
Address

and

WASHINGTON CAPITAL PARTNERS
Serve: General Partner
852 Trotting Court
Great Falls, VA, 22066

and

DP CAPITAL, LLC
Serve: Russell Drazin, Resident Agent
4400 Jennifer street, NW, Suite 2
Washington, DC 20015

and

PARET-HUERTAS PARTNERSHIP
Address
Address

Defendants

Adv. Proc. 23-10025-ELG

## SECOND AMENDED COMPLAINT

COMES NOW Plaintiff, Charles Paxton Paret ("Plaintiff"), by and through the undersigned counsel and hereby files this Second Amended Complaint seeking declaratory and other relief against the Defendants.

## THE PARTIES

1. Plaintiff, Charles Paxton Paret ("Paret'), was at all times referenced herein a real estate developer involved in the purchase and renovation of multiple properties in DC. He is the Debtor in the immediate bankruptcy. Plaintiff is a resident of the Commonwealth of Virginia.
2. Defendant, Daniel Huertas ("Huertas"), is a resident of the Commonwealth of Virginia. At all times referenced herein, Huertas was the only member of Washington Capital Partners, its Chief Executive Officer ("CEO"), and controlled all the WCP Entities ("WCP") [1]. He is also the principal and only member of DP Capital, LLC ("DP Capital").
3. Defendant WCP is an indispensable party and direct beneficiary of Defendant Huertas partnership engagement with Plaintiff Debtor Paret.
4. Defendant DP Capital is an entity formed by Daniel Huertas.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1334.
6. Venue is proper under 28 U.S.C. § 1409.
7. The matter has been removed to the United States Bankruptcy Court from the D.C. Superior Court.

---

[1] WCP FUND I, LLC ("WCP Fund I"), is a Delaware limited liability company that engages in a lending business in D.C. and is a related company to Washington Capital Partners ("WCP"). It funds WCP.

## FACTS COMMON TO ALL CLAIMS

8. This claim involves the asserted establishment of common law partnership between Huertas and Paret (hereafter the "Huertas-Paret Partnership" or the "Partnership") partnership based upon Paret's significant portfolio of properties which amounted to tens of millions of dollars.

9. The real properties (the "Properties") acquired by or comprising the Partnership include the following:

| Property Address | Purchase Price |
|---|---|
| 1736-1738 Montello Ave NE Washington DC | $ 1,463,222.00 |
| 431 Kennedy St NW | $ 1,526,314.00 |
| 433 Kennedy St NW | $ 1,542,000.00 |
| 419-423 Kennedy St. NW | $ 3,564,882.00 |
| 5412 1st St. NW | $ 1,201,028.00 |
| 729 Kennedy St. NW | $ 1,101,827.00 |
| 429 Kennedy St NW | $ 1,514,984.63 |
| 5501-5505 1st St. NW & 67-71 Kennedy St NW | $ 4,238,888.00 |
| 2507 I St. NW | $ 1,365,000.00 |
| 159 Fairfield Lane | $ 2,068,000.00 |
| 1471 Girard St. NW | $ 2,426,500.00 |
| 1732-1738 Trinidad Ave NE | $ 1,500,000.00 |
| 5419 1st St. NW | $ 3,200,000.00 |
| 1260 Holbrook Terrace NE | $ 1,100,000.00 |
| 1262 Holbrook Terrace NE | $ 750,000.00 |
| 4910 Georgia Ave NW | $ 3,740,000.00 |
| 1264-1268 Holbrook Terrace NE | $ 1,350,000.00 |
| 1249 Bladensburg Rd NE | $ 1,250,000.00 |
| 107 Rhode Island Ave NW | $ 1,250,000.00 |
| 205 West Madison St | $ 1,400,000.00 |
| 1619 Swann St NW | $ 1,500,000.00 |
| 1216 Raum St NE | $ 850,000.00 |
| 2449 P St NW | $ 1,500,000.00 |
| 201-203 Kennedy St NW | $ 1,350,000.00 |
| **Total:** | **$ 42,752,645.63** |

10. Based upon 2018-2021 WCP appraisals and fees in support of related loans, the estimated Total After Renovated Value ("ARV") of the Properties is approximately $180,220,000 which does not include recent appreciation. See **Exhibit A**, attached hereto.

11. Huertas contemplated the Paret-Huertas partnership in the months just prior to September 2019 to redevelop the Properties to achieve increased and competitive marketable ARVs.

12. Defendant Huertas created the partnership's terms and expectations which were mutually agreed upon by the parties' words, deeds, and expressed intentions.

13. Prior to September 20, 2019, Defendant Huertas enjoyed liberal access to capital from WCP and WCP Fund I for real estate acquisition and development purposes by way of a Master Agreement.

14. Defendant Huertas became aware of Paret's real estate dealings and potentially lucrative portfolio from earlier communications with Paret about certain real estate investment opportunities and his interest in borrowing funds from WCP.

15. As a result of Paret's loan application disclosures Huertas self-servingly gleaned an opportunity for himself to jointly acquire Paret's multiple properties located in the District of Columbia and share equity and profit on Paret's property portfolio once the potentially lucrative properties were renovated.

16. In September 2019 Huertas communicated his partnership intentions in writing to Paret. See **Exhibit B** attached hereto.

17. Once the ongoing Partnership was clarified and additional properties identified, Huertas used his position and decision-making authority in WCP to, among other things, selectively facilitate and approve multiple loans for the Properties, forego interest

payments on certain of these loans in order to maximize his leverage and the Properties' competitive redevelopment to their highest ARVs.

18. The fact that Huertas and WCP selectively refrained from collecting interest on certain loans made after formulating the Partnership, coupled with the low or no monetary down payments demonstrates Huertas' decision making in favor of his newly formed Partnership outside of WCP's standard policies, procedures, and practices.

19. DP Capital, an entity exclusively owned by Huertas, participated in multiple loan transactions initiated by Paret as the second note holder and original trustee on Deeds of Trust in order to protect his ownership stake in the Partnership. It also serviced WCP's loans to Paret and participated in the decision and action to default them.

20. The Partnership articulated, developed and approved by Huertas achieved his objective of acquiring interests in Paret's growing real estate portfolio.

21. On September 20, 2019, at 2:54 PM Huertas effectuated the partnership with Paret. He penned an email which in his own words confirmed their agreement:

> Here is further confirmation that by providing the below capital including future capital to the partnership, *this is debt that will be split 51% Daniel Huertas, 49% Charles Paret. Charles Paret will manage day to day operation of all projects (construction, development, stabilization*) including in this email. ***Daniel Huertas will manage all financial aspects related to capital, partnerships, ventures and will have final word related to execution of the real estate. Charles Paret is responsible solely for all debt obligations prior to 9/20/19. (payments) Charles Paret is not going to incur any additional debt or loans against real estate attached to this email or any purchases of any additional real estate.*** Please return with agree and confirm that we will operate as such. (Emphasis added).
>
> See Exhibit C and its attachment at Exhibit C.1 attached hereto.

22. Consistent with Huertas' instruction and offer, on September 20, 2019 Paret replied and confirmed: "Agree." The parties acted consistent therewith as a Partnership.

23. On September 30, 2019, in furtherance of the agreed upon Partnership, Huertas penned an additional confirmatory partnership e-mail to Paret as follows:

Charlie –

Please see attached payment requests. By Daniel Huertas and/or companies paying the attached invoices for properties, Daniel Huertas will have 50% ownership of the properties and 51% in regard of control. Any other partnership set by Charles Paret will be taking from his side. ***The payments here are a loan to the partnership at 10% APR. Before any distribution is provided, the partnership needs to pay all amounts paid here.*** (Emphasis added).

- 429 Kennedy (#5068) - $4,030.16
- 433 Kennedy (#5120) - $4,182.80
- 4910 Georgia Ave (#5607) $13,339.91[2]

See **Exhibit ______**, attached hereto.

24. In his September 30, 2019, e-mail Huertas confirmed his intent and understanding of the Partnership's consummation, stating: "any other partnerships set by Charles Paret will be taking from his side." Huertas thereby acknowledged the existence of the parties' respective Partnership interests.

25. Paret responded – and agreed. The parties acted consistent with the articulated Huertas-Paret Partnership thereafter as stated in the combined September 20, 2019, and September 30, 2019, emails.

26. During the next several years Paret handled the day-to-day Partnership's real estate operations. Huertas managed its financial aspects and enjoyed final approval of matters related to capital, partnerships, and ventures. Huertas did not collect interest on multiple approved WCP construction and renovation loans to Paret for several years following the Partnership agreement.

---

[2] Subsequent to the September partnership formation Huertas approved loans involving several properties including, but not limited to, 1249 Bladensburg Road, NE, 4910 Georgia Avenue, NW, and 1260 Holbrook Terrace NW, among others. Interest obligations for the loan were Huertas' responsibility.

27. Huertas used DP Capital as a vehicle to facilitate loans to Paret and simultaneously, camouflage his interest in the Partnership from WCP Fund I. Upon information and belief, the Master Agreement between WCP, Fund I, WCP, and DP Capital did not disclose Defendant's September 2019 Partnership discussions and agreement with Paret.

28. In 2020 and 2021 the COVID outbreak negatively impacted the real estate market and restricted bank lending which influenced the deterioration of the Huertas-Paret Partnership and business relationship, but not its dissolution.

29. Huertas acted as a servicer for WCP by way of DP Capital.

30. DP Capital initiated and/or participated in collection actions against either Paret (or entities that he formed) while Paret's interest in these entities remained in partnership with Huertas and served as Trustee on the Deed of Trusts.

31. Between 2022 and 2023 DP Capital, owned exclusively by Huertas, instituted multiple foreclosures on the very properties owned by the Huertas-Paret Partnership.

32. In the process, Huertas and DP Capital foreclosed upon Partnership-owned properties for well below market value, in certain instances high-valued properties, for approximately $10,000.00 and often not revealing the true cost and value of the asset therefore lowering the tax assessed value.

33. As a partner Huertas and DP's actions on behalf of the Partnership's creditors were averse to the Partnership's interest; his simultaneously wearing of *both creditor and debtor hats* in foreclosure transactions related to the Partnership's property portfolio constituted one or more breaches of his duty of loyalty to the partnership. Huertas effectively used his dual position/status simultaneously as creditor and debtor to acquire exclusive ownership of properties in which he initially enjoyed a partnership interest.

34. As a partner in the Huertas-Paret Partnership, Huertas enjoyed equal, if not full, responsibility for the Partnership's debt obligation

35. Consistent with applicable D.C. partnership law, the Partnership should be dissolved, and this Court should require an appropriate accounting to assess its assets and liabilities, and further establish a constructive trust.

**COUNT I**
**DECLARATORY JUDGMENT**

36. All of the foregoing allegations are incorporated by reference as if set forth in full herein.

37. "While the partnership relation has been variously defined, traditionally it is formed when two or more competent persons contract to place their money, effects, labor, and skill or some or all of them, in lawful commerce or business, and to divide profit and bear the loss in certain proportions." Beckman v. Farmer, 579 A.2d 618, 622 (D.C. Ct. App. 1990).

38. Under the D.C. Uniform Partnership Act at D.C. Code § 29-602.029(a), "the association of two (2) or more persons to carry on as co-owners of a business for profit shall form a partnership."

39. Notably, the test for determining the existence of a partnership is an objective one. Courts generally look for precise indicia such as the writings, as here, between Plaintiff and Defendant Huertas to show a partnership including, but not limited to, profit sharing, joint control, and capital contributions. See Beckman, 579 A.2d at 619-622.

40. The communications, intentions, and actions regarding the operation of a real estate business for profit between Plaintiff and Defendant Huertas, as spelled out in the September 20, 2019, and September 30, 2019, e-mails attached hereto, among other extensive financial/real estate dealings, establishes the existence of a business partnership.

WHEREFORE, Paret seeks a declaratory judgment, to wit, that the parties created and entered into a partnership agreement and relationship under D.C. law.

**COUNT II**
**BREACH OF FIDUCIARY DUTY**

41. All of the foregoing allegations are incorporated by reference as if set forth in full herein.

42. At all times as stated herein, Huertas entered into a partnership with Paret that was neither terminated nor dissolved. All of Paret's purchases through his LLC or otherwise after September 20, 2019 became properties owned, partly or fully, by the Partnership.

43. Additionally, Huertas acted adversely to the Huertas-Paret Partnership by organizing DP Capital to leverage his interests in the partnership and making executive decisions as the CEO of WCP to determine defaults and institute foreclosures,

44. Huertas instituted or caused foreclosures of partnership properties in order to acquire exclusive ownership interests in the real estate initially acquired via the partnership.

45. As Paret's partner, Huertas duty of loyalty required him among other things to:

> (1) account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity;
>
> (2) refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership; and
>
> (3) refrain from competing with the partnership in the conduct of the partnership business before dissolution of the partnership.
>
> D.C. Code § 29-604.07(b)(1)-(3).

46. Defendant Huertas' simultaneous actions as creditor and borrower, servicer and trustee, among other things, frustrated the Partnership and made it economically impractical to continue pursuant to D.C. Code § 29.608.1 (5).

47. Defendant Huertas, if not all Defendants, are precluded from acting adversely to the partnership's interests. See 11 USC § 303.

48. Huertas appropriated Huertas-Paret Partnership opportunities and properties through DP Capital and WCP's adverse collection actions and foreclosures against partnership owned properties.

49. Based on the foregoing, Defendant Huertas breached his duty of loyalty to Plaintiff as his partner, and to the Partnership.

50. As a result of Defendants' intentional, malicious and willful actions Plaintiff has suffered economic damages of $5,000,000.00.

51. Plaintiff asserts that punitive damages against the Defendants in the amount of $5,000,000.00 should be awarded based on Defendants' egregious, willful, and malicious conduct and the public policy interest in discouraging such conduct.

52. Given the status and legal issues regarding the Huertas-Paret Partnership, a careful winding up process via a court ordered dissolution and resolution of certain legal, factual, and financial debt/equity issues is mandated.

WHEREFORE, Plaintiff urges this court to enter an order (i) finding the Defendants liable for compensatory damages of $5,000,000.00; (ii) finding the Defendants liable for punitive damages in the amount of $5,000,000.00; (iii) dissolving the Partnership as required by statute; (iv) establishing a constructive trust for all Partnership assets and liabilities; and for such other and further relief deemed just and equitable.

**COUNT III**
**ACCOUNTING**

53. All of the foregoing allegations are incorporated by reference as if set forth in full herein.

54. The Partnership involved numerous Properties, transactions, loans and foreclosures over a period of years.

55. The number and complexity of these transactions justifies an accounting under D.C. law. See Landise v. Mauro, 141 A.3d 1067, 1073-1074 ; see also Beckman, 579 A.2d at 649-650.

56. Accounting is an equitable remedy intended to fairly apportion partners' respective interests in an enterprise before dissolution.

57. Plaintiff, as a partner in the Partnership, seeks a complete and detailed audit and accounting regarding the Partnership's assets and liabilities.

WHEREFORE, Plaintiff asks this court to enter an order for an accounting of all financial transactions involving Partnership properties from September 2019 through the date of this Second Amended Complaint.

## COUNT IV
## CONSTRUCTIVE TRUST

58. All of the foregoing allegations are incorporated by reference as if set forth in full herein.

59. Paret contributed the Properties to the Partnership in good faither pursuant to the terms of the Huertas-Paret partnership agreement and relationship.

60. Huertas took advantage of his position with WCP and DP Capital to acquire title to the Properties in breach of his fiduciary partnership and other duties to the Plaintiff and to the Partnership.

61. Equity demands that all property so appropriated be returned to the Partnership prior to court-administered dissolution to determine the rights and obligations of the parties.

62. A constructive trust is an equitable remedy to establish a fair and orderly determination of the parties' respective interests in the Partnership.

63. Plaintiff seeks establishment of a constructive trust over all Partnership Properties, assets and liabilities.

WHEREFORE, Plaintiff urges this court to enter an order (i) establishing a constructive trust over all Partnership Properties, assets and liabilities and (ii) conveying all trust property to the Partnership prior to court-administered dissolution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff urges this court to declare judgment as follows:

A. That the parties formed a partnership in, around or prior to September 2019 under D.C. law and that said Huertas-Paret Partnership should be dissolved;

B. That an audit and accounting of acquired Huertas-Paret Partnership owned properties should be conducted;

C. That a constructive trust be established pertinent to all Partnership assets and liabilities consistent with D.C. law;

D. That the trustee of the constructive trust transfer all Partnership Property to the trust;

E. That Defendants be enjoined from acting in a manner adverse to the Partnership's interest;

F. That Defendant Huertas breached his duty of loyalty to Paret pursuant to which Paret seeks the following relief:

  i. Compensatory and economic damages in excess of $5,000,000.00;

  ii. Punitive damages, where appropriate, in excess of $5,000,000.00;

    iii. Such equitable and other relief as the Court deems just and proper, including that claimants DP Capital (owned by Huertas) and WCP (controlled by Huertas) are not "undisputed" claimants as per Section 303 of the Bankruptcy Code; and

iv. Attorney fees and costs, where appropriate.

**JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

Date: March 1, 2024

Charles Paxton Paret

By counsel

/s/ Jeffery T. Martin, Jr.
Jeffery T. Martin, Jr., VA Bar #71860
John E. Reid, DC Bar #473541
Martin Law Group, P.C.
8065 Leesburg Pike, Suite 750
Vienna, VA 22182
703-834-5550 Office
Jeff@martinlawgroupva.com
Jack@martinlawgroupva.com
Counsel for the Plaintiff

## CERTIFICATION OF SERVICE

I certify that on this 1st day of March, 2024, a true and correct copy of the foregoing was filed electronically with the Court through the ECF filing system with notice being automatically provided to all those entitled to receive the same.

/s/ Jeffery T. Martin, Jr.
Jeffery T. Martin, Jr.

# EXHIBIT A

| Property Address | Total Debt / Acquisition Costs | Asset Class | Unit Count | EB5 or OZ Zone - APPROVED YES / NO | Hard and Soft Costs | ARV | Phase | Notes |
|---|---|---|---|---|---|---|---|---|
| 1736-1738 Montello Ave NE Washington DC | $ 1,463,222.00 | Condos | 12.00 | | $ 1,750,000.00 | $ 4,500,000.00 | P2 - Pre-Development | Currently need to pay velocity and then ready to build |
| 431 Kennedy St NW | $ 1,526,314.00 | Condos | 19.00 | | $ 3,500,000.00 | $ 8,500,000.00 | P2 - Pre-Development | Need to Take Out Susan Hepner Eventually |
| 635 East Main St. | $ 425,000.00 | Retail / Shared Commercial Kitchen | None | | $ 575,000.00 | $ 3,500,000.00 | P2 - Pre-Development | Need to Take Out Susan Hepner Eventually |
| 433 Kennedy St NW | $ 1,542,000.00 | Condos | 19.00 | | $ 3,500,000.00 | $ 8,500,000.00 | P2 - Pre-Development | Capital Bank in place here, this we can work with |
| 419-423 Kennedy St. NW | $ 3,564,882.00 | Condos/Mixed Use | 33.00 | | $ 7,500,000.00 | $ 16,650,000.00 | P3 - Construction | Loan ready to go for construction |
| 5412 1st St. NW | $ 1,201,028.00 | Condos | 16.00 | | $ 3,000,000.00 | $ 6,500,000.00 | P2 - Pre-Development | Can take out Ryan and develop this into condos |
| 326-340 First St. | $ 1,800,000.00 | Brewery / Industrial / Cidery Manufacturing | N/A | YES | $ 4,500,000.00 | $ 12,000,000.00 | P2 - Pre-Development | Currently being used as staging for Construction |
| 729 Kennedy St. NW | $ 1,101,827.00 | Condos | 12.00 | YES | $ 1,900,000.00 | $ 4,000,000.00 | P2 - Pre-Development | Opportunity Zone Site |
| 429 Kennedy St NW | $ 1,514,984.63 | Condos | 19.00 | | $ 3,500,000.00 | $ 8,500,000.00 | P2 - Pre-Development | Need to be refinanced by end of month - key to all three buildings |
| 5501-5505 1st St. NW & 67-71 Kennedy St NW | $ 4,238,888.00 | Condos/Mixed Use | 48.00 | YES | $ 1,350,000.00 | $ 29,000,000.00 | P2 - Pre-Development | Need To Restructure and Hold, Revenue will support longer term hold |
| 2507 I St. NW | $ 1,365,000.00 | Single Family Estate | 1.00 | | $ 990,000.00 | $ 2,750,000.00 | P2 - Pre-Development | Single Family To Sell |
| 159 Fairfield Lane | $ 2,068,000.00 | Hotel and Restaurant and Shooting Club | 65.00 | YES | $ 7,500,000.00 | $ 22,000,000.00 | P2 - Pre-Development | Still finishing overall landscape plan and overall hotel |
| 1471 Girard St. NW | $ 2,426,500.00 | Condos | 4.00 | | $ - | $ 3,100,000.00 | P4 - Stabilization | Corporate Housing Rentals |
| 1732-1738 Trinidad Ave NE | $ 1,500,000.00 | Co-Living / Apartments | 24.00 | | $ 750,000.00 | $ 4,500,000.00 | P4 - Stabilization | Almost Complete - Weeks Away |
| 5419 1st st NW | $ 3,200,000.00 | Co-Living / Apartments / Mixed Use | 24.00 | | | $ 5,000,000.00 | P4 - Stabilization | 24 Bed Co-Living with Commercial |
| 208 first St | $ 1,250,000.00 | Hotel | 110.00 | YES | $ - | $ - | P0 - Under Contract | 2 Year Close - $50,000 deposit paid |
| 1260 Holbrook Terrace NE | $ 1,100,000.00 | Co-Living / Apartments | 15.00 | | $ 900,000.00 | $ 3,750,000.00 | P4 - Stabilization | 6 Units ( 15 Beds) - Co Living |
| 1262 Holbrook Terrace NE | $ 750,000.00 | Condos | 3.00 | | $ 650,000.00 | $ 1,900,000.00 | P3 - Construction | Under Construction |
| 4910 Georgia Ave NW | $ 3,740,000.00 | Condos | 47.00 | | $ 8,000,000.00 | $ 16,000,000.00 | P3 - Construction | Under Construction, but need to finish Debt Funding |
| 1264-1268 Holbrook Terrace NE | $ 1,350,000.00 | Condos | 7.00 | | $ 2,100,000.00 | $ 5,320,000.00 | P3 - Construction | Under Construction |
| 1249 Bladensburg Rd NE | $ 1,250,000.00 | Condos | 20.00 | | $ 2,200,000.00 | $ 5,500,000.00 | P3 - Construction | Under Construction |
| 107 Rhode Island Ave NW | $ 1,250,000.00 | Hotel and Restaurant | 48.00 | | $ 950,000.00 | $3,850,000 | P3 - Construction | Under Construction |
| 205 West Madison St | $ 1,400,000.00 | Hotel and Restaurant | 220.00 | | $ 3,500,000.00 | $12,000,000 | P2 - Pre-Development | Under Construction |
| 1619 Swann St NW | $ 1,500,000.00 | Condos | 3.00 | | $ 750,000.00 | $ 3,000,000.00 | P3 - Construction | Under Construction - Corporate Housing |
| 1216 Raum St NE | $ 850,000.00 | Student Apartments | 24.00 | | $ 750,000.00 | $ 2,400,000.00 | P3 - Construction | 24 Bed Co-Living |
| 2449 P St NW | $ 1,500,000.00 | Condos | 3.00 | | $ 575,000.00 | $ 2,850,000.00 | P3 - Construction | Under Construction - Corporate Housing |
| 201-203 Kennedy St NW | $ 1,350,000.00 | Condos / Mixed Use | 9.00 | | $ 2,000,000.00 | $ 5,350,000.00 | P0 - Under Contract | $75,000 Deposit Paid |
| 123-127 Kennedy St NW | $ 3,100,000.00 | Multi-Family Development - Co-Living | 83.00 | | $ 7,780,000.00 | $ 14,880,000.00 | P0 - Under Contract | $150,000 Deposit Paid |
| Total: | $ 49,327,645.63 | Total Unit Count | 888.00 | | $ 70,470,000.00 | $ 215,800,000.00 | | |

| | |
|---|---|
| Total Purchase Price | $ 49,327,645.63 |
| Total Construction Costs | $ 70,470,000.00 |
| Total Costs | $ 119,797,645.63 |
| Total After Renovated Value | $ 215,800,000.00 |
| **Total GP Value \| Equity Value** | **$ 96,002,354.37** |

# EXHIBIT B

Gmail

Charles Paret <cpp@paxtonandco.com

**'artnership**

message

**aniel Huertas** <daniel@wcp.team>
: Charles Paret <cpp@colomariver.com>

Fri, Sep 20, 2019 at 2:54 PI

Received Charlie.

Here is further confirmation that by providing the below capital including future capital to the partnership, this is debt that will be split 51% Daniel Huertas, 49% Charles Paret.

Charles Paret will manage day to day operation of all projects (construction, development, stabilization) including in this email.

Daniel Huertas will manage all financial aspects related to capital, partnerships, ventures and will have final word related to execution of the real estate.

Charles Paret is responsible solely for all debt and obligations prior to 9/20/19. (payments)

Charles Paret is not going to incur any additional debt or loans against real estate attached to this email or any purchase of any additional real estate.

Please return with Agree and confirm that we will operate as such.

Daniel Huertas | CEO
Washington Capital Partners
www.washingtoncapitalpartners.com
2815 Hartland Road, Suite 200

CP_000774

From: **Daniel Huertas** <daniel@wcp.team>
Date: Mon, Sep 30, 2019 at 3:10 PM
Subject: FW: Past Due Payments for Charles Paret
To: Charles Paret <cpp@colomariver.com>

Charlie –

Please see attached payment requests.

By Daniel Huertas and/or companies paying the attached invoices for properties, Daniel Huertas will have 50% ownership of the properties and 51% in regards of control. Any other partnerships set by Charles Paret will be taking from his side.

The payments here are a loan to the partnership at 10% APR. Before any distribution is provided, the partnership needs to pay all amounts paid here.

- 429 Kennedy (#5068) – $4,030.16
- 433 Kennedy (#5120) -- $4,182.80
- 4910 Georgia Ave (#5607) -- $13,339.91

Please reply to this email in agreement and confirm

Thanks

Daniel

Daniel Huertas | CEO
Washington Capital Partners
www.washingtoncapitalpartners.com
2815 Hartland Road, Suite 200
Falls Church, VA, 22043
+1 7037275464

*This message and its attachments contain confidential information. If you are not the intended recipient of this message, you should not disseminate, distribute or copy this e this e-mail by mistake and delete it from your system.*

**From:** Paul Merritt <pmerritt@capitalbankmd.com>
**Sent:** Monday, September 30, 2019 2:50 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Subject:** FW: Past Due Payments for Charles Paret
**Importance:** High