## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CHARLES PAXTON PARET, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| CHARLES PAXTON PARET, | ) | |
| | ) | Adv. Case No. 23-10025-ELG |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL HUERTAS, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Daniel Huertas and*
*DP Capital LLC d/b/a Washington*
*Capital Partners*

## <u>**TABLE OF CONTENTS**</u>

I.      Introduction ................................................................................................................. 1

II.     Standard: Motion to Dismiss ..................................................................................... 3

III.    Standard: Motion for Summary Judgment.................................................................. 4

IV.     Facts Not Subject to Genuine Dispute ....................................................................... 5

V.      Argument: The Complaint Does Not State a Claim for Relief ................................. 14

      a.   Temporal Impossibility .................................................................................. 16

      b.   Mr. Paret is Ignoring Governing Corporate Law .......................................... 17

      c.   Lack of Sufficient Factual Pleading............................................................... 18

VI.     Argument: No Claim is Stated Against DPCL ......................................................... 23

VII.    Argument: Accounting, Declaratory Relief and the Creation of a
        Constructive Trust are Not Causes of Action ........................................................... 24

VIII.   Argument: Mr. Paret Cannot Sue the Putative Partnership ..................................... 26

IX.     Argument: The Claim for Breach of Fiduciary Duty Merits Dismissal
        or Entry of Summary Judgment................................................................................ 27

      a.   Mr. Paret is Conflating Statutory Provisions ................................................ 27

      b.   Mr. Paret Does Not – and Cannot – Allege Damages, Instead
        Pleading Activities that Caused a Benefit (the Opposite of Damages) .......... 29

X.      Argument: The Declaratory Judgment Claim is Moot .............................................. 30

XI.     Conclusion ............................................................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ali v. Rumsfeld*,
649 F.3d 762 (D.C. Cir. 2011) ................................................................................................ 25

*Anderson v. Liberty Lobby, Inc*.,
477 U.S. 242 (1986) .................................................................................................................. 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................ 3, 15

*Associated Indus. Ins. Co. v. Mt. Hawley Ins. Co*.,
2021 WL 1921016 (S.D. Cal. 2021) ......................................................................................... 5

*Bates v. Nw. Human Servs., Inc.*,
466 F.Supp.2d 69 (D.D.C. 2006) ..................................................................................... 24, 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................ 3, 15

*Branin v. TMC Enterprises, LLC*,
832 F. Supp. 2d 646 (W.D. Va. 2011) ...................................................................................... 4

*Brooks v. Mentor Worldwide LLC*,
985 F.3d 1272 (10th Cir. 2021) .............................................................................................. 15

*Browning v. Clinton*,
292 F.3d 235 (D.C. Cir. 2002) .................................................................................................. 4

*C & E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*,
310 F.3d 197 (D.C. Cir. 2002) ................................................................................................ 25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................................................. 5

*Chin-Teh Hsu v. New Mighty U.S. Tr.*,
2020 WL 588322 (D.D.C. Feb. 6, 2020) ................................................................................ 25

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,
436 F. Supp. 3d 354 (D. D.C. 2020) .................................................................................... 3, 4

*Conley v. Gibson*,
355 U.S. 41 (1957) .................................................................................................................... 3

*Day v. Avery*,
548 F.2d 1018 (D.C. Cir. 1976) .............................................................................................. 27

*Day v. Sidley & Austin*,
394 F. Supp. 986 (D.D.C. 1975) ................................................................. 26, 27

*Diamond v. Atwood*,
43 F.3d 1538 (D.C. Cir. 1995) ........................................................................ 5

*Dorsey v. Am. Express Co.*,
680 F. Supp. 2d 250 (D.D.C. 2010) ............................................................... 30

*Dupree v. Walker*,
1988 WL 112157 (D.D.C. Oct. 13, 1988) ................................................. 26, 27

*Fennell v. Bache*,
123 F.2d 905 (D.C. 1941) .............................................................................. 26

*Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*,
2010 WL 2732334 (D. Md. 2010) .................................................................... 4

*Fitts v. Fed. Nat. Mortg. Ass'n*,
44 F. Supp. 2d 317 (D.D.C. 1999) .................................................................. 25

*Folksamerica Reinsurance Co. v. Republic Ins. Co.*,
2004 WL 1043086 (S.D. N.Y. 2004) ................................................................ 5

*Haynes v. Navy Fed. Credit Union*,
52 F.Supp.3d 1 (D.D.C. 2014) .................................................................. 24, 25

*Holcomb v. Powell*,
433 F.3d 889 (D.C. Cir. 2006) ......................................................................... 5

*Kiviti v. Bhatt*,
80 F.4th 520 (4th Cir. 2023) .......................................................................... 31

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994) ......................................................................... 4

*KPMG Fin. Advisory Services Ltd. v. Diligence LLC*,
2006 WL 335768 (D.D.C. Feb. 14, 2006) ..................................................... 23

*Macharia v. United States*,
238 F. Supp. 2d 13 (D.D.C. 2002) ................................................................. 25

*Martin v. Santorini Capital, LLC*,
236 A.3d 386 (D.C. 2020) .............................................................................. 17

*Matson v. Mackubin*,
57 F.2d 941 (D.C. 1932) ............................................................................ 26

*Mayflower Hotel Stockholders v. Mayflower Hotel Corp.*,
73 F.Supp. 721 (D.D.C. 1947) .................................................................... 26

*Mayorga v. Merdon*,
928 F.3d 84 (D.C. Cir. 2019) ....................................................................... 5

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ................................................................................... 31

*National Ass'n for Community Development v. Hodgson*,
356 F. Supp. 1399 (D.D.C. 1973) ............................................................... 26

*Paul v. Judicial Watch, Inc.*,
543 F.Supp.2d 1 (D.D.C. 2008) .................................................................. 30

*Quinn v. Kreindler & Kreindler*,
2023 WL 2351734 (D.D.C. Mar. 3, 2023) .................................................. 24

*Robinson v. Am. Honda Motor Co.*,
551 F.3d 218 (4th Cir. 2009) ....................................................................... 4

*Schilling v. Rogers*,
363 U.S. 666 (1960) ................................................................................... 25

*Skelly Oil Co. v. Phillips Petroleum Co.*,
339 U.S. 667 (1950) ................................................................................... 25

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
809 F.2d 626 (9th Cir. 1987) ....................................................................... 5

*Tinsley v. OneWest Bank, FSB*,
4 F. Supp. 3d 805 (S.D. W. Va. 2014) ........................................................ 4

*United States v. BCCI Holdings*,
46 F.3d 1185 (D.C. Cir. 1995) ................................................................... 25

*W. Maryland Ry. Co. v. Harbor Ins. Co.*,
910 F.2d 960 (D.C. Cir. 1990) ................................................................... 23

*Wallasey Tenants Ass'n, Inc. v. Varner*,
892 A.2d 1135 (D.C. 2006) ....................................................................... 17

v

*Weiner v. Klais and Co., Inc.*,
108 F.3d 86 (6th Cir. 1997) ............................................................... 25

*Wilson v. On the Rise Enterprises, LLC*,
305 F. Supp. 3d 5 (D.D.C. 2018) .................................................. 24, 25

*Wyoming Outdoor Council v. Dombeck*,
148 F.Supp.2d 1 (D.D.C. 2001) ............................................................ 5

**Statutes**
28 U.S.C. § 2201 ................................................................ 25, 26, 31

D.C. Code § 29-604.07 ............................................................... 27, 28

D.C. Code § 29-608.01 ................................................................... 29

D.C. Code § 29-801.04 ................................................................... 17

D.C. Code § 42-301 ..................................................................... 21

D.C. Code § 42-306 ..................................................................... 21

**Other Authorities**
Michele Lerner, *1768 Virginia estate with ties to George Washington's
family set for auction*, WASHINGTON POST, May 4, 2017 ......................... 10

The Princess Bride (20th Century Fox 1987) ............................................. 23

**Rules**
Federal Rule of Bankruptcy Procedure 7012 ............................................. 1

Federal Rule of Bankruptcy Procedure 7056 ............................................. 1

Federal Rule of Civil Procedure 8 ..................................................... 3

Federal Rule of Civil Procedure 12 .................................................. 1, 3

Federal Rule of Civil Procedure 19 ................................................ 23, 24

Federal Rule of Civil Procedure 56 ............................................... 1, 4, 5

Come now Daniel Huertas ("Mr. Huertas") and DP Capital LLC d/b/a Washington Capital Partners ("DPCL") (collectively, the "Defendants" and each a "Defendant"),[1] by and through undersigned counsel, pursuant to Federal Rules of Bankruptcy Procedure 7012 and 7056, and Federal Rules of Civil Procedure 12(b) and 56, and move this Honorable Court to (i) dismiss the above-captioned action or, in the alternative, (ii) to enter summary judgment in favor of the Defendants, and in support thereof states as follows:

## I.    Introduction

The Second Amended Complaint (the "Complaint," as found at DE #14) merits dismissal – or resolution by way of summary judgment – for a litany of reasons. While this is the third effort of Charles Paret ("Mr. Paret" or the "Debtor") to bring a claim against Mr. Huertas, the current iteration bodes no better than its predecessors. The pleading wants for clarity, with a scattered and perplexing presentation symptomatic not of poor drafting abilities but, rather, of a seeming attempt to mask the Complaint's myriad failures of a both legal and factual nature.

Three of the four causes of action in the pleading are, as a matter of law, not causes of action. Under District of Columbia law, one cannot sue for an "accounting" or for the imposition of a construct trust. These are remedies, not claims. And, equally, while the federal statutory framework does recognize that declaratory judgments may be issued, case law is exacting in instructing that such is still not a stand-alone cause of action, with such claims requiring joinder to freestanding entitlements to judicial relief.

---

[1] The Second Amended Complaint (the "Complaint," as found at DE #14) purports to also state a claim against "Paret-Huertas Partnership," which is headquartered at "Address, Address." Complaint, DE #14, at p. 1. This partnership does not exist. Inasmuch as the entity does not exist, undersigned counsel does not purport to represent the fictitious entity and references herein to the "Defendants" ought not be construed as being inclusive of the fictitious entity except where contextually necessary.

The fourth cause of action – breach of fiduciary duty – appears to be moored to a statute that expressly does *not* give rise to relief in tort. Rather, Mr. Paret is apparently conflating the statutory scheme governing the duties of partnership members with the statutory criteria for the dissolution of a partnership, seeking to use the provisions of one statute to petition for relief under the other statute. And, even if that innate flaw were overlooked, the Complaint seems to inadvertently allege facts that demonstrate the highest fidelity to a faux partnership and the bestowing of palpable economic benefits thereupon – not facts that show a breach of any such duty.

The facts, though, may be the biggest problem. Aside from alleging facts in a manner that is facially difficult to credit, Mr. Paret has elected to allege facts that, upon the simplest searches of public records, are shown to be outright fictions. This whole case is premised upon a supposed partnership acquiring 24 parcels of real property; a barebones search of the land and tax records shows that neither the alleged partnership nor either of its putative members ever owned so much as one of those 24 properties.

The facts are muddled elsewhere, too. Mr. Paret asserts that Mr. Huertas formed DPCL as a side company to facilitate Mr. Huertas' participation in the aforementioned alleged partnership, going so far as to have DPCL then enter into a "Master Agreement" with Washington Capital Partners in furtherance of the partnership. But a quick search of public records shows DPCL was formed almost a decade before the alleged partnership. And an equally quick search of public records calls into question the ability of DPCL to enter into a "Master Agreement" with Washington Capital Partners since the latter is simply a registered trade name of the former. If DPCL and Washington Capital Partners were natural persons, they could never be seen in the same room at the same time.

At core, the Complaint is a desperate ploy from a desperate man in a desperate circumstance. Mr. Paret is a career conman who has, for years, used his interpersonal warmth and abiding charisma to take money from others. DPCL is one of his victims, as are any number of other venerable Washington, DC institutions and families. This adversary proceeding appears to be his last-gasp effort to keep the con alive, giving Mr. Paret a foundation to tell his other victims that the money will soon enough be coming. But neither the Complaint nor the publicly-available facts permit this adversary proceeding to venture any further. And it is accordingly appropriate to either dismiss this case or to enter summary judgment in favor of the Defendants.

## II.    Standard: Motion to Dismiss

As recently observed by the United States District Court for the District of Columbia, "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357–58 (D. D.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

3

In evaluating a motion to dismiss, "the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions." *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).

Further, while assessment of a motion to dismiss is generally confined to the four corners of an underlying pleading, "the court may consider documents extrinsic to the complaint if they are 'integral to and explicitly relied on in the complaint' and if there is no dispute as to their authenticity." *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014) (citing *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23 (4th Cir. 2009); *Branin v. TMC Enterprises, LLC*, 832 F. Supp. 2d 646, 649 (W.D. Va. 2011); *Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 2010 WL 2732334, at *2 n. 2 (D. Md. 2010)).

### III.    Standard: Motion for Summary Judgment

The standard for a motion seeking summary judgment is familiarly set forth in the Federal Rules of Civil Procedure:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

As noted by the United States District Court for the District of Columbia, of the rule governing summary judgment:

> Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. To determine what facts are "material," a court must look to the substantive law on which each claim rests. A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. All evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party. However, a nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the ultimate burden of proof at trial." By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.

*Wyoming Outdoor Council v. Dombeck*, 148 F. Supp. 2d 1, 7 (D.D.C. 2001) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); quoting *Anderson*, 477 U.S. at 255; *Celotex*, 477 U.S. at 325).

As observed by the United States Court of Appeals for the District of Columbia Circuit, "[a] fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Mayorga v. Merdon*, 928 F.3d 84, 89 (D.C. Cir. 2019) (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). *See also*, *Folksamerica Reinsurance Co. v. Republic Ins. Co.*, 2004 WL 1043086, at *2 (S.D. N.Y. 2004) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment."); *Associated Indus. Ins. Co. v. Mt. Hawley Ins. Co*., 2021 WL 1921016, at *3 (S.D. Cal. 2021) ("Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.") (quoting *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)).

## IV.    Facts Not Subject to Genuine Dispute

1.    Charles Paxton Paret ("Mr. Paret" or the "Debtor") has brought suit against DP Capital LLC and Washington Capital Partners, but the two entities are one and the same, with

Washington Capital Partners being the registered trade name of DP Capital LLC. *See* Virginia State Corporation Commission Record, attached hereto as Exhibit 1.

2.        As discussed *infra*, Mr. Paret's claims center on a partnership (the "Putative Partnership") allegedly formed in September 2019, with Mr. Paret alleging that Mr. Huertas "organiz[ed] DP Capital to leverage his interests in the partnership…" Complaint, DE #14, at ¶ 43. But DPCL was formed nearly nine years earlier, on November 12, 2010. *See* Virginia State Corporation Commission Record, attached hereto as Exhibit 1. In fact, a simple search of the records of this Honorable Court reveals that DPCL was a creditor in a case as far back as January 9, 2017, *In re Vision Investment LLC*, Case No. 17-12-ELG, and was actually a named litigant in an adversary proceeding as far back as December 27, 2017, *Vision Investment LLC v. DP Capital LLC*, Case No. 17-10039-SMT.

3.        The Debtor alleges that some 24 properties, all but two being situated in the District of Columbia, were "acquired by or comprising" the Putative Partnership. Complaint, DE #14, at ¶ 9. Yet a search of District of Columbia land records reveals that at no time has any real property – let alone any of the parcels enumerated by the Debtor – been owned by "Paret-Huertas Partnership," "Charles Paret," or "Daniel Huertas." *See* Search Records, appended hereto as Exhibits 2, 3, and 4.[2]

4.        The first property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 1736-1738 Montello Ave., NE, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by DP 1736 Montello Avenue NE, LLC. *See* Tax Records,

---

[2] As noted on Exhibit D, Mr. Huertas' name is associated with a single deed, which he executed in his capacity as "Managing Member of Crosswind Capital, LLC" on December 30, 2011. There does not exist any record of Mr. Huertas ever personally purchasing – or owning – property in the District of Columbia. This lone deed was executed nearly eight years before Mr. Paret claims the Putative Partnership was formed.

attached hereto as Exhibit 5. A review of land records shows the property was previously owned by 1736 Montello Ave Holdings LLC, Robinson Precious, Bankers Trust Company, Fred T. Gheen, Jesus Salinas, and Money Shoppe Inc. *See* Land Records, attached hereto as Exhibit 6. At no time has that property been owned by any party to this lawsuit. *Id.*

5.      The second property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 431 Kennedy St., NW, Washington, DC. *See* Complaint, DE #14, at ¶ 9. No such property is recognized as a tax parcel in the District of Columbia. *See* Tax Records, attached hereto as Exhibit 7.

6.      The third property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 433 Kennedy St., NW, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by WCP 433 Kennedy St NW LLC. *See* Tax Records, attached hereto as Exhibit 8. A review of land records shows the property was previously owned by REO 433 Kennedy St NW LLC, 433 Kennedy St Holdings LLC, Michelle Smith, Emily M. Fornof, Ronald W. Macinnis, and Marcia Bradley. *See* Tax Records, attached hereto as Exhibit 9.

7.      The fourth property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 419-423 Kennedy St., NW, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by 423 Kennedy St Holdings LLC. *See* Tax Records, attached hereto as Exhibit 10. A review of land records shows the property was previously owned by 423 Kennedy St NW LLC, Furman Davis Jr., the Secretary of Housing and Urban Development, Mark Anthony Braxton, the Estate of Paul L. Limbert, Paul L. Limbert, James L. Beasley, and George Brodsky. *See* Tax Records, attached hereto as Exhibit 11.

8.      The fifth property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 5412 1st St., NW, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That

property is presently owned by WCP 5412 1st Street LLC. *See* Tax Records, attached hereto as Exhibit 12. A review of land records shows the property was previously owned by 1S 5412 1st Street LLC, 5412 1st St Holdings LLC, 5412 1st St NW LLC, Bryan A. Smith, Roberta H. Batey, Beatrice H. Smith, Jean Gray, Cornelia P. Grady, and Helen B. Prince. *See* Tax Records, attached hereto as Exhibit 13.

9.      The sixth property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 729 Kennedy St., NW, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by 729 Kennedy St Holdings LLC. *See* Tax Records, attached hereto as Exhibit 14. A review of land records shows the property was previously owned by Adam Eig, Jose Alvarado, Miguel A Herrera Ventura, Jose V. Portillo, Allfirst Bank, John E. Renwick, Gaylord H. Curry, Geneva D. Curry, Jopseph P. Vito, Jefferson Construction Co Inc., and Anna C. Beckett. *See* Tax Records, attached hereto as Exhibit 15.

10.     The seventh property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 429 Kennedy St., NW, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by Cunningham Apartments LLC. *See* Tax Records, attached hereto as Exhibit 16.[3] A review of land records shows the property was previously owned by 429 Kennedy St Holdings LLC, Renee Jones-Perry, Linda V. McLean, Daniel P. Clark, the Federal Housing Commissioner, Gail M. Hartmann, John E. Schneider, C. William Gray, Kennedy Construction Co. Inc, and Louis Guglielmo. *See* Tax Records, attached hereto as Exhibit 17.

---

[3] The principal of Cunningham Apartments LLC is Richard Cunningham ("Mr. Cunningham"). Mr. Cunningham is also the principal of not less than 14 other entities that have been debtors in this Honorable Court, including Archway Real Estate Holdings II, LLC – an entity represented by Mr. Paret's counsel. *See* Case No. 23-293-ELG.

11.    The eighth property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 5501-5505 1st St., NW and 67-71 Kennedy St. NW, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by Developer RE1 LLC. *See* Tax Records, attached hereto as Exhibit 18. A review of land records shows the property was previously owned by 5505 1st St Holdings LLC, Lemlem W. Debelie, EHB Holdings LLC Series 643, Lakeisha Cook, Charles M. Cook, Robert D. Elliott Jr., Harry C. Messner, Joseph L. Batleman, James William Whybrew, Wilbert L. Anderson, Mae Whybrew, Dorothy H. Jones, Eleanor Morell, Gustave A. Morell, Louise C. Morell, Claude L. Dawson, and Helen I. Moore. *See* Tax Records, attached hereto as Exhibit 19.

12.    The ninth property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 2507 I St, NW, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by 2507 I St Holdings LLC. *See* Tax Records, attached hereto as Exhibit 20. A review of land records shows the property was previously owned by Phyllis L. Johnson, David Kevin Johnson, Florence Folkers Johnson, Angeline James, Philip Goldstein, Samiel James, James E. Bigger, and Sue K. Harrison. *See* Tax Records, attached hereto as Exhibit 21.

13.    The tenth property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 159 Fairfield Lane. *See* Complaint, DE #14, at ¶ 9. The Debtor has not specified the city or state for this property but, upon reasonably inquiry, the only such property proximate to the District of Columbia is located in Berryville, Virginia. That property is presently owned by Fairfield LLC. *See* Property Records, attached hereto as Exhibit 22. A review of records

9

shows the property was previously owned by Valley Ventured Fund 2 LLC, Fairfield Farm LLC,

Fairfield Farm Land Trust and Peggy Ewing Richardson. *Id*.[4]

14.     The eleventh property the Debtor alleges to have been "acquired by or comprising"

the Putative Partnership is 1471 Girard St., NW, Washington, DC. *See* Complaint, DE #14, at ¶ 9.

That property is presently owned by DP 1471 Girard Street LLC. *See* Tax Records, attached hereto

as Exhibit 23. A review of land records shows the property was previously owned by Glenn C.

Nye, Cheryl J. Dobbins, James W. Scott-Cora, Dorrel Goldman, Carolyn Cecilia Cotton, Anna M.

Masino, Frank Marascio, James J. White, and Annie Shapero. *See* Tax Records, attached hereto as

Exhibit 24.

15.     The twelfth property the Debtor alleges to have been "acquired by or comprising"

the Putative Partnership is 1732-1738 Trinidad Ave., NE, Washington, DC. *See* Complaint, DE

#14, at ¶ 9. That property is presently owned by 1732-36 Trinidad LLC. *See* Tax Records, attached

hereto as Exhibit 25. A review of land records shows the property was previously owned by Ocaso

Holdings, LLC; Vision Investment LLC; Sonship Evangelist Church Center; Shirly C. Lewis;

Trinidad Avenue, N.E. Associates; Basil Gogos; and Lynn Deckelbaum. *See* Tax Records,

attached hereto as Exhibit 26.

16.     The thirteenth property the Debtor alleges to have been "acquired by or

comprising" the Putative Partnership is 5419 1st St., NW, Washington, DC. *See* Complaint, DE

#14, at ¶ 9. That property is presently owned by WCP 5419 1st Street LLC. *See* Tax Records,

attached hereto as Exhibit 27. A review of land records shows the property was previously owned

---

[4] It is believed there is a longer ownership history, immaterial to the temporal horizon of this case, that likely includes George Washington's first cousin, Warner Washington. *See* Michele Lerner, *1768 Virginia estate with ties to George Washington's family set for auction*, WASHINGTON POST, May 4, 2017. The second owner was the aunt of Robert E. Lee. *Id.*

by 5419 First Street NW DC LLC, Siem S. Abebe. Gashaw G. Kersima, Kennan F. McKenzie, Damon L. Redmond, Delores J. Johnson, Leroy Johnson, Redstart Corporation, Irving Dann, Betty Chassen, and Morris Lenin, attached hereto as Exhibit 28.

17.     The fourteenth property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 1260 Holbrook Terrace, NE, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by 1260 Holbrook Holdings LLC. *See* Tax Records, attached hereto as Exhibit 29. A review of land records shows the property was previously owned by Isiah Foskey, Elvert Barnes, Jesse E. Aiken, John Joe McCoole, Benjamin Haynes Aiken, and Herminia H. Aiken. *See* Tax Records, attached hereto as Exhibit 30.

18.     The fifteenth property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 1262 Holbrook Terrace, NE, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by DP 1262 Holbrook Terrace LLC. *See* Tax Records, attached hereto as Exhibit 31. A review of land records shows the property was previously owned by 1262 Holbrook Terr LLC and 1262 Holbrook Holdings LLC. *See* Tax Records, attached hereto as Exhibit 32.

19.     The sixteenth property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 4910 Georgia Ave., NW, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by WCP 4910 Georgia Ave NE LLC. *See* Tax Records, attached hereto as Exhibit 33. A review of land records shows the property was previously owned by SF 4910 Georgia Ave NW LLC, 4910 Georgia Ave Holdings LLC, 4910 Georgia Ave LLC, Christine Cokinos, John G. Katinas, Diane K. Burnes, John N. Deoudes 2011 Trust, and John N. Deoudes. *See* Tax Records, attached hereto as Exhibit 34.

20.     The seventeenth property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 1264-1268 Holbrook Terrace, NE, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by DP 1264-1268 Holbrook Terrace LLC. *See* Tax Records, attached hereto as Exhibit 35. A review of land records shows the property was previously owned by 1264 Holbrook Holdings LLC, MD Homes 1264-8 Holbrook LLC, and Equity Trust Company Custodian FBO Z106020 IRA. *See* Tax Records, attached hereto as Exhibit 36.

21.     The eighteenth property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 1249 Bladensburg Rd., NE, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by DP Capital REO I LLC. *See* Tax Records, attached hereto as Exhibit 37. A review of land records shows the property was previously owned by 1249 Bladensburg Rd Holdings LLC and 1249 Bladensburg LLC. *See* Tax Records, attached hereto as Exhibit 38.

22.     The nineteenth property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 107 Rhode Island Avenue, NW, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by WCP 107 Rhode Island Avenue LLC. *See* Tax Records, attached hereto as Exhibit 39. A review of land records shows the property was previously owned by RI Holdings LLC, 107 Rhode Island Ave NW LLC, Wells Fargo Bank, the Secretary of Housing and Urban Development, Dennis T. Comer, James R. Davis Jr., Eugene Broadwater, Rose Broadwater, Larry D. Quillian, Howard Bernstein, Sarah V. Miles, Walter R. Middleton, Mendota Investments Inc., Omega Psi Phi Fraternity, and Clarence L. Carroll. *See* Tax Records, attached hereto as Exhibit 40.

23.     The twentieth property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 205 W. Madison Street. *See* Complaint, DE #14, at ¶ 9. Though a city and state are not specified, it appears this property is located in Baltimore, Maryland. That property is presently owned by 205 West Madison LLC. *See* Tax Records, attached hereto as Exhibit 41. A review of land records shows the property was previously owned by Karis Inc. *See* Tax Records, attached hereto as Exhibit 42.

24.     The twenty-first property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 1619 Swann St., NW, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by 1619 Swan LLC, with individual units thereof being owned by Jade A. Pech and Julianne C. North. *See* Tax Records, attached hereto as Exhibit 43. A review of land records shows the property was previously owned by Christopher John Spevak Revocable Living Trust, Christopher J. Spevak, Patricia Antonisse, Patrice A. Cramer, Joanne K. Cabry, Albert Tiemann, Lucille F. Tiemann, Ernest M. Aiken, Washington Housing Corporation, Elizabeth D. Trout, E. M. Aiken, and Francis W. Brandenburg. *See* Tax Records, attached hereto as Exhibit 44.

25.     The twenty-second property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 1216 Raum St., NE, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by 1216 Raum LLC. *See* Tax Records, attached hereto as Exhibit 45. A review of land records shows the property was previously owned by 1216 Raum St NE LLC, Fiti LLC and Decon Group LLC. *See* Tax Records, attached hereto as Exhibit 46.

26.     The twenty-third property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 2449 P Street, NW, Washington, DC. *See* Complaint, DE

#14, at ¶ 9. That property is presently owned by WCP Fund I LLC. *See* Tax Records, attached hereto as Exhibit 47. A review of land records shows the property was previously owned by 2449 P Street NW LLC, Thomas A. Spiegel, Ruby De H. Acree, Louveinia Pollard, and James E. Bigger. *See* Tax Records, attached hereto as Exhibit 48.

27.      The twenty-fourth property the Debtor alleges to have been "acquired by or comprising" the Putative Partnership is 201-204 Kennedy Street, NW, Washington, DC. *See* Complaint, DE #14, at ¶ 9. That property is presently owned by 201 Kennedy St Holdings LLC, with one unit thereof being owned by S&M Real Estate LLC. *See* Tax Records, attached hereto as Exhibit 49. A review of land records shows the property was previously owned by 201-203 Kennedy St NW LLC, B&G Smith Family Trust, Karla S. Lomax, Bert/Gwendolyn Smith Family Trust, Bert W. Smith Jr., Gwendolyn G. Smith, William S. Farris, Georgia R. Farris, Edward R. Early, Evelyn Miller, Minnie Miller, Joseph Miller, Waple and James Incorporated, Philip J. Bayne, and Bathurst L. Chambliss. *See* Tax Records, attached hereto as Exhibit 50.

28.      Of the 24 enumerated properties, none have ever been owned by the Putative Partnership, Mr. Paret, Mr. Huertas, or DPCL. Only one of them has ever been owned by WCP Fund I LLC (an entity referenced in the Complaint on multiple occasions). Yet, somehow, Mr. Paret maintains these assets are *all* former or current assets of the Putative Partnership.

**V.      Argument: The Complaint Does Not State a Claim for Relief**

The Debtor's contentions *sub judice* are focused on the Putative Partnership but, upon several readings of the Complaint, it is altogether unclear what the Debtor alleges the Putative Partnership to have actually done. The Debtor rattles off the aforementioned list of 24 assets – none of which were ever owned by the Debtor, the Putative Partnership, or any party hereto – and then announces, *ipso facto*, the Putative Partnership "acquir[ed] interests in Paret's growing real estate portfolio." Complaint, DE #14, at ¶ 20. Yet the Complaint never actually alleges just how

14

this could be, and most certainly does not do so in a way that satisfies the plausibility standard of *Iqbal* and *Twombly*.

As noted by the Supreme Court, "determining whether a complaint states a plausible claim is context specific, requiring the **reviewing court to draw on its experience and common sense**." *Iqbal*, 556 U.S. at 663–64 (citing *Twombly*, 550 U.S. at 556) (emphasis added). *See also, Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) ("We must draw on our experience and common sense in evaluating the plausibility of a claim.") (citing *Iqbal*, 556 U.S. at 679).

Assuming, *arguendo* and solely for purposes of this motion, that there actually existed a partnership, the Complaint does nothing to inform what the partnership actually undertook. It is clear the Putative Partnership never owned any real estate. It is clear neither Mr. Paret nor Mr. Huertas ever owned real estate in their own name, for the benefit of the Putative Partnership. Mr. Paret never alleges the Putative Partnership to have been capitalized with monies that were then loaned to third parties. Nor does Mr. Paret ever allege the Putative Partnership to have ever been in the contracting business and used its resources to improve any of the aforementioned properties.

The Defendants do not dispute that Mr. Huertas is the principal of DPCL (and of WCP Fund I LLC). And, while never alleged in the Complaint, they also do not dispute that either DPCL or WCP Fund I LLC have some relationship to the special purpose entities enumerated as currently owning some of the 24 properties, where such entities begin with "WCP" or "DP." (Of course, the majority of the properties listed by Mr. Paret are not now – and never were – owned by any such special purpose entities.) But that does not nearly render the Complaint plausible. Rather, the traditional corporate structures only render the Complaint *less* plausible.

### a.  Temporal Impossibility

The Complaint alleges the Putative Partnership was between Mr. Huertas and Mr. Paret. Complaint, DE #14, at ¶ 8. The Complaint also alleges Mr. Huertas is the sole member of DPCL and controls WCP Fund I LLC. *Id.* at ¶ 2. Mr. Paret, in turn, theorizes that DPCL was "organiz[ed] DP Capital to leverage his interests in the partnership," *Id.* at ¶ 43, and that Mr. Huertas "used [DPCL] as a vehicle to facilitate loans to Paret and simultaneously, camouflage his interest in the Partnership from WCP Fund I," *Id.* at ¶ 27. The theory continues, "the Master Agreement between WCP, Fund I, WCP,[5] and [DPCL] did not disclose Defendant's September 2019 Partnership discussions and agreement with Paret." *Id.* at ¶ 27.

As a starting point, the foregoing allegation is difficult to unpack, if only because "Defendant" is not a defined term. It appears the Debtor is referring to Mr. Huertas, but since the Complaint never actually states a claim for relief against the other defendants (as touched upon below), it is genuinely not clear when Mr. Paret is referring to Mr. Huertas and when Mr. Paret is referring to DPCL or the Putative Partnership.

Assuming, however, that Mr. Paret is alleging Mr. Huertas (i) formed DPCL "to leverage his interests in the" Putative Partership; and then (ii) concealed the Putative Partnership when having DPCL enter into a Master Agreement (another undefined term) with WCP Fund I LLC, such is simply not plausible. As noted *supra*, DPCL was formed in 2010 and was a party to

---

[5] [sic]

litigation in this Honorable Court as far back as 2017. Mr. Paret alleges the Putative Partnership

was formed in 2019. The whole theory is thusly a temporal impossibility.[6]

### b.  Mr. Paret is Ignoring Governing Corporate Law

The next plausibility issue is significantly greater. Mr. Paret insists the Putative Partnership

is with Mr. Huertas. But, as noted *passim*, Mr. Huertas does not actually own any of the subject

properties and never has. Nor has Mr. Huertas personally loaned monies to any of the property

owners. Nor has Mr. Huertas personally swung a hammer on any of the property locales or carried

on as a contractor. So a partnership with Mr. Huertas, even if somehow established, would not

actually get Mr. Paret much of anything.

DPCL and WCP Fund I LLC are both limited liability companies. Under District of

Columbia law, "LLC members, like corporate shareholders, own an interest in an LLC; they are

not the LLC nor do they own an LLC's property." *Martin v. Santorini Capital, LLC*, 236 A.3d 386,

394 (D.C. 2020) (citing *Wallasey Tenants Ass'n, Inc. v. Varner*, 892 A.2d 1135, 1141 n. 3 (D.C.

2006)). Indeed, "[a] limited liability company is an entity distinct from its member or members."

D.C. Code § 29-801.04(a).

Yet even if, somehow, Mr. Paret could end run the foregoing statutory mandate and case

law, and somehow conflate Mr. Huertas with DPCL or WCP Fund I LLC, such would still not get

him much of anywhere, inasmuch as none of the properties are owned – or have ever been owned

– by DPCL, and only one of the properties is owned by WCP Fund I LLC (which is not a party to

this action). Rather, Mr. Paret would have to somehow allege he had a partnership with the special

---

[6] It would not have been difficult for Mr. Paret to investigate when DPCL was formed, before
filing a federal lawsuit against DPCL. A simple search of Virginia's records or PACER would
have turned up this fact. Even a search of PACER for undersigned counsel – who is known to
represent WCP Fund I LLC and DPCL in bankruptcy proceedings – would have turned up this
fact.

purpose entities created by DPCL and/or WCP Fund I LLC: DP 1736 Montello Avenue NE, LLC; DP 1471 Girard Street LLC; DP 1262 Holbrook Terrace LLC; DP 1264-1268 Holbrook Terrace LLC; DP Capital REO I LLC; WCP 433 Kennedy St NW LLC; WCP 5412 1st Street LLC; WCP 5419 1st Street LLC; WCP 4910 Georgia Ave NE LLC; and WCP 107 Rhode Island Avenue LLC. Since he has not so much as identified any of these special purpose entities in his Complaint (with this being the third iteration of his Complaint), it is safe to surmise he is not making such an allegation. And, of course, for him to try to amend and make such an allegation, he would need a good faith basis to assert that these entities are wholly owned by DPCL or WCP Fund I LLC and not, instead, owned largely (if not entirely) by third party lenders and investors – a good faith basis Mr. Paret most certainly does not have.

### c.  Lack of Sufficient Factual Pleading

Yet another problem stems from the Complaint: it is altogether unclear what exactly Mr. Paret is alleging. It is clear he says he entered into a partnership with Mr. Huertas, but that is where the clarity begins and ends. The core allegations of the pleading are a scant 35 paragraphs; nowhere in those assertions may be found a functional understanding of what the Debtor alleges to be afoot.

The Complaint's allegations are essentially as follows, with palpably liberal construction being afforded to Mr. Paret in the interests of trying to decipher a document that otherwise wants for lucidity:

1.    Mr. Paret is a contractor; Mr. Huertas controls DPCL and WCP Fund I LLC; and DPCL is somehow a "direct beneficiary" of the Putative Partnership. Complaint, DE #14, at ¶¶ 1-4.

2.    Jurisdiction and venue are proper. *Id.* at ¶¶ 5-7.

3.      Mr. Paret has (or, perhaps, had) a "significant portfolio of properties which amounted to tens of millions of dollars," being comprised of the real estate assets discussed in Section IV, *supra*, and those assets are worth just over $180 million. *Id.* at ¶¶ 8-10.

4.      Mr. Huertas conceived of the Putative Partnership to realize value in the already-valuable properties, "created the partnership's terms and expectations" (none of which are ever alleged), had "liberal access to capital" from DPCL and WCP Fund I LLC, learned about Mr. Paret's vast real estate holdings from a loan application, and then "self-servingly gleaned an opportunity for himself to jointly acquire Paret's multiple properties located in the District of Columbia and share equity and profit on Paret's property portfolio once the potentially lucrative properties were renovated." *Id.* at ¶¶ 11-15.

5.      The Putative Partnership was established through some markedly brief e-mails and Mr. Huertas then used his role at DPCL to approve loans on favorable terms, forbear from collecting interest, and waive (or diminish) downpayment requirements, all apparently in contravention of "WCP's standard policies, procedures, and practices" (with none of those policies, procedures or practices being alleged or cited), as DPCL participated in loan transactions as a lender and/or servicer. *Id.* at ¶¶ 16-19.

6.      The Putative Partnership acquired interests in Mr. Paret's various properties (though, as noted *supra*, land records belie this contention), another short e-mail was sent, Mr. Paret consummated the partnership (apparently after it acquired all of these properties) by sending a one-word e-mail, and then another e-mail – identified as "Exhibit ___" and not appended to the Complaint, was sent. *Id.* at ¶¶ 20-23.

7.      If Mr. Paret wanted to enter into other partnerships, they would be "taking from his side," which was fine by Mr. Paret, and Mr. Paret then handled real estate operations, while Mr.

Paret handled financial matters, for a series of *years*, as evidenced by Mr. Huertas not collecting interest during the COVID-19 pandemic (even though it is not alleged Mr. Huertas personally made any loans). *Id.* at ¶¶ 24-26, 30.

8.    Mr. Paret formed DPCL to "camouflage" the Putative Partnership, operated in violation of a "Master Agreement" between DPCL and WCP Fund I LLC, and used DPCL to service loans for DPCL.[7] *Id.* at ¶¶ 27, 29, 43.

9.    The COVID-19 pandemic hurt the real estate market and caused the Putative Partnership to deteriorate. *Id.* at ¶ 28.

10.    DPCL took collection actions against Mr. Paret and entities that he (not the Putative Partnership) formed, foreclosing various assets and often seeing foreclosure auctions fetch meager prices. *Id.* at ¶¶ 30-32.

11.    Mr. Huertas took these actions on behalf of "the Partnership's creditors" (who are never identified since the Partnership never owned any real estate), sitting on both sides of foreclosure transactions despite his personal joint ("if not full") liability for the debts. *Id.* at ¶¶ 33-34.

12.    The Putative Partnership "should be dissolved." *Id.* at ¶ 35.

These allegations become more confusing with each reading. It appears Mr. Paret is alleging the Putative Partnership owned real estate, loaned money, was obligated to pay money, and acted as a developer. Yet none of these assertions are plausible.

Addressing, first, the alleged ownership of real estate: as noted *passim*, the Putative Partnership never owned any real estate. And, critically, the District of Columbia Code provides,

---

[7] Not a typo – as noted *supra*, Washington Capital Partners is a trade name for DP Capital LLC; Mr. Paret is alleging DPCL serviced loans held by DPCL which, while potentially accurate, is rather unextraordinary.

*inter alia*, "[a]ny interest in or claim to real estate whether entitling to present or future possession and enjoyment, and whether vested or contingent, may be disposed of by deed or will, and any estate which would be good as an executory devise may be created by deed." D.C. Code § 42-301.

The necessity of a deed in conveying real estate is more forcefully expressed in the ensuing section of the District of Columbia Code which, in setting forth the familiar "statute of frauds," dispatches with the "may" language of Section 42-301 and imposes a regime whereby, *inter alia*:

> Except as provided in subsection (c) of this section, **no estate** of inheritance, or for life, or **for a longer term than 1 year, in any real property**, corporeal or incorporeal, **in the District of Columbia**, or any declaration or limitation of uses in the same, for any of the estates mentioned, **shall be created or take effect, except by deed signed and sealed by the grantor, lessor, or declarant, in person or by power of attorney or by will**.

D.C. Code § 42-306(b) (emphasis added).[8]

So, as a matter of fact, the Putative Partnership never owned real estate, and as a matter of law, the Putative Partnership never could have owned real estate without a deed thereto. The Complaint does not allege any deeds in favor of the Putative Partnership to have ever been drafted, much less executed.

As to the second contention: while the Complaint intimates that the Putative Partnership loaned money, the Complaint never actually alleges such. If loans were made, where did the money come from? Who holds the promissory notes? Were there deeds of trust? If there were deeds of trust, who is listed thereupon as the beneficiary? None of this is alleged.

To be sure, Mr. Paret alleges DPCL loaned monies. But, as discussed above, DPCL is legally distinct from Mr. Huertas. And since Mr. Paret is alleging that Mr. Huertas used his position

---

[8] The exception set forth in subsection (c) of this statute concerns commercial leases and is accordingly inapplicable *sub judice*.

with DPCL to garner below-market loan terms for the benefit of the Putative Partnership, it would be counterintuitive to surmise the Putative Partnership was also in the business of lending money.

Which leads to the third contention: though Mr. Paret alleges the Putative Partnership borrowed monies from DPCL, no such loans are alleged. If money was loaned to the Putative Partnership, who was the lender? When was the loan made? What were the loan terms? Contrarily, the Debtor actually asserts that it was he – and his companies – that faced "collection actions," Complaint, DE #14, at ¶ 30, with the Complaint (and the Debtor's schedules in his bankruptcy) giving every impression that it was he – and his related entities – that were the borrowers, not the Putative Partnership.

Finally, as to actions as a developer, absolutely none are alleged. If Mr. Paret is alleging the Putative Partnership developed properties, he has not identified the nature of work that was done, how the Putative Partnership hired laborers or sub-contractors, where the Putative Partnership found the money to pay for materials, what permits were pulled, or anything of the like.

So, at core, the Complaint alleges (i) the Putative Partnership owned property, even though land records undercut that contention; (ii) the Putative Partnership borrowed and loaned money, even though it appears the faux entity actually headed Shakespeare's advice to "[n]either a borrower nor a lender be," William Shakespeare, Hamlet act 1, sc. 3, l. 81; and (iii) the Putative Partnership developed properties, without ever buying materials, hiring a contractor, acquiring a permit, or causing a hammer to be swung.

These allegations do not nearly comport with the plausibility standard of *Iqbal* and *Twombly*. And, where verifiable against public records, these allegations are wholly undermined.

## VI.    Argument: No Claim is Stated Against DPCL

Traditionally, where there are multiple defendants to a lawsuit, the pleading specifies which counts are brought against which defendants. Mr. Paret has not done so here. And, upon diligent review, it is altogether unclear what – if any – relief is sought from DPCL. Mr. Paret insists DPCL "is an indispensable party," but that terms does not "mean what [Mr. Paret] think[s] it means." The Princess Bride (20th Century Fox 1987).

Indispensable parties are governed by Federal Rule of Civil Procedure 19. *See W. Maryland Ry. Co. v. Harbor Ins. Co.*, 910 F.2d 960, 961 n. 1 (D.C. Cir. 1990) (Thomas, J.). As noted by the United States District Court for the District of Columbia:

> Under Rule 19 of the Federal Rules of Civil Procedure, an absent party is considered necessary to the litigation if without it (1) "complete relief cannot be accorded among those already parties," or (2) the absent party "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [that party's] absence may" either "(i) as a practical matter impair [that] person's ability to protect that interest or (ii) leave [the remaining] parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Should the Court determine that any of Rule 19(a)'s criteria are met, it must order that the absent party be joined.

*KPMG Fin. Advisory Services Ltd. v. Diligence LLC*, 2006 WL 335768, at *2 (D.D.C. Feb. 14, 2006) (quoting Fed. R. Civ. P. 19(a)).

Here, there are four causes of action. The first seeks a declaratory judgment that Mr. Huertas and Mr. Paret created the Putative Partnership. Complaint, DE #14, at p. 9. The second alleges Mr. Huertas breached his fiduciary duty to the Putative Partnership. *Id.* at pp. 9-10. The third seeks an accounting. *Id.* at pp. 10-11. The fourth seeks the creation of a constructive trust. *Id.* at ¶¶ 11-12.

None of these causes of action appear to seek relief from DPCL (and, as noted *infra*, three of these are not actually causes of action at all). So it is altogether unclear how DPCL could prevent

"complete relief" from being accorded "amongst those already parties," Fed. R. Civ. P. 19(a)(1)(A), especially since DPCL does not own any of the subject properties.

Equally, there is no reason to believe DPCL "claims an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1)(B). DPCL is a creditor of Mr. Paret's, but DPCL's claim is based on a promissory note, not any alleged partnership. DPCL maintains no partnership ever existed; as such, DPCL most certainly is not claiming an interest therein.

## VII. Argument: Accounting, Declaratory Relief and the Creation of a Constructive Trust are Not Causes of Action

Three of Mr. Paret's four causes of action are non-cognizable at law and thusly necessitate dismissal. Precedent is exceedingly clear that one cannot assert a claim for an accounting, or a claim for imposition of a constructive trust; these are remedies, not causes of action. Allowing these to stand as independent claims would be no different than permitting a cause of action for "money damages" or "pre-judgment interest." The claim for declaratory relief suffers a similar – albeit marginally dissimilar – fate.

The issues with a claim for "accounting" and "constructive trust" were addressed by the United States District Court for the District of Columbia barely a year ago: "Finally, the Amended Complaint asserts claims for Accounting (Count IV) and Constructive Trust (Count VI). The Court treats these together because they fail for the same reason: Both are equitable remedies, not standalone claims for relief." *Quinn v. Kreindler & Kreindler*, 2023 WL 2351734, at *11 (D.D.C. Mar. 3, 2023). *See also*, *Wilson v. On the Rise Enterprises, LLC*, 305 F. Supp. 3d 5, 19–20 (D.D.C. 2018) ("…accountings are not freestanding causes of action, but remedies that a plaintiff may obtain only upon prevailing on some independent claim.") (citing *Haynes v. Navy Fed. Credit Union*, 52 F.Supp.3d 1, 10 (D.D.C. 2014) (Kollar–Kotelly, J.) *Bates v. Nw. Human Servs., Inc.*, 466 F.Supp.2d 69, 103 (D.D.C. 2006) (Walton, J.)); *Chin-Teh Hsu v. New Mighty U.S. Tr.*, 2020

WL 588322, at *12 (D.D.C. Feb. 6, 2020) ("Plaintiffs put the cart before the horse. Neither a

constructive trust nor an accounting constitutes a free-standing claim. They instead supply

potential remedies that might be available to Plaintiffs (and only under District of Columbia law)

should they ultimately prevail. It is well established that a constructive trust is 'not an independent

cause of action,' but instead provides ' 'a remedy that a court devises after litigation.' ' Similarly,

an accounting, 'a detailed statement of the debits and credits between parties arising out of a

contract or a fiduciary relation,' may be obtained at the close of litigation if (and only if) a plaintiff

succeeds on some independent claim.") (quoting *Macharia v. United States*, 238 F. Supp. 2d 13,

31 (D.D.C. 2002) (quoting *United States v. BCCI Holdings*, 46 F.3d 1185, 1190 (D.C. Cir. 1995));

citing *Bates*, 466 F. Supp. 2d at 103; *Wilson*, 305 F. Supp. 3d at 19–20; *Haynes*, 52 F. Supp. 3d at

10).

Similarly, case law is clear that "declaratory judgment" is not a stand-alone cause of action

either. *See, e.g.*, *Fitts v. Fed. Nat. Mortg. Ass'n*, 44 F. Supp. 2d 317, 330 (D.D.C. 1999) ("A request

for declaratory judgment constitutes a form of relief, not a cause of action.") (citing *Weiner v.

Klais and Co., Inc.*, 108 F.3d 86, 92 (6th Cir. 1997)); *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir.

2011) ("As discussed supra, however, the plaintiffs have not alleged a cognizable cause of action

and therefore have no basis upon which to seek declaratory relief. Nor does the Declaratory

Judgment Act (DJA) provide a cause of action. It is a 'well-established rule that the Declaratory

Judgment Act 'is not an independent source of federal jurisdiction.' Rather, 'the availability of

[declaratory] relief presupposes the existence of a judicially remediable right.' ' ") (citing 28

U.S.C. § 2201; quoting *C & E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*, 310 F.3d

197, 201 (D.C. Cir. 2002) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)); citing *Skelly

Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).

25

Lest this point appear hypocritical, inasmuch as DPCL just filed a complaint in this Honorable Court for declaratory relief, *DP Capital LLC v. The District of Columbia*, Case No. 24-10007-ELG (the "2207 Foxhall Tax Suit"), the recently-filed suit actually demonstrates the rule. In the 2207 Foxhall Suit, DPCL seeks relief based upon the provisions of Sections 505 and 362 of Title 11 of the United States Code. Those statutory provisions expressly grant DPCL the right to relief; DPCL is merely using the Declaratory Judgment Act, 28 U.S.C. § 2201, as a vehicle through which to petition for the statutorily-provided relief.

Here, Mr. Paret does not point to any freestanding statutory entitlement to declaratory relief. In fact, he does not even cite to the Declaratory Judgment Act. Rather, he simply sets forth a claim for "Declaratory Judgment," Complaint, DE #14, at p. 8, and asks for relief thereunder. Such is, as a matter of law, not a viable construct.

Since neither accounting nor the imposition of a constructive trust nor declaratory judgment are recognized causes of action, all three merit dismissal.

## VIII.   Argument: Mr. Paret Cannot Sue the Putative Partnership

While undersigned counsel does *not* represent the Putative Partnership, *see, supra,* n. 1, Mr. Huertas and DPCL nonetheless have an interest in seeing the whole of this lawsuit dismissed. And it thusly bears notation that "[t]he common law rule in the District of Columbia is that a partnership cannot sue or be sued as a separate entity." *Day v. Sidley & Austin*, 394 F. Supp. 986, 994 n. 2 (D.D.C. 1975) (citing *Mayflower Hotel Stockholders v. Mayflower Hotel Corp.*, 73 F.Supp. 721 (D.D.C. 1947); *Fennell v. Bache*, 123 F.2d 905 (D.C. 1941); *Matson v. Mackubin*, 57 F.2d 941 (D.C. 1932); *National Ass'n for Community Development v. Hodgson*, 356 F. Supp. 1399, 1402 (D.D.C. 1973)). *See also*, *Dupree v. Walker*, 1988 WL 112157, at *5 (D.D.C. Oct. 13, 1988) ("Under District of Columbia law, actions by or against a partnership are brought in the names of

the individual partners.") (citing *Day v. Avery*, 548 F.2d 1018, 1022 (D.C. Cir. 1976); *Sidley & Austin*, 394 F.Supp. at 988 n. 2).

Under *Dupree*, if Mr. Paret wishes to sue the Putative Partnership, he will need to name himself as a defendant.

### IX.    Argument: The Claim for Breach of Fiduciary Duty Merits Dismissal or Entry of Summary Judgment

The claim for breach of fiduciary duty is also fatally flawed. Here, Mr. Paret is essentially arguing that (i) Mr. Huertas' role in the partnership was to leverage his relationship with DPCL to secure loans to the Putative Partnership (even though no such loans are alleged to have been made to the Putative Partnership); and (ii) Mr. Huertas breached that duty by leveraging his relationship with DPCL to secure loans and then not stopping DPCL from enforcing the terms of those loans. This is *reductio ad absurdum*.

#### a.   Mr. Paret is Conflating Statutory Provisions

Under District of Columbia law, "[t]he *only* fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty" and statutorily-defined duties. D.C. Code § 29-604.07(a) (emphasis added). The statutorily-defined duties are:

> (1) To account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity;

> (2) To refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership; and

> (3) To refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership.

D.C. Code § 29-604.07(b).[9]

It appears Mr. Paret is focused on the second criterion, alleging that Mr. Huertas acted adversely to the Putative Partnership's interests by causing Mr. Paret to be placed in an involuntary bankruptcy. Complaint, DE #14, at ¶ 47.[10] But it is Mr. Paret – not the Putative Partnership – that is in bankruptcy. And Mr. Huertas was not one of the petitioning creditors. (Mr. Huertas is, no doubt, associated with two of the petitioning creditors. Once more, however, mere association seems to miss, *en toto*, the notion of limited liability companies being legally distinct from their members and managers.)

The Complaint also alleges Mr. Huertas "made it economically impractical to continue pursuant to D.C. Code § 29.608.1(5)." Complaint, DE #14, at ¶ 46. There are three problems with this, however. First, and most notably, there is no Section 29.608.1 of the District of Columbia Code. Second, if this is a reference to Section 29-608.10 of the District of Columbia Code, that provision does not have a subsection (5). Third, assuming alternatively that this is a reference to Section 29-608.01 of the District of Columbia Code, subsection (5) thereof simply sets forth how a partnership may be dissolved:

> A partnership is dissolved, and its activities and affairs shall be wound up, only upon the occurrence of any of the following events: …
>
> (5) On application by a partner, a judicial determination that:
>
> (A) The economic purpose of the partnership is likely to be unreasonably frustrated;

---

[9] There is an added statutory duty that concerns refraining from engaging in "reckless conduct, intentional misconduct, or a knowing violation of law." D.C. Code § 29-604.07(c). Such does not appear to be implicated in this case.

[10] This paragraph of the Complaint cites to Section 303 of Title 11 of the United States Code which, in turn, governs involuntary bankruptcies.

(B) Another partner has engaged in conduct relating to the partnership activities and affairs which makes it not reasonably practicable to carry on the activities and affairs in partnership with that partner; or

(C) It is not otherwise reasonably practicable to carry on the partnership activities and affairs in conformity with the partnership agreement.

D.C. Code § 29-608.01(5).

Even if, *arguendo*, there was a partnership, and even if, *arguendo*, Mr. Huertas caused the partnership's purpose to be frustrated or rendered it "not reasonably practicable to carry on the activities and affairs in partnership," then there would still not be a claim for breach of fiduciary duty. To the contrary, the very statute Mr. Paret seems to be citing sets forth the remedy for such an occurrence: the Putative Partnership is to be dissolved.

This point merits emphasis, because it seems Mr. Paret is trying to conflate code sections. The District of Columbia Code sets forth the fiduciary duties of partners in one section, and sets forth grounds for the dissolution of a partnership in another section. There is no overlap between these sections. The remedy for a breach of fiduciary duty is to bring suit against the offending partner; the remedy for making a partnership impracticable is to dissolve the partnership. Yet Mr. Paret is trying to use the latter as a basis for the former. And the law most certainly does not permit such.

### b. Mr. Paret Does Not – and Cannot – Allege Damages, Instead Pleading Activities that Caused a Benefit (the Opposite of Damages)

This leaves only Mr. Paret's generalized theory that Mr. Huertas somehow breached his duty to use DPCL to obtain funding by (i) honoring that duty to use DPCL to obtain funding; and (ii) then not stopping DPCL from enforcing the terms of that funding. This is not a credible contention on its face. But the contention becomes even less credible in the context of Mr. Paret's other allegations that Mr. Huertas (a) arranged for DPCL to "forego interest payments on certain of these loans," Complaint, DE #14, at ¶ 17; (b) arranged for DPCL to "refrain[] from collecting

interest on certain loans," *Id.* at ¶ 18; and (c) arranged for DPCL to make loans with "low or no monetary down payments," *Id.* at ¶ 18.

What Mr. Paret seems to be alleging is that Mr. Huertas had a duty to go out and get financing for the Putative Partnership and that Mr. Huertas not only fulfilled that duty but managed to do so on terms grossly favorable to the Putative Partnership and grossly unfavorable to DPCL. When the Putative Partnership somehow still could not make payments, DPCL enforced its contractual remedies. And apparently this is the basis of a claim for breach of fiduciary duty.

Such a claim, however, requires a demonstration of money damages (as does every other tort). *See Dorsey v. Am. Express Co.*, 680 F. Supp. 2d 250, 254 (D.D.C. 2010) (citing *Paul v. Judicial Watch, Inc.*, 543 F.Supp.2d 1, 5–6 (D.D.C. 2008)). And if the loans were made on such grotesquely favorable terms, with the Putative Partnership not having to pay interest or even make down payments, it is altogether impossible to understand how the enforcement of their terms beget damages.

To be sure, Mr. Paret does not allege the Putative Partnership lost the interest payments it made – to the contrary, he alleges there were no interest payments. And he does not allege down payments were made – to the contrary, he alleges these were often non-existent. What he is claiming is that Mr. Huertas secured superior terms, with significantly lower risk than could be obtained on the open market, for the Putative Partnership. Such a contention does not invite damages, nor are any pleaded in the Complaint. To the contrary, such a contention would suggest only the wholesale absence of damages.

## X.    Argument: The Declaratory Judgment Claim is Moot

In addition to not being a cognizable cause of action, Mr. Paret's claim for declaratory relief also suffers from being moot. Mr. Paret wants this Honorable Court to declare that "the parties created and entered into a partnership agreement and relationship under D. C. law."

Complaint, DE #14, at p. 9. But even putting aside the manifest problems of trying to find a partnership in the haphazard allegations of the Complaint, there is no case or controversy to support such a declaration.

While Section 2201 of Title 28 of the United States Code does allow federal courts to enter declaratory judgments on the limitations discussed *supra*, such is still only permitted where there is an actual case or controversy underlying the petitioned-for declaration. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007).

Fortunately, the statute itself conditions the affording of relief upon there being "a case of actual controversy…" 28 U.S.C. § 2201(a). So while bankruptcy courts may – or may not – be otherwise subject to the case or controversy rigors of Article III, *Kiviti v. Bhatt*, 80 F.4th 520, 532 (4th Cir. 2023), the statutory limitation acts as a check on the issuance of declaratory relief even if bankruptcy courts are otherwise permitted to hear matters outside the scope of Article III jurisdiction.

Here, Mr. Paret alleges there was a partnership that soured, with the Complaint going so far as to acknowledge "the Partnership should be dissolved." Complaint, DE #14, at ¶ 35. And while he claims the Putative Partnership owns vast quantities of real property, the land records show otherwise.

Since the Putative Partnership does not, as a matter of both fact and law, have any real estate assets, and since the Putative Partnership allegedly only existed to develop real estate assets, it is clear the Putative Partnership is no longer functional or operational in any manner whatsoever. Which, in turn, means there is no utility in adjudicating whether or not the Putative Partnership was created in the first place. Such a declaration would be the engagement of a purely moot topic,

in violation with the Supreme Court's holding in *MedImmune* and the plain language of Section 2201.

**XI.      Conclusion**

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) dismiss this case, with prejudice; (ii) alternatively, enter summary judgment in favor of the Defendants; and (iii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: March 4, 2024                    By: /s/ Maurice B. VerStandig
                                        Maurice B. VerStandig, Esq.
                                        Bar No. MD18071
                                        The VerStandig Law Firm, LLC
                                        1452 W. Horizon Ridge Pkwy, #665
                                        Henderson, Nevada 89012
                                        Phone: (301) 444-4600
                                        Facsimile: (301) 444-4600
                                        mac@mbvesq.com
                                        *Counsel for the Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of March, 2024, a copy of the foregoing was served on all parties through this Honorable Court's CM/ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig