## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CHARLES PAXTON PARET** | ) | **Case No. 23-00217-ELG** |
| | ) | **Chapter 7** |
| **Debtor** | ) | |
| | ) | |

**CHARLES PARET**

      **Plaintiff**

**Adversary Case No. 23-10025
ELG**

**v.**

**DANIEL HUERTAS, ET AL**

**Defendants**

_____

### OPPOSITION TO MOTION TO DISMISS OR IN THE
### ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

      Comes Now, the Trustee, Wendell Webster, on behalf of the Debtor's Estate, by and

through its undersigned counsel, and respectfully submits this opposition to the Motion to Dismiss

and/or in the Alternative for Summary Judgment.  (Hereafter "Dispositive Motion") (Dkt 15)[1] filed

by Defendant Daniel Huertas.  In support of this Opposition, the Trustee states as follows:

_____

[1] Simultaneously, the Trustee has filed a motion to extend the time to respond to the Dispositive
Motion.  The Trustee is in negotiations to engage Womble Bond Dickerson (US) LLP to
prosecute this Complaint.  Womble Bond Dickerson (US) LLP has not completed its diligence.
If Womble Bond Dickerson (US) LLP, they intend to file a lengthier and more detailed
opposition within the extended time.  This opposition is filed in an abundance of caution in order
to preserve the Trustee's rights.

_____
Janet M. Nesse (D.C. Bar 358514)
Justin P. Fasano (DC Bar MD21201)
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
(301) 441-2420
jnesse@mhlawyers.com
jfasano@mhlawyers.com
*Counsel to the Trustee*

## FACTUAL BACKGROUND[2]

1.      On March 4, 2024, Daniel Huertas and Creditors DP Capital LLC d/b/a as WCP Partners filed an extensive Motion to Dismiss and/or in the Alternative for Summary Judgment pursuant to Federal Rules of Bankruptcy Procedure 7012 and 7056, and Federal Rules of Civil Procedure 12(b) and 56. (Dkt 15).

2.      The Debtor's initial response deadline was March 18, 2024 (the "Initial Response Deadline").  By court orders, the Initial Response Deadline has been extended to May 20, 2024 (the "Current Response Deadline").

## ARGUMENT

3.      The Trustee has simultaneously filed a motion to extend the deadline to respond to the Dispositive Motion.  The Trustee incorporates by reference all arguments made in that Motion as if fully set forth herein.

4.      There exists numerous instances where certain documents indicate a relation beyond creditor/debtor and more in the nature of a partnership.  As one of many examples, in a Commercial Deed of Trust Note, dated November 5, 2029 ("Example Note"), Daniel Huertas instructed Debtor to execute a loan to lend Creditor DP Capital funds to further extend loans on Properties financed by WCP Fund I LLC.  Debtor received no proceeds from this loan, but instead all proceeds were distributed to Daniel Huertas with no formal explanation other than Debtor was not to encumber, further execute loans, or act independently in connection with the Properties, without the approval of Daniel Huertas.

5.      As stated in Paragraph 5 of the aforementioned Example Note, "In addition to and separate from all other amounts due under this Note, Borrower shall to pay to Lender's affiliate

DP Capital LLC, 50% of all gross revenue generated from the Property and/or Supplemental

Properties and/or by Borrower."   The Example Note further states:  "In addition to and separate

from all other amounts due under this Note, Borrower shall pay to Lender's affiliate DP Capital

LLC, 50% of all gross sales proceeds upon a bona fide, arm's-length sale of the Property or any

or all of the Supplemental Properties by Borrower or any affiliate of Borrower to an unaffiliated

3rd-party purchaser with a sales price of no less than the then fair market value of the Property."

This Example Note and other notes appear to demonstrate a partnership between Daniel Huertas

and Debtor.

6.       In addition to the loan documents, other documents indicate a partnership.  For

example, a HUD-1 Settlement Statement, at line #805 states a distribution to WCP Fund I LLC,

in the amount of $1,694,493.09 as a construction draw; however, no construction was ever

conducted for the Property at issue from that date, nor was construction the purpose of the loan

associated with said HUD-1 set forth as <u>Exhibit A</u>. Debtor received no money or distribution in

connection with this HUD-1; nor were any of the funds distributed in connection with this HUD-

1 applied toward construction costs. This HUD-1 has both factual and legal implications as per

the manner in which the funds related thereto were used for both foreclosure and other purposes.

7.       Correspondence also indicates a partnership. For example, the attached <u>Exhibit B</u>,

an e-mail, demonstrates Daniel Huertas' request that his legal team post a formal agreement

penned from Daniel Huertas to Debtor requesting the operating agreements and limited liability

company structures on each of the Properties be amended and adjusted to the 50/50 structure as

set forth in the Example Note.

8.       The Complaint sufficiently alleges a partnership.  As set forth in the Complaint,

on September 20, 2019, at 2:54 PM, Defendant penned this confirmatory email to Paret:

Here is further confirmation that by providing the below capital including future capital to the partnership, this is debt that will be split 51% Daniel Huertas, 49% Charles Paret. Charles Paret will manage day to day operation of all projects (construction, development, stabilization) including in this email. ***Daniel Huertas will manage all financial aspects related to capital, partnerships, ventures and will have final word related to execution of the real estate. Charles Paret is responsible solely for all debt obligations prior to 9/20/19. (payments) Charles Paret is not going to incur any additional debt or loans against real estate attached to this email or any purchases of any additional real estate.*** Please return with agree and confirm that we will operate as such. (Emphasis added).  See Exhibit 1A and its attachment at 1B.

9.     On September 20, 2019, Paret answered Huertas as flows: "Agree".

10.     A motion to dismiss brought under FRCP 12(b)(6) is designed to

"test[] the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235,

242 (D.C. Cir. 2002). In evaluating a Rule 12(b)(6) motion, the Court "accept[s]

facts alleged in the complaint as true and draw[s] all reasonable inferences from

those facts in the plaintiff['s] favor." *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d

4, 8 (D.C. Cir. 2015). To survive a Rule 12(b)(6) motion, a complaint must contain

"'a short and plain statement of the claim showing that the pleader is entitled to

relief,' in order to 'give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89,

93 (2007) (*per curiam*). In considering a Rule 12(b)(6) motion, the Court "may

consider only the facts alleged in the complaint, any documents either attached to

or incorporated in the complaint[,] and matters of which [the Court] may take

judicial notice." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) (internal

quotation marks omitted).

11.    Although "detailed factual allegations" are not necessary, the

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do

not suffice." *Id.* Well-pleaded complaints include "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* Raising the "sheer possibility that a defendant has acted

unlawfully" is insufficient, *Id.*; instead, the complaint's "[f]actual allegations,"

accepted as true, "must be enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555. Thus, while "a well-pleaded complaint may

proceed even if" it appears that "actual proof of those facts is improbable, and 'that

a recovery is very remote and unlikely,'" *Id.* at 556 (citation omitted), the

complaint must nevertheless "possess enough heft to 'show[w] that the pleader is

entitled to relief,'" *Id.* at 557, (alteration in original) (quoting F.R.C.P. 8(a)(2)).

12.    Defendant's motion repeatedly characterizes the alleged partnership

as "putative" or one that doesn't truly exist. Notwithstanding that DP Capital was

admittedly organized prior to the formation of the Huertas-Paret partnership, Defendant's

analysis fatally deviates from an appropriate partnership analysis under D.C. law.   Defendant is pleading his claim, not trying it.

13.     In the first instance, the Second Amended Complaint makes it very clear that the partnership claim is against Huertas. Contrary to the Defendant's motion regarding "Temporal Impossibility", the Huertas-Paret partnership is bolstered for pleading purposes by the September 2019 correspondence and for summary judgment purposes by the language and intention of the WCF Fund November 2019 Commercial Deed of Trust Note. When juxtaposed these documents confirm the stealth partnership between Huertas, the lender, with Paret, the borrower, in Huertas' capacity as the principal of DP Capital and WCP Fund 1. As Paret's partner, Huertas maximized his access and interest in Paret's real estate business opportunity and controlling the stealth partnership's financial dealings, among other things. Defendant's argument misses the fundamental factual and legal questions at hand Paret need not try his case in his pleadings, but only meet *Igbal Twombly* pleading thresholds. In this connection, the formation of the partnership between Paret and Huertas's and their respective enterprises are soundly alleged.

**Declaratory Judgment Claim Relief**

14.     Defendant incorrectly argues that Plaintiff's Declaratory Judgment claim regarding the partnership should be dismissed.  The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). To satisfy Article III's case-or-controversy requirement, "the dispute [must] be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and [] be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would

6

be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co,*312 U.S. 270, 273 (1941). *Bacardi & Co. v. Empresa Cubana Exportadora de Alimentos Y Productos Varios*, 1:04-cv-00519 (EGS), at *15-16 (D.D.C. Mar. 6, 2023)

15.     Several cases suggest that a declaratory judgment action can be used to determine a partnership in Washington, D.C. For example, in *Cooper v. Isaacs*, 448 F.2d 1202 (D.C. Cir. 1971), the plaintiff sought a declaratory judgment to determine whether a business entity was a partnership and the court did not dismiss the request for declaratory relief on that basis. in *Scrimgeour v. Magazine, Scrimgeour v. Magazine*, 429 A.2d 187 (D.C. 1981) the plaintiff filed a declaratory judgment action to resolve a dispute over a partnership agreement, and the court granted summary judgment to the plaintiff. In *Robinson v. Nussbaum*, 11 F. Supp. 2d 1 (D.D.C. 1997) plaintiffs sought a declaratory judgment to resolve a dispute over a partnership, and the court did not dismiss the request on the basis that it was improper.  The case at hand is no different. The facts herein show a substantial controversy between parties having adverse interests. A claim for such relief need not cite the aforementioned Declaratory Judgment Act as a matter of law, but needfully as it does, the substantial partnership controversy between Paret and Huertas.

16.     Defendant argues that "Paret is ignoring govern Corporate Law", does not own any of the subject Properties, and never has; has not personally lent money to any property owner, and more profoundly, has not "personally swung a hammer on any of the property locales or carries on as a contractor."  See Motion at 17. Therefore, a partnership with Huertas would be meaningless

to Paret. *Au contraire*! Defendant misses the mark. It is not the Properties at issue alone which implicate Plaintiff's claim regarding a partnership between Paret and Huertas. Nor does Plaintiff conflate Huertas with DP Capital or WCP Fund; Huertas intended to include these lenders in the interplay between himself and Paret pertinent to the lending and financing, including future financing, of Paret's deals. Such inferences should necessarily be made in favor of the non-moving party.

17.    A partnership arises under District of Columbia law when "two or more persons ... intend to associate together to carry on as co-owners for profit." *Beckman v. Farmer,* 579 A.2d 618, 627 (D.C.1990); *accord* D.C. Code § 29–601.02(9). The "customary attributes" of a partnership include "profit and loss sharing," "joint control of decision making," and "capital contributions." *Beckman,* 579 A.2d at 627 (internal quotation marks omitted). But those "customary attributes" only form "guidepoints of inquiry." *Id. "[W]hether a partnership exists is an issue of fact,* turning less on the *presence or absence of legal essentials than on the intent of the parties gathered from their agreement, conduct, and the circumstances surrounding their transactions*." *Id.* at 628 (citation omitted). (Emphasis added). When a trial court "must resort to inferences from extrinsic evidence of the parties' conduct and course of dealings to determine their legal relationship," a "court's conclusion that the issue of partnership *vel non* could be resolved as a matter of law bears a heavy burden of justification." *Id.* at 630. Such is the case here on both FRCP Rule 12(b) and Rule 56 grounds, not to mention Rule 56(d) grounds, to wit the prematurity of Defendants' summary judgment.

18.    The District of Columbia Circuit notes that the District of Columbia Code establishes a "statutory presumption of partnership from evidence that a party shared in the profits of the business." *Id.* at 627 (citing earlier version of D.C. Code § 29–602.02(c)(3)). The statutory

presumption of partnership does not apply, however, if the profits were received in payment for "services as an independent contractor or of wages or other compensation to an employee." D.C. Code § 29–602.02(c)(3). This explains Defendant's unsupported contention that Paret "is a contractor" on page 18 of its Motion.

19.     One of the basic tenets of partnership law is that "[p]artners are accountable to one another as fiduciaries." *Marmac Inv. Co. v. Wolpe*, 759 A.2d 620, 626 (D.C. 2000). Partners owe both a duty of care and a duty of loyalty to the partnership and to the other partners. D.C. Code § 29-604.07(a). The D.C. RUPA requires a partner to "account to the partnership and hold as trustee for [the partnership] any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business *or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity"; to refrain from taking actions that are adverse to the partnership; or to compete with the partnership "before the dissolution of the partnership." Id.* § 29-604.07(b)(1)-(3). (Emphasis added). Generally speaking, the duty of loyalty ceases when a partner leaves the partnership, which is known as "dissociation" from the partnership.

20.     When a partnership is dissolved, a partner owes a duty to account for "property, profit[s], or benefit[s]" gained in the conduct and "winding up" of the partnership business or from use of partnership property. D.C. Code § 29-604.07(b)(1). "Winding up" of the partnership's business includes acts to preserve partnership rights and property for a reasonable time, and acts to prosecute and defend actions, settle activities, transfer partnership property, or distribute assets. D.C. Code § 29-608.03(c). A partner who participates in the winding up of the partnership business is entitled to "reasonable compensation for services rendered" beyond that of his or her

partnership interest. D.C. Code § 29-604.01(k). *Diamond v. Hogan Lovells US LLP*, 224 A.3d 1007, 1011-13 (D.C. 2020).

21.    Against this backdrop. no case is more fatal to Defendants' motion to dismiss than *Queen v. Schultz*, 747 F.3d 879 (D.C. Cir. 2014). In January 2008, NBC employee Michael Queen approached then-radio talk show host Ed Schultz to ask whether Schultz would be interested in getting into the television business. What happened next is in dispute. Queen says that he and Schultz *orally agreed* to become partners in a project to develop a television show starring Schultz as host. Schultz denies any such agreement. Schultz later entered into a contract with the cable television network MSNBC to host "The Ed Show" on weekday evenings, and the show has aired on MSNBC in various timeslots since April 2009. Queen now claims an entitlement to a portion of Schultz's income from "The Ed Show" based on their alleged agreement to co-develop a show. Schultz, disclaiming any agreement, believes that Queen is entitled to nothing. After the relationship between the two men broke down, Queen sued Schultz in district court, and Schultz responded with counterclaims against Queen for fraud, slander, and libel. On cross-motions for summary judgment, the district court ruled that neither Queen nor Schultz was liable to the other for anything. Queen (but not Schultz) appealed, arguing that the district court erred in granting summary judgment to Schultz *with respect to Queen's breach-of-contract claim and his breach-of-partnership-duties theory*. (Emphasis added) The Court stated:

> We disagree with Queen on the breach-of-contract claim but agree with him on the partnership theory. We conclude that there exists a genuine issue of material fact as to whether Queen and Schultz formed a partnership to develop a television show and, if so, whether Schultz is liable to Queen for breach of partnership duties. We therefore remand to enable Queen to present his partnership theory to a jury.

*Id.* at 881-82.

22.     Like the case at hand, the Queen case involved email communications which, however, were far less detailed and articulate than those referenced in Paret's SAC. Our Circuit court's reversal of the trial court's dismissal of the partnership claim in Queen demonstrates that Paret's SAC are hardly "scant" under D.C. partnership law.   As the September 20, 2019, email penned by Huertas confirms the parties shared joint control over the partnership.  "S*ee Beckman,* 579 A.2d at 627 ("joint control of decision making" is "customary" attribute of partnership); *accord Brown v. 1401 N.Y. Ave., Inc.,* 25 A.3d 912, 914 (D.C.2011). " *Queen at* 888 (D.C. Cir. 2014)

23.     The aforementioned statutory and case law is nary mentioned in Defendant's rule 12(b)(6) or 56 arguments and these legal infirmities preclude this court's dismissal on dispositive motion grounds.

24.     Defendant next argues that the Huertas-Paret stealth partnership never owned any real estate presupposing without more and asking this Court to conclude, citing DC Code Section 42-301 (Statute of Fraud), that the partnership's ownership of property necessitated as a matter of law a deed in its favor.

25.     The Statute of Frauds is not necessarily implicated by virtue of Paret's claims.  In the first instance, the emails coupled with the November 2019 Commercial Deed of Trust confirm Huertas effectuation of the partnership by virtue of the questionable $1.8 million loan to three Paret LLCs collateralized by the Supplemental properties correspondingly identified in the November Commercial Deed of Trust and Paret's SAC.

26.     Decisions from this Court have, on occasion, allowed accounting claims to survive a motion to dismiss. As the Court observed in *Butler*, "it is not unusual to leave such counts in place at the [m]otion-to-[d]ismiss stage and then to resolve them only at summary judgment or

later, depending on whether Plaintiffs can establish both liability on the breach of contract *and* insufficiency of legal damages." 459 F.Supp.3d at 109 (emphasis in original) (citing *Bates*, 466 F.Supp.2d at 104). And when dismissed, it is generally without prejudice. See Quinn *v. Kreindler & Kreindler*, Civil Action 21-1824 (RDM), at *24 (D.D.C. Mar. 3, 2023) ("The Court will, accordingly, dismiss Counts IV and VI as freestanding claims, "but it does so without prejudice to [Quinn] ultimately seeking [an accounting and constructive trust] as remedies in the event [he] prevails[s]" on one of his surviving claims for relief. *Chin-Teh Hsu*, 2020 WL 588322, at *12." *Quinn* at *25.

27.    The argument that Paret cannot sue the putative partnership is inapplicable to this case; He is suing Huertas, not the partnership.

**Motion for Summary Judgment Standard**

28.    Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247-48. *Entropic Commc'ns v. Charter Commc'ns*, Civil Action 2:22-CV-00125-JRG-RSP, at *1 (E.D. Tex. Dec. 1, 2023).

**Breach of Fiduciary Duty**

29.    Under D.C. statutory law and case law, once a partnership is established the second step is an analysis of the respective partner's fiduciary duties and finally, the extent to which a breach of said duties may have occurred by virtue of one or more of the partners' actions. Defendant argues entry of summary judgment on the claim of breach of fiduciary duty. A partner's duty of loyalty includes a duty to "refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership." D.C. Code § 29–604.07(b)(3)

30.    The Complaint alleges SAC that Huertas breached his duty when he acted simultaneously as creditor and borrower and decided, among other things, to institute foreclosures against the LLCs with which he "and his companies" entered partnerships with Paret. Resolution of this potential conflict requires "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," all of which are "jury functions" and "not those of a judge at summary judgment." *Barnett v. PA Consulting Grp., Inc.,*715 F.3d 354, 358 (D.C.Cir.2013) (internal quotation marks omitted). See *Queen at* 889.

31.    In support of his motion, Defendant's statement of undisputed material facts lists each of the Paret LLC properties at issue, which counterintuitively implicates Defendant's breach of its fiduciary duty. The November 2019 Commercial Deed of Trust and corresponding HUD-1 merely scratch the surface. Huertas is central in this early stage $1.8 million financial arrangement only two months after formalizing the partnership agreement with Paret. Huertas' November 2019 Commercial Deed of Trust collateralized and imposed restrictive conditions on Paret's exclusively owned LLCs pertinent to $1.8 million paid to and managed as agreed in the partnership agreement except he took no responsibility for the partnership debt obligation. See HUD-1. No formal accounting as to these funds exists. In that same Commercial Deed of Trust, as evidence of his

intent to include his companies in the partnership, Huertas inserted language reflecting his additional 50% interest in the Properties independent of the loan and the life of the loan.

32.     Defendant's multiple roles as the decision-making lender in WCP Fund, the exclusive owner of the broker in the transaction for which he received $36,000.00, and the decision maker in the foreclosure invite deeper scrutiny. This Court should not rule on summary judgment as a matter of law at this pleading stage without benefit of the detailed factual circumstances and reconciliation surrounding the $1.8 million payment to WCF Fund for "construction" purposes as well as other notes and foreclosures.

33.     Huertas and WCP Fund's specific 50% vested interest language in the November WCF Fund Commercial Deed of Trust, which expressly survives the expiration of the Commercial Deed of Trust and/or its payoff speaks volumes and creates pungent genuine issue of material fact in dispute regarding the Huertas-Paret partnership and the intended roles of WCP Fund and DP Capital pertinent to Paret's LLC owned Properties prior to foreclosure.  Penned in November 2019, two months after the September 2019 writings, Huertas arguably enjoyed a well-defined partnership status with Paret and a corresponding 51% debt obligation commensurate with Paret's LLCs debt obligations. Huertas ignored the debt and ensured nevertheless, as per the November 2019 Commercial Deed of Trust, 50% profits and benefit of the Paret LLCs. By virtue of the November 2019 Commercial Deed of Trust, Huertas indisputably controlled the Property and its financial management, in accordance with the September 2019 emails.

34.     The asserted breach of fiduciary duty claim is rooted in Huertas' respective potential conflicts of interests whereupon he "and his companies" partnered with Paret until the market went south.  In the new loans and foreclosures, Huertas wore the hats of a DP Capital lender, DP Capital broker, trustee on the Commercial Deed of Trust, foreclosing lender, purchaser

at Property foreclosure auctions (to the partnership's significant financial detriment) and simultaneously Paret's partner.  The potential damage to Paret and the partnership are measurable by way of a required statutory dissolution and discovery-based accounting.

35.    Defendant essentially agrees with Plaintiff's course of conduct: "The remedy for a breach of duty is to bring suit against the offending partner (Huertas); the remedy for making the making a partnership impractical is to dissolve the partnership for a breach of fiduciary duty is to dissolve the partnership. Motion at 29.  In this connection, the law is clear.  As stated above, when a partnership is dissolved, a partner owes a duty to account for "property, profit[s], or benefit[s]" gained in the conduct and "winding up" of the partnership business or from use of partnership property. See D.C. Code § 29-604.07(b)(1) and D.C. Code § 29-608.03(c). *Diamond v. Hogan Lovells US LLP*, 224 A.3d 1007, 1012-13 (D.C. 2020)

36.    Defendant's summary judgment motion is premature subject to F.R.C.P 56(d). Plaintiff will submit an affidavit to this effect.

WHEREFORE, this Court is urged to enter an order denying the Dispositive Motion, granting the relief requested herein, and such further relief as may be just and proper.

Dated: May 20, 2024

/s/ Justin P. Fasano
Justin P. Fasano (DC. Bar No. MD21201)
**McNAMEE HOSEA, P.A.**
6040 Ivy Lane, Suite 820
Greenbelt, Maryland 20770
Telephone: (301) 441-2420
Facsimile: (301) 982-9450
Email:  jfasano@mhlawyers.com

*Counsel to Wendell Webster, Trustee*

## EXHIBIT A
## HUD-1 Settlement Statement

Previous editions are obsolete

form HUD-1 (3/86) ref Handbook 4305.2

## A. Settlement Statement

U.S. Department of Housing and Urban Development
OMB Approval No. 2502-0265

**FINAL**

**B. Type of Loan**

| 1. ☐FHA | 2. ☐FmHA | 3. ☒Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
| 4. ☐VA | 5. ☐Conv. Ins. | | 19-17685MS | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing, they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U. S. Code Section 1001 and Section 1010.

TitleExpress Settlement System
Printed 11/06/2019 at 13:04 SMS

| D. NAME OF BORROWER: | 5412 1st St Holdings LLC, a District of Columbia Limited Liability Company |
| ADDRESS: | 1743 P Street, NW, #101, Washington, DC 20036 |
| E. NAME OF SELLER: | N/A |
| ADDRESS: | |
| F. NAME OF LENDER: | WCP Fund I LLC |
| ADDRESS: | 2815 Hartland Rd, Suite 200, Falls Church, VA 22043 |
| G. PROPERTY ADDRESS: | 5412 & 5419 1st Street, NW, 1236 Simms Place, NE, Washington, DC 20011 |
| | 3391 0029 |
| H. SETTLEMENT AGENT: | District Title, A Corporation |
| PLACE OF SETTLEMENT: | 1150 Connecticut Avenue, NW, Suite 201, Washington DC 20036 |
| I. SETTLEMENT DATE: | 11/06/2019 | DISBURSEMENT DATE: | 11/07/2019 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 1,800,000.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 1,800,000.00 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loans | 1,800,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 1,800,000.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 1,800,000.00 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 1,800,000.00 | 602. Less reduction amount due seller (line 520) | |
| **303. CASH FROM BORROWER** | 0.00 | **603. CASH TO SELLER** | 0.00 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on line 401 above constitutes the Gross Proceeds of this transaction.

You are required by law to provide the settlement agent (Fed. Tax ID No: 68-0547548,except VA Fed. Tax ID No: 30-0283179) with your correct taxpayer identification number. If you do not provide your correct taxpayer number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

TIN: _____-_____-_____ / _____-_____-_____     SELLER(S) SIGNATURE(S): _____ / _____

SELLER(S) NEW MAILING ADDRESS: _____

SELLER(S) PHONE NUMBERS: _____ (H) _____ (W)

Exhibit A

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT      File Number: 19-1768      FINAL    PAGE 2

## SETTLEMENT STATEMENT

TitleExpress Settlement System  Printed 11/06/2019 at 13:04 SMS

| L. SETTLEMENT CHARGES | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ = | | |
| Division of commission (line 700) as follows: | | |
| 701.  $          to | | |
| 702.  $          to | | |
| 703.  Commission paid at Settlement | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | |
| 801.  Loan Origination Fee          2.000 % DP Capital LLC | 36,000.00 | |
| 802.  Loan Discount          % | | |
| 803.  Appraisal Fee | | |
| 804.  Credit Report | | |
| 805.  Construction Draw          to  WCP Fund I LLC                    LR | 1,694,493.09 | |
| 806.  Loan Processing Fee          to  DP Capital LLC | 1,450.00 | |
| 807. | | |
| 808. | | |
| 809. | | |
| 810. | | |
| 811. | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | |
| 901.  Interest From    11/07/2019  to  12/01/2019    @$    /day    24 Days    LR | 3,111.11 | |
| 902.  Mortgage Insurance Premium for    months to | | |
| 903.  Hazard Insurance Premium for    years  to | | |
| 904. | | |
| 905. | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | |
| 1001.  Hazard Insurance          mo. @ $          /mo | | |
| 1002.  Mortgage Insurance          mo. @ $          /mo | | |
| 1003.  City Property Taxes          mo. @ $          /mo | | |
| 1004.  County Property Taxes          mo. @ $          /mo | | |
| 1005.  Annual Assessments          mo. @ $          /mo | | |
| 1009.  Aggregate Analysis Adjustment | 0.00 | 0.00 |
| 1100. TITLE CHARGES | | |
| 1101.  Settlement or Closing Fee          to  District Title, A Corporation | 395.00 | |
| 1102.  Abstract or Title Search          to  Executive Abstracting Company | 125.00 | |
| 1103.  Title Examination | | |
| 1104.  Title Insurance Binder          to  District Title, A Corporation | 495.00 | |
| 1105.  Document Preparation | | |
| 1106.  Notary Fees | | |
| 1107.  Attorney's fees | | |
| (includes above items No:                    ) | | |
| 1108.  Title Insurance          to  Fidelity National Title Insurance Company | 5,803.50 | |
| (includes above items No:                    ) | | |
| 1109.  Lender's Policy          2,250,000.00  - 5,753.50 | | |
| 1110.  Owner's Policy | | |
| 1111. | | |
| 1112. | | |
| 1113. | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | |
| 1201.  Recording Fees Deed $          ; Mortgage $ 161.27    ; Release $ | 161.27 | |
| 1202.  City Transfer Tax          Deed $          ; Mortgage $ | | |
| 1203.  City Recordation Tax          Deed $          ; Mortgage $ 4,805.01 | 4,805.01 | |
| 1204. | | |
| 1205. | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | |
| 1301.  Prop Taxes GT 11-15 Lot 5419          to  D.C. Treasurer | 24,723.57 | |
| 1302.  Prop Taxes GT 11/20 Lot 5412          to  D.C. Treasurer | 2,709.66 | |
| 1303.  Prop Taxes GT 11-14 Lot 1236          to  D.C. Treasurer | 23,230.35 | |
| 1304.  Water Bal GT9/25/19-1236Simms  to  DC Water | 997.44 | |
| 1305.  Litter lien gt 11-24          to  Office of Administrative Hearings | 1,500.00 | |
| 1400. TOTAL SETTLEMENT CHARGES          (enter on lines 103, Section J and 502, Section K) | 1,800,000.00 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement. In the event a monetary adjustment is required in my account, I agree to reimburse the settlement agent for such adjustment.

By signing below, I also acknowledge that District Title does its best to ensure that the above numbers are correct and accurate numbers per the terms of the contract, loan commitment and/or county/city/ state recording fees. However, in the event that any of the above figures differ from the contract, loan commitment and/or county/state recording fees I agree to within seven (7) days, provide District Title with the correct monies. I also understand that District Title is hereby to bring legal action that I shall be responsible for actual damage (including interest) court costs and reasonable attorney's fees.

Finally because of the administrative burden of refunding excess release money, any monies not necessary for the recording of releases on line 1201 may be retained, as profit, by District Title. 5412 1st St Holdings LLC, a District of Columbia Limited Liability Company

By Ryan Brandel, Managing Director/Nicole Parel, Managing Director

WARNING. IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18: U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

11-6-19

File #19-1768 SMS

In consideration of District Title** disbursing pursuant to the attached Settlement Statement, the undersigned parties agree as follows:

(A) District Title is instructed to disburse pursuant to the Settlement Statement. The settlement is subject to further adjustments between the parties. Borrower(s) and Seller(s) agree that: errors or omissions shall be adjusted and paid by the appropriate party within 10 days of notification by District Title; unpaid adjustments shall bear interest to District Title at the rate of 12% per annum from the date of notification until paid in full. In the event of collection efforts by District Title, the party against whom the efforts are made shall pay all reasonable attorney's fees and costs associated with such efforts. Included in the foregoing amounts (subject to the same rate of interest and fees), District Title, may at its option (but shall not be obligated to), advance funds necessary to complete recordation and in such event the Borrower or Seller agree to promptly reimburse District Title for any such funds advanced. Further Borrower and Seller acknowledge that settlement and disbursement are subject to receipt and clearance of all funds necessary to complete the transaction and that in the event that any such funds are not received or fail to clear, District Title is authorized to cease processing the transaction and discontinue payment of all disbursements until additional funds are received and cleared, and is release from any liability arising out of such non-receipt or failure of funds to clear normal banking channels. Borrower(s) acknowledge receipt of a copy of the Truth in Lending Statement and in the case of refinance, two copies of the Notice of Right to Cancel. All signatories hereto acknowledge receipt of privacy policies from both District Title and the title insurance underwriter referenced on the settlement statement.

(B) The accuracy of any information furnished to District Title by other parties is merely reported and not guaranteed by District Title. District Title assumes no liability, express or implied, for matters not appearing of record at the time of title examination; for any tax consequences; for notices, or actual violations of any laws, criminal or otherwise, or governmental regulations, ordinances, rules, orders or requirements, issued by any department, office, or any other authority or agency of any local, state, county, or federal government as to ownership occupancy, taxes, zoning, environmental or otherwise; for the terms, or any notice or violation of the terms, of any document(s) to which District Title is not party. Borrower(s) and Seller(s) agree that in no event shall District Title's liability exceed the greater of its settlement fee or $500.

(C) The SELLER (S)/PROPERTY OWNER(S) warrant that to the best of seller(s) knowledge there are no deeds of trust, mortgages, or assessments levied or pending, judgments, tax liens, or other liens or other unpaid bills of any nature whatsoever affecting the property other than those listed and accurately calculated on the Settlement Statement and the SELLER(s)/PROPERTY OWNER(S) hereby guarantee(s) at seller(s) option indemnification or prompt and immediate payment, full satisfaction, and release of same. District Title is not responsible for the payment of any utility bills and District Title's liability for the payment of any utility bills, if any, is limited to the amounts reflected on the Settlement Statement. District Title, as a duly licensed agent of the title insurer, is entitled to receive a commission from the title insurance premium involved in this settlement.

(D) District Title shall not be held liable for any damages arising from any neglect, wrongful act or delay of any courier or messenger services that District Title provides or hires.

(E) There is no attorney-client relationship between District Title and any party to this transaction. District Title has rendered no tax advice, legal advice or opinion regarding this transaction and the parties acknowledges that they are not relying upon any tax advice, legal advice or opinion from District Title. In this transaction District Title is acting as an agent of the title insurer identified on the settlement statement, and is performing a title examination for the purpose of complying with underwriting guidelines of the title insurer. District Title does not certify or guarantee the title to this property. An insured may seek redress for title claims under the terms of the title insurance policy, but the insured shall not seek redress from District Title for such claims. Borrower(s) and Seller(s) agree that in no event shall District Title's liability exceed the greater of its settlement fee or $500.

(F) In the event that a dispute involving District Title, its agents, servants, and employees, shall arise among the parties to this transaction, any and all such disputes (except those involving injunctive relief and/or of those stemming from inaccuracies in the Borrower/ Seller Affidavit), shall be resolved in accordance with the following alternative dispute resolution ("ADR") Agreement.

   (1) All disputes, claims, or controversies of any kind and nature (except those involving injunctive relief and/or of those stemming from alleged inaccuracies in the Borrower/ Seller Affidavit), arising out of or in relation to the relationship among the parties and District Title, including the validity and enforceability of this agreement, will be resolved through mandatory, binding arbitration. All parties are waiving their respective rights to have disputes resolved in court, including their rights to a trial by jury. The arbitration shall be resolved through the American Arbitration Association ("AAA") or the National Arbitration Forum ("NAF") according to the rules in effect at the time any request for arbitration is filed. District Title will provide information about these arbitration administrators upon request.

   (2) The arbitration among the parties shall be conducted by an arbitrator selected mutually by the parties. In all cases, the arbitrator(s) must be a lawyer with more than 10 years of experience or a retired judge. Notwithstanding the foregoing Agreement to Arbitrate, any party may bring any claim against any other party in small claims court (but only small claims court for that jurisdictional amount) in that party's jurisdiction. All other claims or appeals must be arbitrated.

   (3) The arbitrator's decision will be final, binding, and enforceable in any court of competent jurisdiction. Fees for the arbitration proceeding are governed by the rules and procedures of the selected arbitration administrator. However, District Title agrees to be bound by any determination made by the arbitrator concerning fees for the arbitration. Each party shall bear the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration.

   (4) No party will serve as a class representative or participate as a class member in any dispute resolution or arbitration proceeding. Only a party's claim will be addressed in the arbitration proceeding, and no claims may be aggregated or additional parties added to the arbitration proceeding without the consent of all of the parties that are participating in arbitration. The place of arbitration (venue) will be determined according to the rules of the arbitration administrator, but in no event will arbitration be held in a county (or in the District of Columbia) in which District Title does not have a staffed office location.

(G) If any portion of this Addendum to the Settlement Statement is void, voidable or unenforceable, of if the inclusion of some provision in this Addendum would render the Addendum unenforceable, the parties agree that the void, voidable, or unenforceable provision will be severed from the remainder of the Addendum, leaving the remainder of the Addendum enforceable.

APPROVAL AND RECEIPT OF A COPY OF THIS ADDENDUM IS HEREBY ACKNOWLEDGED BY SIGNING BELOW.

PURCHASER(S)/BORROWER(S)                                    SELLER(S)

_____                    _____

5412 1st St Holdings LLC, a District of Columbia Limited Liability Company

_____                    _____

DISTRICT TITLE

_____
Authorized Signatory for District Title and not individually

** The term District Title refers to the company District Title, A Corporation for transactions involving property in all states other than Virginia and for the company District Title & Escrow, LLC for transactions involving property in the Commonwealth of Virginia.

Exhibit A

**EXHIBIT B**
**Sample Electronic Mail**



Charles Paret <cpp@paxtonandco.com>

---

**RE: Update on Properties & ARV Values - LLCS Confirmed**
1 message

---

**Daniel Huertas** <daniel@wcp.team>                                          Thu, Oct 31, 2019 at 4:50 PM
To: "Paul Flather, III" <paul@wcp.team>, Charles Paret <cpp@paxtonandco.com>
Cc: Jared Fausnaught <Jared@wcp.team>, Christina Araujo <christina@wcp.team>

Paul –

Please collect from Charles the following LLC docs

**1736 Montello Ave Holdings LLC**

**201 Kennedy St Holdings LLC**

**205 West Madison LLC**

**RI Holdings, LLC**

**1260 Holbrook Holdings LLC- Currently Completed - Being Refinanced**

**1249 Bladensburg Rd Holdings LLC**

**1264-1268 Holbrook Holdings LLC**

**1262 Holbrook Holdings LLC**

**1471 Girard St Holdings LLC**

**71 Kennedy St Holdings LLC**

**429 Kennedy St Holdings LLC**

**208 First St Holdings LLC**

**729 Kennedy St Holdings LLC**

Exhibit B

**433 Kennedy Holdings LLC**

**635 East Main Holdings LLC**

**431 Kennedy Holdings LLC**

**The ones on yellow we should have in the system. Please obtain the rest**

Daniel Huertas | CEO

Washington Capital Partners

www.washingtoncapitalpartners.com

2815 Hartland Road, Suite 200
Falls Church, VA, 22043

+1 7037275464



*This message and its attachments contain confidential information. If you are not the intended recipient of this message, you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have received this e-mail by mistake and delete it from your system.*

**From:** Paul Flather, III <paul@wcp.team>
**Sent:** Thursday, October 31, 2019 4:48 PM
**To:** Daniel Huertas <daniel@wcp.team>; Charles Paret <cpp@paxtonandco.com>
**Cc:** Jared Fausnaught <Jared@wcp.team>; Christina Araujo <christina@wcp.team>
**Subject:** RE: Update on Properties & ARV Values - LLCS Confirmed

Daniel,

The email from Charles, and subsequent one from you, indicated that you both needed to discuss this further. There are still properties I received that neither Christina nor myself recognize.

---

**From:** Daniel Huertas <daniel@wcp.team>
**Sent:** Thursday, October 31, 2019 4:47 PM
**To:** Charles Paret <cpp@paxtonandco.com>; Paul Flather, III <paul@wcp.team>
**Cc:** Jared Fausnaught <Jared@wcp.team>
**Subject:** RE: Update on Properties & ARV Values - LLCS Confirmed

Charles and Paul –

Can you please communicate and collect the LLC docs of the properties that should be here? Otherwise we are not close in getting this done.

Thanks

**From:** Charles Paret <cpp@paxtonandco.com>
**Sent:** Thursday, October 31, 2019 4:45 PM
**To:** Paul Flather, III <paul@wcp.team>
**Cc:** Daniel Huertas <daniel@wcp.team>; Jared Fausnaught <Jared@wcp.team>
**Subject:** Re: Update on Properties & ARV Values - LLCS Confirmed

All discussed.  It's fine to move forward.

On Thu, Oct 31, 2019, 1:26 PM Paul Flather, III <paul@wcp.team> wrote:

> I am forwarding requested information that comes from legal that is further sent from our Accounting Department.
>
> Please contact Daniel/Accounting to discuss any discrepancies with respect to the provided list.
>
> Thank you

Exhibit B

Paxton and Co Mail - RE: Update on Properties & ARV Values - LLCS Confirmed

Paul Flather, III | Loan Processing Manager

Washington Capital Partners

www.washingtoncapitalpartners.com

2815 Hartland Road, Suite 200

Falls Church, VA, 22043

(703) 988-4169

*This message and its attachments contain confidential information. If you are not the intended recipient of this message, you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have received this e-mail by mistake and delete it from your system.*

**From:** Charles Paret <cpp@paxtonandco.com>
**Sent:** Thursday, October 31, 2019 1:17 PM
**To:** Paul Flather, III <paul@wcp.team>; Daniel Huertas <daniel@wcp.team>; Jared Fausnaught <Jared@wcp.team>
**Subject:** Update on Properties & ARV Values - LLCS Confirmed

Exhibit B

4/13/24, 5:23 PM                                    Paxton and Co Mail - RE: Update on Properties & ARV Values - LLCS Confirmed

Paul,

There were a few mistakes in here regarding some of these properties as addresses were wrong or double or no longer part of my ownership portfolio.  I've updated the list below:

The Valley Ventures properties I'm having to give back to Steve and will no longer be part of my portfolio as Steve has agreed to bail me out of one in exchange for another, which I have agreed to.   Georgia Ave NW is being taken back by Susan as I simply do not have the funds to move forward and cannot carry that.  My deadline is tomorrow and I wasn't able to finalize a solution hence it has to go.  I added a few that were missing as well that Daniel and I had agreed to.

Overall, Daniel has advanced me around $600K ( debt carry, construction advances and some company overhead expenses, but not much more than 2 payrolls).   All of which is debt that I have to pay back or the property has to get out on the refinance.

Below are the properties we have agreed to for a 50% ownership stake, but I also want to make sure and is very clear that I also have ownership in the WCP Properties I'm delivering.   I'm not signing an agreement giving up all of these without it being acknowledged on the other end as a few of those projects are literally near delivery.  It goes both ways.

The value of the 429-433 Kennedy St properties alone is over $23M once developed and my base on those deals is $700K, $900K, $1.5M respectively.

**CR Assets Contributed**

**1736 Montello Ave Holdings LLC**

All In Costs: $2.75

Value: $4.5

**201 Kennedy St Holdings LLC**

All In Costs: $2.5M

Exhibit B

Value: $4.5M

**205 West Madison LLC**

All In Costs: $4M

Value: $12M

**RI Holdings, LLC**

All In Costs: $2.5M

Value: $4M

**1260 Holbrook Holdings LLC- Currently Completed - Being Refinanced**

All In Costs: $2.3M

Value: $3.5M

**1249 Bladensburg Rd Holdings LLC**

All In Costs: $4.2M

Value: $5.5M

**1264-1268 Holbrook Holdings LLC**

All In Costs: $3.5M

Value: $5.5M

**1262 Holbrook Holdings LLC**

All In Costs: $1.6M

Value: $2.1M

**1471 Girard St Holdings LLC**

All In Costs: $2.3M

Value: $3M

**71 Kennedy St Holdings LLC**

All In Costs: $18M

Exhibit B

Value: $27M

**429 Kennedy St Holdings LLC**

All In Costs: $4.75M

Value: $8M

**208 First St Holdings LLC**

All In Costs: $15M

Value: $27M

**729 Kennedy St Holdings LLC**

All In Costs: $2.5

Value: $4.5

**433 Kennedy Holdings LLC**

All In Costs: $4.75M

Value: $8M

**635 East Main Holdings LLC**

All In Costs: $4.75M

Value: $8M

**431 Kennedy Holdings LLC**

All In Costs: $4.75M

Value: $8M

**WCP Assets Contributed**

**1216 Raum St NE**

All In Costs: $2M

Exhibit B

Paxton and Co Mail - RE: Update on Properties & ARV Values - LLCS Confirmed

Value: $4M

**1732-1736 Trinidad Ave NE**

All In Costs: $2.4M

Value: $4.5M

**1619 Swann St NW**

All In Costs: $2.3M

Value: $4M

**2449 P St NW**

All In Costs: $2.1M

Value: $2.75M

—

[Image removed by sender]

Charles Paxton Paret

Managing Partner

e. cpp@colomariver.com

m. 202.834.7673

DC | NYC | ATL | LA

This communication, including attachments, is for the exclusive use of

the named recipient and may contain proprietary, confidential or

privileged information. If you are not the intended recipient, any

Exhibit B

4/13/24, 5:23 PM

Paxton and Co Mail - RE: Update on Properties & ARV Values - LLCS Confirmed

use, copying, disclosure, dissemination or distribution is strictly
prohibited. If you are not the intended recipient, please notify the
sender immediately by return email and delete this communication and
destroy all copies. Unless specifically noted, the views, opinions and
statements contained within this communication should not be construed
to be the official position of

Coloma River Holdings

, LLC.

Exhibit B