**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CHARLES PAXTON PARET | ) | Case No. 23-217-ELG |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Wendell Webster, Chapter 7 Trustee | ) | |
| c/o Justin Fasano, Esquire | ) | Adv. Proc. 23-10025-ELG |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL HUERTAS | ) | |
| c/o The VerStandig Law Firm, LLC | ) | |
| 1452 W Horizon Ridge Pkwy # 665 | ) | |
| Henderson, NV 89012-4422 | ) | |
| | ) | |
| The VerStandig Law Firm, LLC | ) | |
| 12505 Park Potomac Ave., 6th Fl. | ) | |
| Potomac, MD 20854 | ) | |
| and | ) | |
| | ) | |
| WCP FUND I, LLC | ) | |
| c/o The VerStandig Law Firm, LLC | ) | |
| Maurice Verstandig, Esquire | ) | |
| | ) | |
| DP CAPITAL, LLC | ) | |
| c/o The VerStandig Law Firm, LLC | ) | |
| Maurice Verstandig, Esquire | ) | |
| | ) | |
| WASHINGTON CAPITAL PARTNERS | ) | |
| c/o The VerStandig Law Firm, LLC | ) | |
| Maurice Verstandig, Esquire | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

1

## THIRD AMENDED COMPLAINT

## INTRODUCTION

Plaintiff Trustee, Wendell Webster (the "Trustee") brings this complaint on behalf of the estate of the debtor, Charles Paxton Paret ("Paret"), against Defendant Daniel Huertas ("Huertas"), a prominent real estate financier in the District of Columbia, and principal of DP Capital and WCP Fund.  Huertas formed a partnership with Paret (the "HP Partnership") and then used entities he controls to lend monies to and acquire properties for, the HP Partnership, only to later fail to provide the funding necessary to repay such loans and foreclose on the properties for his own benefit and to the detriment of the HP Partnership and Paret, in violation of his fiduciary duties. This complaint outlines the establishment, operations, and financial transactions of the HP Partnership, as well as the legal disputes arising from the relationship including breach of fiduciary duty, fraud, and other claims.

## PARTIES

1. Plaintiff, Wendell Webster, is the Trustee of the immediate bankruptcy estate of Charles Paret.

2. Defendant, Daniel Huertas ("Huertas"), is a resident of the Commonwealth of Virginia. Between 2018 and the present, Huertas was Paret's asserted partner. By design, Huertas used his business entities Washington Capital Partners ("WCP") and DP Capital, LLC ("DP Capital") to facilitate his HP Partnership obligations, as described below. Huertas is the only member of WCP FUND I, LLC ("WCP Fund I" and, together with WCP and DP Capital, the "WCP Entities") and its Chief Executive Officer ("CEO").

3. Defendant WCP FUND I is an indispensable party and direct beneficiary of Defendant Huertas' engagement with Debtor.

4.  Defendant DP Capital is an entity owned by Huertas and used among other things, to service and/or foreclose on partnership properties

5.  Defendant Huertas at all times referenced herein controlled all the WCP Entities. He is also the principal and only member of DP Capital.

### FACTS COMMON TO ALL CLAIMS[1]

### INITIAL STAGES AND ESTABLISHMENT OF THE PARTNERSHIP

6.  In early 2017, Paret, a seasoned contractor with a growing portfolio of D.C. based property developments, actively sought new funding sources to expand his business ventures. During a high-profile real estate networking event in Washington, D.C., he met Huertas, who was known for his expertise in real estate finance and his significant influence in the local market. Their mutual interest in the lucrative opportunities within D.C.'s real estate market led to several in-depth discussions about potential collaboration.

7.  Paret established and maintained ownership of his properties through limited liability corporations which names usually corresponded with the location and address of the property.  The properties would be recorded in the LLCs' names.

8.  By mid-2017, these discussions materialized into negotiations regarding establishing a common law partnership. Under this agreement, Huertas would commit to providing the necessary financial backing for Paret's ongoing property acquisitions and development projects. Paret's role was to leverage his industry knowledge and skills to identify, acquire, and manage development properties, while Huertas would ensure a steady flow of capital and oversee financial aspects.

---

[1] /  This Third Amended Complaint incorporates all Exhibits attached to Plaintiff's previous complaints.

9. Under the D.C. law the association of two (2) or more persons to carry on as co-owners of a business for profit forms a partnership. Huertas and Paret formed an immediate partnership for profit.

10. The test for determining the existence of a partnership is an objective one, demonstrated as here, by writings between Huertas and Paret, in which Huertas carefully articulated the formation of the partnership including specific details thereof, including, but not limited to, profit sharing, joint control, responsibility for financial decisions, and capital contributions.

11. During the HP Partnership, Defendant Huertas enjoyed access to capital from WCP and WCP Fund I for real estate acquisition and development purposes. Based upon his knowledge of Paret's real estate dealings and potentially lucrative real estate portfolio. Huertas gleaned an opportunity to jointly acquire, by way of the HP Partnership, an interest in Paret's multiple properties and to share an equal interest therein once the potentially lucrative properties were renovated.

12. On September 20, 2019, at 2:54 PM, they effectuated the partnership in writing when Huertas penned an email to Paret confirming the relationship:

> Here is further confirmation that by providing the below capital including future capital to the partnership, this is debt that will be split 51% Daniel Huertas, 49% Charles Paret. Charles Paret will manage day to day operation of all projects (construction, development, stabilization) including in this email. ***Daniel Huertas will manage all financial aspects related to capital, partnerships, ventures and will have final word related to execution of the real estate. Charles Paret is responsible solely for all debt obligations prior to 9/20/19. (payments) Charles Paret is not going to incur any additional debt or loans against real estate attached to this email or any purchases of any additional real estate.*** Please return with agree and confirm that we will operate as such. (Emphasis added).

13. On the same date, Paret replied to the confirmation request: "Agree." The parties then acted as they had prior thereto consistent therewith.

14. On September 30, 2019, in furtherance of the agreed upon partnership, Huertas once again penned an e-mail to Paret which stated:

> Charlie –
>
> Please see attached payment requests.  By Daniel Huertas and/or companies paying the attached invoices for properties, Daniel Huertas will have 50% ownership of the properties and 51% in regard to control.  Any other partnership set by Charles Paret will be taking from his side.  ***The payments here are a loan to the partnership at 10% APR.  Before any distribution is provided, the partnership needs to pay all amounts paid here.***  (Emphasis added).
>
> - 429 Kennedy Street (#5068) - $4,030.16
> - 433 Kennedy Street (#5120) - $4,182.80
> - 4910 Georgia Ave (#5607) $13,339.91[2]

15. This arrangement meant that Huertas controlled the disbursement of funds for property purchases and development expenses, ensuring that he retained leverage over the financial side of the HP Partnership, and controlled the loan transactions *as both a partner and lender*.

16. Huertas' emails confirmed the parties' earlier collaborative property transactions, expressly characterized the relationship as a partnership, spelled out a *debt split* between them, and effectuated Huertas 51% of the debt obligation of specific LLCs, 50% ownership

---

[2] Subsequent to the formation of the HP Partnership, Huertas approved loans involving several properties including, but not limited to, 1249 Bladensburg Road, NE, 4910 Georgia Avenue, NW, and 1260 Holbrook Terrace NW, among others.  Interest obligations for the loan were Huertas' responsibility.

of the LLC Properties, and 51% control of the Properties (the "HP Partnership Agreement").

17. Notably, the HP Partnership Agreement materialized Huertas' financial interest in the HP Partnership Properties and ownership benefits without formal deeds and other recorded instruments thereby creating a stealth business relationship.

18. Consistent with the HP Partnership Agreement, Paret identified and managing the HP Partnership Properties, and Huertas maintained sole control over the financial aspects of the HP Partnership, directly managing all loan payments and secured liens on each HP Partnership Property. This arrangement meant that Huertas controlled the disbursement of funds for property purchases and development expenses, ensuring that he retained leverage over the financial side of the HP Partnership, and controlled the loan transactions *as both a partner and lender*. (Emphasis added).

19. On November 5, 2019, just two months later, Huertas required Paret to execute a Commercial Deed of Trust Note ("Deed of Trust") for three of the Properties: 5412 1st St. N.W. Washington, D.C. 20011, 5419 1st St. N.W. Washington, D.C. 20011 and 1236 Sims Pl. N.E, Washington, D.C. 20012 in the amount of $1.8 million.  See Exhibits A and B.

20. The Deed of Trust encumbered the following LLC's: 1260 Holbrook Holdings LLC, 1249 Bladensburg Rd. Holdings LLC, 1264 Holbrook Holdings LLC, 1262 Holbrook Holdings LLC, 1471 Garage St. Holdings LLC, 71 Kennedy Street Holdings LLC, 429 Kennedy Street Holdings LLC, 1736 Montello Ave. Holdings LLC, 208 1st St. Holdings LLC, 433 Kennedy Street Holdings LLC, 635 E. Main Holdings LLC, 431 Kennedy Street Holdings LLC, which Huertas and WCP Fund stated to be "collectively the borrower."

21. Huertas authored and inserted the following language which confirmed the HP Partnership

in this Deed of Trust:

> Here is further confirmation that *by providing the below capital including future capital to the partnership, this is debt that will be split 51% Daniel Huertas, 49% Charles Paret.* Charles Paret will manage day to day operation of all projects (construction, development, stabilization) including in this email. *Daniel Huertas will manage all financial aspects related to capital, partnerships, ventures and will have final word related to execution of the real estate. Huertas thus agreed to assume responsibility for 50% of Paret's real estate debt. (Emphasis added).* As a confirmed partner, Huertas was by choice a party on both sides of this transaction, borrower and creditor, and circumvented scrutiny thereof by the partnership's stealth nature. However, by virtue of the Huertas-Paret partnership he enjoyed 50% of the LLCs' debt obligations.

22. In addition to his September 2019 confirmatory partnership emails, Huertas required the

lender to include the following language in the November 2019 note which further

confirmed Huertas and his company's partnership relationship with Paret:

> In addition to and separate from all of the amounts due under this note so long as the Borrower or any affiliate of the Borrower owns the Property, or any other property set for an **Exhibit A** hereto in which are referred hearing as the "**Supplemental Properties**", *Borrower shall pay to the Lender's affiliate, DP Capital LLC, 50% of all gross revenues generated from the Property, and/or Supplemental Properties, and/or by Borrower. Whether or not a subsequent owner of the Property and/or Supplemental Properties is an affiliate of Borrower shall be determined by Lender in Lender's sole and absolute discretion. This paragraph shall survive any release, termination, and or extinguishment of the Deed of Trust. This paragraph shall not be satisfied and/or canceled without Lender's express written confirmation of satisfaction and/or cancellation.* Any statement in any certificate of satisfaction or the like releasing the Deed of Trust describing this Note as having been paid in full shall not apply to this paragraph. If the Property or any of the Supplemental Properties is subdivided into condominium units, this paragraph shall apply to each and every condominium unit. *If the Deed of Trust is released, terminated, and/or extinguish, upon Lender's request to the Borrower, the Operating Agreement of the Borrower shall be amended (1) to acknowledge and confirm the rights of the Lender set forth in this paragraph, and (2) to provide that Borrower shall not lease, convey, or encumber property or Supplemental Properties, without Lender's written permission.* Moreover, upon Lender's request to Borrower, Borrower shall record with the Recorder of Deeds of the District of Columbia written instrument acknowledging and confirming the rights of Lender as set forth

7

in this paragraph, and, should Borrower fail to do so immediately, Lender shall be entitled, to file for the declaratory judgment and to record a *lis pendens* with the Recorder of Deeds of the District of Columbia.

(Emphasis added).

23. This provision, authored by Huertas, demonstrated his intention to use his lending companies to control the financing of the partnership's development projects, independent of the underlying loan agreements, while simultaneously personally profiting from the partnership relationship.

24. Huertas included this additional wording.

"In addition to in separate from all other amount to due under this note, Borrower should pay to Lender's affiliate DP Capital LLC, 50% of the gross sales proceeds upon a bona fide, arm's length sale of the Property or any or all of the Supplemental Property by Borrower or any affiliate of the buyer to an unaffiliated 3rd party purchaser with a sales price of no less than the market value of the Property.…

25. This Deed of Trust paragraph similarly survived repayment of all principal interest due under the Deed of Trust and its release, termination, and or extinguishment of the Deed of Trust.

26. Additionally, the HUD-1 on this Deed of Trust confirmed a payment of $1,694,493.09 to WCF Fund I as a "construction draw."

27. The specific manner in which the $1,694,493.09 was expended is yet to be accounted for. The clearly stated Supplemental Properties included in the November 2019 Deed of Trust include the following:

1. 1736 Montello Avenue NE, Washington DC 20002 (4053/0022)
2. 2. 1738 Montello Avenue NE, Washington DC 20002 (5043/0021)
3. 205 W Madison Street St, Baltimore MD 21201 (11-10-0522-028 & 11-10-0522-030)
4. 107 Rhode Island Avenue NW, Washington DC 20001 (3113/0100)
5. 1260 Holbrook Terrace NE, Washington DC (4055/0049)
6. 1249 Bladensburg Road NE, Washington DC 20002 {4445/0139)

7. 1264 Holbrook Terrace NE, Washington DC 20002 {4055/0243)
8. 1268 Holbrook Terrace NE, Washington DC 20002 {4055/0245)
9. 1471 Girard Street NW, Washington DC 20009 (2669/0045)
10. 71 Kennedy St NW, Washington DC 20011 (3389/0137)
11. 429 Kennedy St NW, Washington DC 20011{3260/0040)
12. 208 First Street, Berryville VA 22611 (Tax Map # 14A3-A -14)
13. 635 East Main Street, Berryville, VA 22611 (Tax Map #14A6410 and 14A6411)
14. 431 Kennedy St NW, Washington DC 20011 (3260/0041)

28. The Deed of Trust similarly survived repayment of all principal interest due under the Deed of Trust and its release, termination, and/or extinguishment.

29. Additionally, the HUD-1 on the Deed of Trust confirmed a payment of $1.8 million dollars to WCF Fund I as a "construction draw." The specific manner in which the $1.8 Million Dollars was expended is yet to be accounted for.

30. Huertas to date maintains control over the bank accounts of the HP Partnership and continues to operate the HP Partnership, without Paret.

31. In early 2020, the onset of the COVID-19 pandemic brought all HP Partnership Property development projects to a sudden halt. The lockdowns and economic uncertainties of COVID-19 made it impossible for the HP Partnership to continue with the planned developments.

32. During the COVID-19 crisis, Huertas began effectuating his fraudulent scheme by foreclosing on HP Partnership Properties without Paret's knowledge.

33. Through information and belief, by September 2020, Huertas unilaterally initiated foreclosure proceedings on multiple HP Partnership Properties owned by the HP Partnership.

34. Huertas simultaneously acted as a servicer for WCP through DP Capital and benefited from not only providing the HP Partnership loans but also from the actual foreclosures.

9

35. Huertas effectuated absolute and total control over all HP Partnership Properties by way of foreclosing on them and converting the ownership thereof to the name of entities in which he enjoys sole or majority control.

36. Huertas executed these foreclosures as either lender, servicer, partner.

37. For example, of the twenty-four HP Partnership Properties that Huertas foreclosed many of the multi-million-dollar HP Partnership Properties were sold for mere pennies on the dollar to himself or Huertas-controlled entities.

38. Through information and belief, Huertas or a WCP Entity would purchase the HP Partnership Properties for significantly less than market value to reduce the value of the asset and to evade taxation.

39. Huertas effectively used his conflicted dual position/status as creditor and debtor/partner to acquire exclusive ownership of HP Properties.

40. Huertas and WCP Entity actions on behalf of the HP Partnership's creditors were adverse to the HP Partnership's interests; his simultaneous roles as creditor and debtor/partner in foreclosing on properties owned by the HP Partnership constituted one or more breaches of his duty of loyalty to the HP Partnership.

41. As a partner in the HP Partnership, Huertas bore equal, if not full, responsibility for the HP Partnership's debt obligations.

42. By virtue of the Huertas-orchestrated lender foreclosures, while he was both partner and lender, WCP Entities acquired ownership of the HP Partnership Properties.

43. Through information and belief, Huertas conducted fraudulent loan transactions on behalf of the HP Partnership, utilizing Paret's credit and credentials without Paret's knowledge.

44. Huertas, while a partner with the borrower-debtor, made loans to the HP Partnership as the principal creditor-lender, while simultaneously owing a fiduciary duty to the HP Partnership.

45. Multiple limited liability corporations are involved in the HP partnership transaction, including as follows:

    a. 4910 Georgia Ave Holdings LLC purchased 4910 Georgia Ave., NW on September 28, 2018, for $3,850,000.[3]

    b. 423 Kennedy St Holdings LLC purchased 419-423 Kennedy Street, NW on September 1, 2019, for a combined amount of $1,725,000.

    c. 429 Kennedy St Holdings LLC purchased 429 Kennedy Street, NW on April 20, 201,7 for $900,000.

    d. 431 Kennedy St Holdings LLC purchased 431 Kennedy Street, NW on January 11, 2019, for  $1,100,000.

    e. 433 Kennedy St Holdings LLC purchased 433 Kennedy Street, NW on November 3, 2017, for $940,000.

    f. 729 Kennedy St Holdings LLC purchased 729 Kennedy Street, NW on December 13, 2018, for $600,000.

    g. 71 Kennedy St Holdings LLC purchased 67-71 Kennedy Street, NW on March 14, 2018, for a combined amount $1,700,000.

    h. 201 Kennedy St Holdings LLC purchased 201-203 Kennedy Street, NW on March 14, 2018, for a combined amount of $1,350,000.

---

[3] Paragraph 45a-u describe entities that purchased the HP Partnership Properties on behalf of the HP Partnership by Paret before or at the onset of the HP Partnership. Infra.

i. 5505 1st St Holdings LLC purchased 5505 1st Street, NW for $1,000,000 on July 19, 2017.

j. 5419 1st St NW Holdings LLC purchased 5419 1st Street, NW for $975,000 on April 13, 2017.

k. Design Build Group LLC, for 1236 Simms Place Holdings LLC purchased 1236 Simms Placen NE for $340,000 on January 11, 2018 (Foreclosed by Capital Bank, now owned by WCP as of 12.4.20)

l. 5412 1st St Holdings LLC purchased of a 5412 1st Street. NW for $1,216,396.52 on July 23, 2018.

m. 1260 Holbrook Holdings LLC purchased 1260 Holbrook Terrace, NE for $1,100,000 on August 31, 2018

n. 1262 Holbrook Holdings LLC purchased 1262 Holbrook Terrace NE for $700,000 on December 26, 2017

o. 1264 Holbrook Holdings LLC (1264, 1266, 1268 Holbrook Terrace) purchased 1262-1264-1268 Holbrook Terrace, NE for $1,390,000 on September 28, 2018.

p. 1249 Bladensburg Rd Holdings LLC purchased 1249 Bladensburg Road, NE for $1,400,000 on April 23, 2019

q. 205 West Madison Holdings LLC purchased 205 West Madison Street, Baltimore, MD, for $1,372,000 on April 23, 2019.

r. 1471 Girard St Holdings LLC purchased 1471 Girard Street, NW for $1,188,495.87 on July 19, 2016.

s. 2507 I St. Holdings LLC purchased 2507 I Street, NW for $1,188,495.87 on April 11, 2018

t.  Valley Ventures Fund 2 LLC purchased 159 Fairfield Lane, Berryville, VA 22611 for $1,590,000.  Huertas now owns the property as a second home.

u.  RI Holdings LLC purchased 107 Rhode Island Avenue, NW for $1,000,000 on July 31, 2018.

46. Huertas used multiple entities to purchase foreclosed properties belonging to the HP Partnership, including the following, which are incorporated into the definition of "WCP Entities":

a.  WCP 4910 GEORGIA AVE NW LLC purchased by foreclosure 4910 Georgia Ave NW on 10.6.22 for $9,008,640, with a completed appraised value of over $18,000,000.   The payoff at the time of foreclosure was under $7,500,000.

b.  Cunningham Apartments LLC purchased 429 Kennedy St NW on 12.20.20 for $2,000,000 (Sale Not Recorded with Office of Tax and Revenue, $100K brought to closing by the new entity)

c.  Cunningham Apartments LLC purchased 431 Kennedy St NW on 12.20.20 for $2,000,000 (to new potential stealth partnership")

d.  WCP 433 KENNEDY ST NW LLC purchased by foreclosure 433 Kennedy St NW on 10.5.22 for $2,000,000.

e.  DEVELOPER RE1 LLC purchased through a potential stealth partnership Sale (Not Recorded with Office of Tax and Revenue), $1M brought to closing by new entity with new investors at a $3M discount than the original contract price, which was $6M.

f.  WCP 5412 1ST STREET LLC purchased by foreclosure 5412 1st St NW on 9.21.22 for $1,600,000.

47. Consistent with applicable D.C. partnership law, the HP Partnership should be dissolved, and this Court should require an appropriate accounting to assess its assets and liabilities, and further establish a constructive trust.

## COUNT I
## DECLARATORY JUDGMENT

48. All of the foregoing allegations are incorporated by reference as if set forth in full herein.

49. Under the D.C. Uniform Partnership Act at D.C. Code § 29-602.029(a), "the association of two (2) or more persons to carry on as co-owners of a business for profit shall form a partnership." A partnership is usually formed when as here, Paret and Huertas contracted to place their money, effects, labor, and skill or some or all of them, in lawful commerce or business, and to divide profit and bear the loss in certain proportions.

50. In their entirety, the communications, intentions, and actions regarding the operation of a real estate business for profit between Paret and Defendant Huertas, as spelled out in the September 20, 2019, and September 30, 2019, e-mails attached hereto, among other documents, and as confirmed by extensive financial/real estate dealings, establish the existence of a business partnership.

WHEREFORE, Plaintiff seeks a declaratory judgment, to wit, that the parties created and entered into a partnership agreement and relationship.

## COUNT II
## BREACH OF FIDUCIARY DUTY

51. All of the foregoing allegations are incorporated by reference as if set forth in full herein.

52. At all times as stated herein, Huertas entered into the HP Partnership with Paret, and such partnership was neither terminated nor dissolved. All of Paret's purchases through his

LLC or otherwise between April 2017 and September, 2022 became properties owned, partly or fully, by the HP Partnership.

53. Huertas' duty of loyalty required him, among other things, to: (1) account to the HP Partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct of the HP Partnership business, to avoid conflicts of interest and self-dealing.

54. Huertas acted adversely to the HP Partnership by using DP Capital to leverage his interests in the HP Partnership and making executive decisions as the CEO of WCP to determine defaults and institute foreclosures involving partnership properties. He essentially operated in a conflict-of-interest scenario with self-dealing implications.

55. Huertas instituted or caused foreclosures of properties owned by the HP Partnership in order to acquire exclusive ownership interests in the real estate initially acquired via the HP Partnership.

56. Huertas misappropriated HP Partnership opportunities by using insider knowledge to benefit personally and through his controlled entities, to the detriment of the HP Partnership.

57. Huertas failed to disclose material information related to the financial status and operations of the HP Partnership, including the actual availability of funds, among other things, thereby breaching his duty of full disclosure under the HP Partnership Agreement.

58. Huertas engaged in self-dealing by initiating foreclosure proceedings on HP Partnership properties to acquire them at undervalued prices for his own benefit, without properly notifying Paret or seeking his approval.

15

59. Huertas acted in a manner that prioritized his personal gains over the interests of the HP Partnership, thereby breaching the HP Partnership Agreement's requirement to act in the best interest of the HP Partnership.

60. Huertas' simultaneously acted as creditor and borrower, servicer, trustee, and partner, thereby frustrating the HP Partnership and making it economically impractical to continue.

61. Huertas appropriated HP Partnership opportunities and properties through DP Capital and WCP's adverse collection and foreclosure actions against HP Partnership Properties.

62. Huertas engaged in equity stripping by artificially inflating interest rates, creating default statuses, and initiating foreclosure proceedings to strip equity from HP Partnership Properties to enrich himself at the expense of the HP Partnership.

63. By his above-mentioned actions, Huertas was able to acquire the HP Partnership Properties at significantly undervalued prices, further stripping equity from the HP Partnership and transferring the properties to his controlled entities.

64. Based on the foregoing, Defendant Huertas breached his duty of loyalty to Paret as his partner and to the HP Partnership.

65. As a result of Defendant' intentional actions, Plaintiff suffered economic damages in excess of $10,000,000 or an amount as determined by this court.

66. Plaintiff asserts that punitive damages against Defendant Huertas in the amount of $10,000,000.00 should be awarded based on Defendant's egregious and malicious conduct.

67. Given the status and legal issues regarding the HP Partnership, a careful winding-up process via a court-ordered dissolution, accounting, and resolution of certain legal, factual, and financial debt/equity issues is mandated.

WHEREFORE Plaintiff prays that this Honorable Court finds each of the Defendants jointly and severally liable to Plaintiff for:  compensatory and economic damages in an amount to be determined at trial; punitive damages; costs and fees including pre and post judgment interest; an accounting of all HP Partnership assets and liabilities; imposition of a constructive trust on HP Partnership Properties; that the trustee of the constructive trust transfers all HP Partnership Properties to the trust;  equitable and injunctive relief where appropriate;  and such further relief as justice requires.

## COUNT III
## BREACH OF PARTNERSHIP AGREEMENT
### (Defendant Huertas)

68. All of the foregoing allegations are incorporated by reference as if set forth in full herein.

69. Defendant Huertas breached the HP Partnership Agreement by failing to fulfill his obligations as agreed upon in the terms of the HP Partnership Agreement, including but not limited to providing the promised financial backing for property acquisitions and development projects.

70. Huertas unilaterally altered the financial terms of the HP Partnership, including raising interest rates and declaring default statuses without Paret's consent, thereby violating the agreed-upon terms of the HP Partnership.

71. Huertas' actions resulted in significant financial harm to Paret, including the loss of HP Partnership Properties, investment capital, and expected profits from the development projects.

72. Huertas' conduct has caused irreparable harm to the HP Partnership's business reputation and has undermined the trust and confidence essential to the HP Partnership's success.

73. In addition to the breach of the HP Partnership Agreement, Huertas' actions constitute a breach of the implied covenant of good faith and fair dealing, as his conduct was aimed at undermining the HP Partnership and exploiting it for personal gain.

WHEREFORE Plaintiff prays that this Honorable Court finds each of the Defendants jointly and severally liable to Plaintiff for: compensatory and economic damages in an amount to be determined at trial; punitive damages; costs and fees including pre and post judgment interest; an accounting of all HP Partnership assets and liabilities; imposition of a constructive trust on HP Partnership Properties; that the trustee of the constructive trust transfers all HP Partnership Properties to the trust; equitable and injunctive relief where appropriate; and such further relief as justice requires.

**COUNT IV**

**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

74. All of the foregoing allegations are incorporated by reference as if set forth in full herein.

75. Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing. Through their improper conduct, the Defendants have breached the implied covenant of good faith and fair dealing contained in the HP Partnership Agreement and all of the HP Partnership loans, namely all of the promissory notes, and deeds of trust associated with the HP Partnership Properties.

WHEREFORE Plaintiff prays that this Honorable Court finds each of the Defendants jointly and severally liable to Plaintiff for: compensatory and economic damages in an amount to be determined at trial; punitive damages; costs and fees including pre and post judgment interest; an accounting of all HP Partnership assets and liabilities; imposition of a constructive trust on HP

Partnership Properties; that the trustee of the constructive trust transfers all HP Partnership Properties to the trust; equitable and injunctive relief where appropriate; and such further relief as justice requires.

## COUNT V.
## FRAUD

76. All of the foregoing allegations are incorporated by reference as if set forth in full herein.

77. Defendant Huertas, individually and through his controlled entities DP Capital and WCP, engaged in fraudulent conduct by intentionally misrepresenting the total amount of funds available for deployment to the HP Partnership, thereby inducing Paret to rely on these false representations to his detriment.

78. Huertas, acting through DP Capital and WCP, falsely represented that sufficient funds were available to support the HP Partnership's real estate development projects, knowing that the actual funds available were significantly less than represented.

79. Huertas and his entities used the promise of available funds to induce Paret to commit substantial personal and investor resources into the HP Partnership, under the false assurance that the necessary capital would be forthcoming.

80. Once Paret was fully committed and the properties were acquired, Huertas and his entities manipulated the financial terms, including raising interest rates and declaring default statuses, to intentionally delay or prevent further draws or release of capital.

81. Huertas and his entities intentionally created artificial default statuses and inflated interest rates to financially strain the HP Partnership, thereby gaining leverage and control over the HP Partnership Properties.

82. By manipulating default statuses and interest rates, Huertas intended to and did create conditions under which Paret could not meet financial obligations, thus enabling Huertas

to initiate foreclosure proceedings and acquire the properties at significantly undervalued prices.

83. Huertas' fraudulent actions intentionally and maliciously forced Paret into default and financial distress, thereby allowing Huertas to acquire the HP Partnership Properties at a fraction of their true value.

84. Huertas intentionally misrepresented of material facts with knowledge of the falsity and a malicious intent to deceive.

85. As a result of Huertas' fraudulent actions, Plaintiff has suffered substantial financial losses, including the loss of property, investment capital, and expected profits from the development projects.

86. Plaintiff has also suffered reputational damage and loss of business opportunities due to the fraudulent conduct of Huertas and his entities, and significant mental and emotional distress and humiliation.

WHEREFORE Plaintiff prays that this Honorable Court finds each of the Defendants jointly and severally liable to Plaintiff for: compensatory and economic damages in an amount to be determined at trial; punitive damages; costs and fees including pre and post judgment interest; an accounting of all HP Partnership assets and liabilities; imposition of a constructive trust on HP Partnership Properties; that the trustee of the constructive trust transfers all HP Partnership Properties to the trust; equitable and injunctive relief where appropriate; and such further relief as justice requires.

**JURY TRIAL DEMANDED**

Respectfully submitted,

**/s/Donald M. Temple**
Donald M. Temple #408749
2522-B Virginia Avenue, N.W.
Washington, DC 20037
Tel: (202) 628-1101
dtemplelaw@gmail.com

COUNSEL FOR TRUSTEE