**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CHARLES PAXTON PARET, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| WENDELL WEBSTER, CHAPTER 7 TRUSTEE, | ) | |
| | ) | Adv. Case No. 23-10025-ELG |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL HUERTAS, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPPOSITION TO THE TRUSTEE'S MOTION FOR SUMMARY**
**JUDGMENT ON COUNT I OF THE THIRD AMENDED COMPLAINT**

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

**TABLE OF CONTENTS**

I.      Introduction...........................................................................................................1

II.     Standard ..............................................................................................................3

III.    Response to Statement of Material Facts..........................................................5

        a.  Paragraph 1  ...........................................................................................5

        b.  Paragraphs 3, 6 and 7  ...........................................................................7

        c.  Paragraph 17  .........................................................................................9

        d.  Paragraph 19  .......................................................................................10

        e.  Paragraph 28  .......................................................................................11

        f.  Paragraph 35  .......................................................................................11

        g.  Paragraph 36  .......................................................................................12

IV.     Argument: Judgment Should be Entered in Favor of the Defendants on Count I ...........13

        a.  The Trustee is Objectively Errant in Suggesting a Partnership May
            Invade a Limited Liability Company ......................................................13

        b.  The Lending Activities of WCP and DPCL Cannot Give Rise to a
            Partnership ...........................................................................................20

        c.  The Parties' Dealings Show Formal Business Ventures Were Used in
            Lieu of a Partnership ............................................................................27

V.      Conclusion ........................................................................................................31

# TABLE OF AUTHORITIES

**Cases**

*Akers v. Liberty Mut. Grp.*,
744 F. Supp. 2d 92 (D.D.C. 2010) ............................................................................... 3, 12

*Albino v. Baca*,
747 F.3d 1162 (9th Cir. 2014) ............................................................................... 4

*Ames v. Ohio Dep't of Youth Servs.*,
605 U.S. 303 (2025) ............................................................................... 3

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................... 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 6

*Beckman v. Farmer*,
579 A.2d 618 (D.C. 1990) ............................................................................... 22, 23, 24, 25

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................... 6

*Berger v. Eichler*,
211 A.D. 479 (N.Y. App. Div. 1924) ............................................................................... 17

*Boag v. Thompson*,
208 A.D. 132 (N.Y. App. Div. 1924) ............................................................................... 17

*Brock v. Poor*,
216 N.Y. 387 (N.Y. 1915) ............................................................................... 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................... 3

*Chevalier v. Woempner*,
290 P.3d 1031 (Wash. App. 2012) ............................................................................... 18

*Cohen v. Orlove*,
57 A.2d 810 (Md. 1948) ............................................................................... 22

*Cormier v. Pennzoil Exploration & Prod. Co.*,
969 F.2d 1559 (5th Cir. 1992) ............................................................................... 13

*Cotton v. Wash. Metro. Area Transit Auth.*,
2004 U.S. Dist. LEXIS 3829 (D.D.C. Mar. 3, 2004) ............................................................................... 13

*Crespi v. Crespi*,
  238 A.D. 794 (N.Y. App. Div. 1933) ................................................................ 16

*Eung Kwon Kim v. DP Capital LLC*,
  2024 U.S. Dist. LEXIS 169885 (D.D.C. Sep. 20, 2024) ................................. 13

*Evans v. Sebelius*,
  716 F.3d 617 (D.C. Cir. 2013) ........................................................................... 4

*Farouki v. Petra Int'l Banking Corp.*,
  968 F. Supp. 2d 216 (D.D.C. 2013) ................................................................... 4

*Fenwick v. Unemployment Compensation Commission*,
  44 A.2d 172 (N.J. Ct. App. 1945) ................................................................... 22

*Garside v. Osco Drug, Inc.*,
  895 F.2d 46 (1st Cir. 1990) .............................................................................. 13

*Geiger v. Crestar Bank*,
  778 A.2d 1085 (D.C. 2001) .............................................................................. 25

*Greer v. Paulson*,
  505 F.3d 1306 (D.C. Cir. 2007) ....................................................................... 13

*Heck & Paetow Claim Service, Inc. v. Heck*,
  286 N.W.2d 831 (Wis. 1980) ........................................................................... 17

*Hittle v. City of Stockton*,
  145 S. Ct. 759 (2025) ......................................................................................... 3

*Hooper v. Yoder*,
  737 P.2d 852 (Colo. 1987) ............................................................................... 16

*In re Shkor*,
  644 B.R. 410 (Bankr. D.D.C. 2022) ................................................................... 4

*In re Washington Communications Group, Inc.*,
  18 B.R. 437 (Bankr. D.D.C. 1982) .............................................................. 21, 22

*Jackson v. Hooper*,
  75 A. 568 (N.J. Eq. 1910) ........................................................................... 16, 17

*Jones Lang LaSalle Brokerage, Inc. v. 1441 L Assocs., LLC*,
  597 F. Supp. 3d 64 (D.D.C. 2022) ..................................................................... 4

*Kowal v. MCI Commc'ns. Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ................................................................. 6

*Love v. Mail on Sunday*,
  489 F. Supp. 2d 1100 (C.D. Cal. 2007) ................................................. 19

*Martin v. Santorini Capital, LLC*,
  236 A.3d 386 (D.C. 2020) ...................................................................... 29

*MAS Assocs., LLC v. Korotki*,
  214 A.3d 1076 (Md. 2019) ...................................................................... 17

*Moore v. Hartman*,
  571 F.3d 62 (D.C. Cir. 2009) .................................................................... 4

*NRA of Am. v. Vullo*,
  602 U.S. 175 (2024) .................................................................................. 6

*Overseas Private Inv. Corp. v. Industria de Pesca, N.A.*,
  920 F. Supp. 207 (D.D.C. 1996) ............................................................. 25

*Ponder v. Chase Home Fin., LLC*,
  666 F. Supp. 2d 45 (D.D.C. 2009) .......................................................... 25

*Powder Mill Vill. v. Miller (In re Miller)*,
  674 B.R. 316 (Bankr. D. Md. 2025) .......................................................... 4

*Queen v. Schultz*,
  747 F.3d 879 (D.C. Cir. 2014) ........................................... 22, 23, 24, 25

*Quintero v. Urb. Infraconstruction LLC*,
  2026 TXBC LEXIS 4 (Tex. Bus. Ct. 2026) .............................................. 18

*Ricci v. DeStefano*,
  557 U.S. 557 (2009) .................................................................................. 4

*Rubenstein v. Small*,
  273 A.D. 102 (N.Y. App. Div. 1947) ....................................................... 22

*Scott v. Harris*,
  550 U.S. 372 (2007) .................................................................................. 4

*Seigel v. Liebowitz*,
  230 A.D. 736 (N.Y. App. Div. 1930) ....................................................... 16

*Sharpe v. Bair*,
  580 F. Supp. 2d 123 (D.D.C. 2008) .................................................................... 3

*Sun River Stock & Land Co. v. Mont. Tr. & Sav. Bank*,
  262 P. 1039 (Mont. 1928) .............................................................................. 16

*Sununu v. Philippine Airlines, Inc.*,
  638 F. Supp. 2d 35 (D.D.C. 2009) .................................................................. 6

*Super Star Int'l, LLC v. Fresh Tex Produce, LLC*,
  531 S.W.3d 829 (Tex. App.—Corpus Christi-Edinburg 2017) ................................ 18

*Thomashefsky v. Edelstein*,
  192 A.D. 368 (N.Y. App. Div. 1920) ............................................................... 17

*Wallasey Tenants Ass'n, Inc. v. Varner*,
  892 A.2d 1135 (D.C. 2006) ........................................................................... 29

*Weisman v. Awnair Corp. of Am.*,
  144 N.E.2d 415 (N.Y. 1957) .......................................................................... 16

*Wright v. Herman*,
  230 F.R.D. 1 (D.D.C. 2005) ........................................................................... 17

**Statutes**
D.C. Code § 29-105.03 .................................................................................. 16

D.C. Code § 29-602.04 ......................................................................... 19, 20, 26

D.C. Code § 29-801.01 .................................................................................. 15

D.C. Code § 29-801.04 .................................................................................. 25

D.C. Code § 42-306 ...................................................................................... 27

Md. Code Ann., Corps. & Ass'ns § 9A-202 ........................................................ 17

Tex. Bus. Org. Code § 152.051 ....................................................................... 18

**Rules**
District of Columbia Rule of Professional Conduct 1.7 ............................................ 1

Federal Rule of Bankruptcy Procedure 7012 ........................................................ 1

Federal Rule of Bankruptcy Procedure 7056 ...................................................... 1, 3

Federal Rule of Civil Procedure 12 ........................................................................................... 1

Federal Rule of Civil Procedure 56 ................................................................................. *passim*

**Treatises**
10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice
and Procedure § 2720 (3d ed. 1998) .................................................................................... 4

2 S. Rowley, Partnership § 58.11 (2d ed. 1960) ......................................................... 16

Come now Daniel Huertas ("Mr. Huertas") and DP Capital LLC d/b/a Washington Capital Partners ("DPCL") (collectively, the "Defendants" and each a "Defendant"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56, and oppose the motion for summary judgment (the "Motion"), DE #55, filed by Wendell Webster (the "Trustee" or "Plaintiff") in his capacity as chapter 7 trustee of the bankruptcy estate of Charles Paret ("Mr. Paret" or the "Debtor"),[1] and in support thereof state as follows:

## I.       Introduction

Mr. Paret is not now—and never has been—a partner of Mr. Huertas or DPCL. To the contrary, Mr. Paret operates (or, in some circumstances, formerly operated) a large consortium of limited liability companies, many of which did business with DPCL and WCP Fund I LLC ("WCP"). Yet the very manner in which such business was conducted is ultimately dispositive of the fallacy underlying the Trustee's theories in this case: an arm's length relationship perennially existed between DPCL and Mr. Paret's entities, with DPCL or WCP filling the role of lender and Mr. Paret's entities filling the necessarily-adverse role of borrower and property owner.

While the Motion (inclusive of the supporting brief) is no doubt well-written, much of the artfulness of the drafting comes in commanding acute focus on decontextualized details at the expense of any macroscopic examination. When viewed cumulatively, the core theory necessarily sputters for the simple reason that the Trustee's proposed construct is facially nonsensical and

---

[1] Since the filing of this case, undersigned counsel has been engaged to represent Wendell Webster, in his capacity as chapter 7 trustee of a different bankruptcy estate, in four separate cases. It bears emphasis that such representation is of Mr. Webster *in his capacity* as trustee of a distinct, wholly unrelated estate. Undersigned counsel does not represent Mr. Webster personally and there is no material connection between the instant case and the four unrelated cases. Accordingly, there does not exist a conflict under the District of Columbia Rules of Professional Conduct. *See* D.C. Bar Appx. A, Rule 1.7.

legally nonviable. To accept the Motion's allegations, as applied to misconstrued legal theories, is necessarily to posit that in more than 20 real estate transactions, the (i) owner; (ii) borrower; (iii) lender; and (iv) lender's principal were, in fact, all the same unnamed partnership. It is not merely that such a theory defies economic sensibility (a lender would assuredly not pay recording taxes so as to apply liens to properties the lender already owns) and legal reason (myriad deeds of trust would merge with underlying deeds of ownership if the instruments truly all benefit the same unnamed partnership); it is, too, that such a theory relies on a belief this Honorable Court will disregard a vast pantheon of statutory provisions and caselaw governing corporate formalities and the formation of general partnerships.

At core, adverse parties are not—and cannot be—partners. Nor may partnerships invade or supersede the form of limited liability companies or corporations. Both the District of Columbia Code and the precedent of this Honorable Court make such abundantly clear. Moreover, while the theoretical formation of a partnership via e-mail holds a place as revered in the legal lexicon as the making of a binding contract on the back of a cocktail napkin, the facts of this case—as exemplified by the Trustee's own summary judgment exhibits—demonstrate no such partnership ever took form. Counterparties to financial transactions are, by operative and legal necessity, incapable of being deemed partners in the same transaction. And nothing in the Motion serves to undermine this sacrosanct legal reality.

For these reasons, and as extrapolated upon *infra*, the Motion merits denial and judgment should be entered in favor of the Defendants on count I of the third amended complaint, DE #39-1, pursuant to the allowances of Federal Rule of Civil Procedure 56(f).

2

## II.    Standard

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056. While the applicable bankruptcy rule does add certain criteria to the correlative rule of civil procedure, *see* Fed. R. Bankr. P. 7056, the Defendants acknowledge those added criteria are immaterial in light of the timely nature of the Motion in this case.

Relevantly, summary judgment is to be afforded ". . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Absent such a showing, summary judgment is to be denied, and "a plaintiff need not establish or prove any elements—by a preponderance or otherwise—to survive summary judgment." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 322 (2025) (Thomas, J., concurring) (quoting *Hittle v. City of Stockton*, 145 S. Ct. 759, 761 (2025) (Thomas,. J., dissenting) (slip opinion)).

As noted by the United States District Court for the District of Columbia: "To determine which facts are 'material,' a court must look to the substantive law on which each claim rests. A 'genuine issue' is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." *Akers v. Liberty Mut. Grp.*, 744 F. Supp. 2d 92, 94-95 (D.D.C. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). *See also Sharpe v. Bair*, 580 F. Supp. 2d 123, 129 (D.D.C. 2008) ("A material fact is one that is capable of affecting the outcome of the litigation, and a genuine issue of material fact exists if 'a reasonable jury could return a verdict for the nonmoving party.'") (quoting *Anderson*, 477 U.S. at 248).

Further, as observed by this Honorable Court, "[w]hen evaluating a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party and accept the nonmoving party's evidence as true." *In re Shkor*, 644 B.R. 410, 414 (Bankr. D.D.C. 2022) (citing *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Evans v. Sebelius*, 716 F.3d 617, 619 (D.C. Cir. 2013)). Moreover, if "undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate." *Jones Lang LaSalle Brokerage, Inc. v. 1441 L Assocs., LLC*, 597 F. Supp. 3d 64, 67 (D.D.C. 2022) (citing *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009)).

Equally relevantly, where—as here—only one party moves for summary judgment, the Federal Rules of Civil Procedure nonetheless permit judgment to be entered in favor of the nonmoving party "[a]fter giving notice and a reasonable time to respond. . ." Fed. R. Civ. P. 56(f). *See also Farouki v. Petra Int'l Banking Corp.*, 968 F. Supp. 2d 216, 221 (D.D.C. 2013) (giving notice that summary judgment will be entered for a non-movant in the context of a declaratory judgment suit); *Powder Mill Vill. v. Miller (In re Miller)*, 674 B.R. 316, 329 (Bankr. D. Md. 2025) (Chavez-Ruark, J.) ("The Court may grant summary judgment for a nonmovant and may grant a motion for summary judgment on grounds not raised by a party.") (citing Fed. R. Civ. P. 56(f)); *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) ("[T]he practice of allowing summary judgment to be entered for the nonmoving party in the absence of a formal cross-motion is appropriate. It is in keeping with the objective of Rule 56 to expedite the disposition of cases. . .") (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2720, at 351-52 (3d ed. 1998)).

### III.   Response to Statement of Material Facts

The Defendants dispute some—but not all—of the material facts the Trustee posits in the statement accompanying the Motion (the "SOF"), DE #55-2. The following is a recitation of which facts are subject to dispute and the rationale thereof.

### a.   Paragraph 1

The Trustee suggests Mr. "Huertas is the sole member and controlling principal of DP Capital." SOF, DE #55-2, at ¶ 1 (citing Motion Exhibit 1, DE #55-4, at p. 2, n. 1). This is not only counterfactual but the Trustee's basis for this assertion is demonstrative of either an indifference to factual fidelity or a willing disregard for the most basic premises of civil litigation.

Specifically, the Trustee relies on a memorandum opinion and order, in the matter of *Kim v. DP Capital LLC*, Case No. 23-1101 (D.D.C. 2023) (the "Kim Litigation"), as the sole basis supporting this proposition. And that memorandum opinion absolutely does state, *inter alia*, "Huertas is the sole member of DP Capital LLC and WCP Fund I, LLC." *See* Motion Exhibit 1, DE #55-4, at p. 2, n. 1 (citing amended complaint at ¶¶ 3-4). Yet the internal citation for that assertion—coupled with the context of the memorandum opinion—should immediately stand out to the trustee as enormously problematic.

Indeed, the memorandum opinion in question is one that grants in part, and denies in part, a motion to dismiss filed in the Kim Litigation. The memorandum opinion is *not* a summary judgment order, nor is the memorandum opinion a series of factual findings and legal conclusions following a trial on the merits. And this is of palpable import insofar as, when considering a motion to dismiss (as was done in this specific memorandum opinion—hence the internal references to paragraphs of an amended complaint), a district court "assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom." *NRA of Am. v. Vullo*, 602 U.S. 175, 181

(2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009)). *See also Sununu v. Philippine Airlines, Inc.*, 638 F. Supp. 2d 35, 38 (D.D.C. 2009) ("A court considering such a motion to dismiss must assume that all factual allegations are true, even if they are doubtful.") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kowal v. MCI Commc'ns. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

So the Trustee is taking allegations from other plaintiffs, in another lawsuit, and citing to a discussion of those allegations as a factual authority for the truthfulness thereof. This is not only plain legal folly but, worse, this is something the Trustee would know to be wholly unreliable if he went so far as to examine the rest of the docket in the Kim Litigation.

Indeed, the plaintiffs in the Kim Litigation do allege Mr. Huertas to be the sole member of DPCL. The plaintiffs in that case also allege Mr. Huertas to be the sole member of WCP. And the falsity of those allegations has since come to the fore, in WCP's motion to dismiss for lack of subject matter jurisdiction since, as it turns out, Mr. Huertas is *not* the sole member of either entity. *See* Motion for Summary Judgment or, in the Alternative, to Dismiss, attached hereto as Exhibit A.

For want of ambiguity, Mr. Huertas is *not* the sole member of DPCL, *see* Declaration of Daniel Huertas ("Huertas Dec."), attached hereto as Exhibit B ("Ex. B"), at ¶ 3, nor is Mr. Huertas the sole member of WCP, *id.* at ¶ 4. And, as discussed *infra*, this is of enormous moment insofar as the Motion is ultimately premised, nearly *en toto*, on the assumption that Mr. Huertas is the sole individual with a pecuniary interest in these two entities.

Additionally, a certain irony merits notation. The Trustee, in a suit where he is pursuing claims largely based on the word of Mr. Paret, has elected to cite to an opinion that embraces the factual allegations of the plaintiffs in the Kim Litigation. As noted in the very memorandum

6

opinion appended to the Motion, though, the Kim Litigation is founded upon allegations Mr. Paret committed a series of objectively fraudulent acts to swindle a local doctor out of $600,000.00. *See* Motion Exhibit 1, DE #55-4, at pp. 3-4. Specifically, Mr. Paret is alleged to have presented Dr. Kim with a sale agreement to purchase three condominium units at "half price," *id.*, promised the monies would "not be released until certain construction benchmarks were met," *id.*, promised the funds would be "held in escrow," *id.* at p. 4, indicated he was conveying "good and marketable title to the Property," *id.*, and then said he was immediately going to "the Office of the Recorder of Deeds for the District of Columbia to record [Dr. Kim's] ownership," *id.* As one might expect, however, Mr. Paret is alleged to have never actually recorded that ownership, *id.*, and then proceeded to use Dr. Kim's cash anyway, *id.*

To be sure, there are lots of issues with the allegations in the Kim Litigatin—not the least of which being the condominium units Mr. Paret allegedly sold to Dr. Kim could not have actually been sold since they never actually existed.[2] And, as discussed above, the plaintiffs in that case have misapprehended the ownership structure of DPCL and WCP, creating an absence of diversity jurisdiction. But it still seems odd for the Trustee, when pursuing claims hatched by Mr. Paret and premised almost entirely on the word of Mr. Paret, to be calling attention to a lawsuit in which Mr. Paret is accused of unapologetically swindling a doctor out of $600,000.00 through what at least appears to have been a wholly premeditated confidence scheme.

### b. Paragraphs 3, 6 and 7

The Trustee asserts Mr. Huertas e-mailed Mr. Paret "proposing" certain terms, SOF, DE #55-2, at ¶ 3, Mr. Paret responded to the same e-mail from Mr. Huertas in such a manner as to

---

[2] This is not a typo. Mr. Paret is not being accused of quitclaiming someone the Brooklyn Bridge— he is being accused to offering marketable title to a bridge that does not even exist.

demonstrate Mr. Paret "manifesting assent to the terms Huertas proposed." *Id.* at ¶ 6, and that the result is an "agreement," *id.* at ¶ 7. Mr. Huertas absolutely did not intend to make any binding "proposal" of any terms to Mr. Paret. *See* Huertas Dec., Ex. B, at ¶ 5. Nor did Mr. Huertas ever intend to enter into an agreement with Mr. Paret through this e-mail exchange. *Id.* at ¶ 6. To the contrary, when Mr. Huertas intends to be bound by specific terms or to manifest a binding agreement, he memorializes the same in formal documents, reviewed by counsel and signed by the parties thereto. *Id.* at ¶ 7. This is exemplified by two of the very documents upon which the Trustee himself relies in the Motion: a commercial deed of trust note providing for conditional profit splitting (the "November 2019 Note"), *see* Motion Exhibit 8, DE #55-11, and an amended and restated operating agreement (the "1260 Holbrook Operating Agreement"), *see* Motion Exhibit 10, DE #55-13.

Indeed, as addressed in the argument portion of this brief, the very documents relied upon by the Trustee put the lie to the Trustee's own theory of partnership. The November 2019 Note and the 1260 Holbrook Operating Agreement are both facially demonstrative of what is contextually obvious: When the Defendants desired to enter into business relations with Mr. Paret and/or his entities, they did so through well-drafted, formal legal documents. *See* Huertas Dec., Ex. B, at ¶ 7. Yet, in paragraphs 3 and 6 of the SOF, the Trustee is endeavoring to urge—counterfactually—that Mr. Huertas intended an informal e-mail exchange to birth a sweeping

partnership encompassing a wide array of properties and the movement of tens (if not hundreds) of millions of dollars.[3]

### c.   Paragraph 17

The Trustee alleges that "[o]n October 31, 2019, WCP internal emails mapped [CP] Assets and WCP Assets as a unified portfolio discussed in the Paret–Huertas dealings." SOF, DE #55-2, at ¶ 17 (citing Motion Exhibit 7, DE #55-10, at p. 5) (bracketed text assumes veracity of footnote, which is immaterial to dispute). This is flatly untrue.

Putting aside a pagination issue (a large number—if not the outright majority—of the Trustee's internal citations to exhibits appear to be off by one page, which appears to be attributable to the use of cover pages for each exhibit), there is no cognizable universe where this summary is a good faith reading of the cited document. The "WCP internal email[]" in question is anything but—the document is an e-mail **from Mr. Paret**. *See id.* at pp. 6-10.

This is not an "internal" WCP e-mail; this is an e-mail from an individual who has demonstrated a repetitively-casual relationship with the truth in this Honorable Court, who has seen his chapter 11 case converted to chapter 7 on account of his own bad faith actions and inactions, and who appears to be the Trustee's only witness in furtherance of the allegations in this

---

[3] Portions of the SOF use language that assumes the existence of a "proposal" or an "agreement." *See* SOF at ¶¶ 8, 11. Other paragraphs of the SOF use similar language, presuming the existence of a "shared ownership arrangement," *id.* at ¶ 14, "jointly owned properties," *id.* at ¶ 16, a "unified portfolio," *id.* at ¶ 17, a "joint portfolio," *id.* at ¶ 18, "partnership properties," *id.* at ¶ 29, a "joint project portfolio," *id.* at ¶ 38, and a "portfolio of properties," *id.* at ¶ 39. For the same reasons as set forth in the discussion of paragraphs 3, 6, and 7—and, as discussed in detail below—the Defendants necessarily dispute these allegations to the extent the allegations presume the existence of a partnership or the existence of partnership assets. The Motion—which seeks a declaratory finding as to the existence of a partnership—is essentially assuming entry of such a declaratory judgment in endeavoring to establish facts upon which to argue the existence of a partnership. Such is not only wildly circuitous but, indeed, ultimately telling of the flimsiness and fallacy of the Trustee's assertions.

case. So describing an external e-mail, sent from Mr. Paret to WCP, as an "internal" WCP communication, is not only plainly and objectively false but also cause for serious concern about the intellectual fidelity of the SOF and the Motion.

### d.  Paragraph 19

The Trustee asserts "[o]n November 5, 2019, DP Capital issued a Commercial Deed of Trust Note for several Paret-related LLC properties, secured by a Deed of Trust recorded against three properties." SOF, DE #55-2, at ¶ 19 (citing Motion Exhibit 8, DE #55-11).

A plain review of the internally-referenced document, however, shows the at-issue note (defined above as the "November 2019 Note") recites therein that the lender is "WCP Fund I LLC" (defined above as "WCP"). *See* November 2019 Note, DE #55-11, at p. 2 (defining "WCP Fund I LLC" as "Lender"). Moreover, the deed of trust appended thereto notes, *inter alia*, "Grantor is justly indebted to **WCP Fund I LLC**. . ." *Id.* at p. 29 (emphasis in original). And the recording form at the tail of the deed of trust lists "WCP Fund I LLC" as the "Grantee." *Id.* at p. 54.

It appears the Trustee is endeavoring to conflate DPCL and WCP. Such is problematic, insofar as DPCL and WCP are legally distinct entities with different combinations of equity holders. *See* Huertas Dec., Ex. B, at ¶ 8. In fact, one of the clauses of the November 2019 Note relied upon by the Trustee, *see* SOF, DE #55-2, at ¶ 23, expressly provides that DPCL is WCP's "affiliate," November 2019 Note, DE #55-11, at p. 4, and the SOF later speaks to the existence of both DPCL and WCP as distinct entities, *see* SOF, DE #55-2, at ¶ 27. The Trustee, however, appears to be conveniently ignoring the legal distinction between WCP and DPCL in paragraph 19 of the SOF.

10

### e.    Paragraph 28

The Trustee asserts that "Borrowers executed the Note and Deed of Trust based on terms directed by Huertas through DP Capital." SOF, DE #55-2, at ¶ 28. It is truly unclear what is meant by this allegation.

Nowhere is it alleged Mr. Paret was ever under duress. Indeed, much of the Trustee's theory—as espoused in the Motion—is premised upon the legally-errant suggestion that Mr. Paret voluntarily agreed to enter into a partnership. So it is altogether unclear what is intended by the suggestion that document terms were "directed by [Mr.] Huertas." If the Trustee simply intends to assert that DPCL caused a document to be drafted, such may well be accurate but such, equally, such is not what is written here. And even if the allegation is merely one of draftsmanship, Mr. Huertas assuredly ought not be conflated with DPCL, which uses legal documents drafted by attorneys—not by Mr. Huertas. *See* Huertas Dec., Ex. B, at ¶ 7.

### f.    Paragraph 35

The Trustee alleges a closing statement reflects "$1,567,875 paid to Washington Capital Partners, LLC, an entity controlled solely by Huertas." SOF, DE #55-2, at ¶ 35. To the best of the Defendants' knowledge, there does not exist an entity known as "Washington Capital Partners, LLC." *See* Huertas Dec., Ex. B, at ¶ 9. And the document referenced by the Trustee plainly shows a different sum—$1,419,875.00—being paid to "WCP Fund I LLC" (the entity defined herein as "WCP"). *See* Motion Exhibit 11, DE #55-14, at p. 2, ln. 104.

While the sum of money is likely inconsequential in the prism of this case, it is unclear why the Trustee appears to have confused monies paid to a lender ($1,419,875.00) with the gross obligations due from a borrower at closing ($1,567,875.00), especially when the larger sum includes settlement charges and a separate loan paydown.

More important than the sum of money, however, is the Trustee once again struggling to identify legal entities and the persons in control thereof. As noted *supra*, WCP and DPCL are legally distinct entities. DPCL trades as "Washington Capital Partners." *See* Virginia State Corporation Commission Records, attached hereto as Exhibit C; Huertas Dec., Ex. B, at ¶¶ 9-10. Moreover, WCP—the entity actually shown to receive funds on the at-issue HUD-1 closing statement—is not "controlled solely by [Mr.] Huertas." As discussed above, WCP has myriad equity members other than Mr. Huertas. *See, supra,* § III(a).

### g. Paragraph 36

The Trustee alleges that "[o]n or about January 1, 2020, Congressional Bank, Holbrook, and Washington Capital Partners, LLC executed a subordination agreement. An unexecuted version of the Subordination Agreement is attached as Ex. 12." SOF, DE #55-2, at ¶ 36.

As noted in the allegation, the subject agreement is unsigned. Such is also manifest from a review of the correlative exhibit. *See* Motion Exhibit 12, DE #55-15, at pp. 4-5. Moreover, the document in question is allegedly being entered into by "Washington Capital Partners, LLC," *id.* at p. 4, an entity that—as noted above—does not exist, *see, supra,* § III(f).

To be clear, the Defendants do not dispute that a subordination agreement was entered into, though they are not presently certain of the precise terms thereof or if the document appended to the SOF is an accurate facsimile. Accordingly, insofar as this specific exhibit is unsigned and without any authentication, and there does not appear to have been any effort during discovery to obtain an executed version thereof, the Defendants urge the exhibit ought not be credited. *See, e.g.*, *Akers*, 744 F. Supp. 2d at 96 ("Because the objective of summary judgment is to prevent unnecessary trials, and because '[v]erdicts cannot rest on inadmissible evidence,' it follows that the evidence considered at summary judgment must be capable 'of being converted into admissible

evidence.'") (quoting *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007); citing *Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990); *Cotton v. Wash. Metro. Area Transit Auth.*, 2004 U.S. Dist. LEXIS 3829, 2004 WL 473658, at *6 (D.D.C. Mar. 3, 2004)).[4]

## IV.    Argument: Judgment Should be Entered in Favor of the Defendants on Count I

There are two core issues with the Motion and the theories promulgated therein. *First*, as a matter of law, there cannot have existed a partnership between Messrs. Paret and Huertas, because all of the acts alleged to have implicated the partnership involved limited liability companies and a partnership cannot legally usurp the legal form of one or more LLCs. Or, stated otherwise, the existence of a partnership and the existence of an LLC are mutually exclusive when considering the relation of two or more parties. *Second*, even if, *arguendo*, a partnership and an LLC could be coterminous in nature, the allegations of the Trustee not only come well short of establishing a partnership under governing District of Columbia law but, to the contrary, actually firmly establish the absence of a partnership.

### a.    The Trustee is Objectively Errant in Suggesting a Partnership May Invade a Limited Liability Company

The Trustee's core thesis in this case—as expounded upon through the Motion—is that Messrs. Paret and Huertas formed a partnership, the actions of which were then carried out through

---

[4] There is actually a larger issue instantly at play: there is no affidavit or declaration appended to the Motion, none of the documents relied upon were produced by the Defendants in discovery (of which the Trustee took none), and none of the documents relied upon are self-authenticating in nature (with the possible exception of a district court memorandum opinion, which is both a public record, Fed. R. Evidence 803(8), and verifiable through publication, *Eung Kwon Kim v. DP Capital LLC*, 2024 U.S. Dist. LEXIS 169885 (D.D.C. Sep. 20, 2024)). The Defendants generally avoid relying on this shortcoming, insofar as most of the exhibits to the Motion *can* "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). But the absence of a supporting affidavit or declaration seems to allude to the obvious tension underlying this case: the Trustee is trying—quite desperately—to win a case premised upon Mr. Paret's word, without ever having to suffer the squeamish process of placing Mr. Paret under oath.

13

various dealings between myriad borrower LLCs owned by Mr. Paret, two lender LLCs helmed by Mr. Huertas, and another LLC of which Messrs. Paret and Huertas were both members. Such a theory, however, is a legal impossibility without first piercing the veils of those respective LLCs (something that, for WCP and DPCL, would require looking beyond the fact that Mr. Huertas is *not* the sole member of either entity). And this is, accordingly, where the Trustee's theory of partnership necessarily both begins and ends.

The formation of a partnership is governed by Section 29-602.02 of the District of Columbia Code. That statutory provision, in turn, has three operative subparts. The Trustee relies heavily on the first such subpart but largely ignores the latter two. In full, the statute provides:

(a) Except as otherwise provided in subsection (b) of this section, the association of 2 or more persons to carry on as co-owners of a business for profit shall form a partnership, whether or not the persons intend to form a partnership.

(b) An association formed under a statute other than this chapter, a predecessor statute, or a comparable statute of another jurisdiction shall not be a partnership under this chapter.

(c) In determining whether a partnership is formed, the following rules shall apply:

(1) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership shall not by itself establish a partnership, even if the co-owners share profits made by the use of the property.

(2) The sharing of gross returns shall not by itself establish a partnership, even if the persons sharing them have a joint or common right or interest in property from which the returns are derived.

(3) A person that receives a share of the profits of a business shall be presumed to be a partner in the business, unless the profits were received in payment:

(A) Of a debt by installments or otherwise;

(B) For services as an independent contractor or of wages or other compensation to an employee;

(C) Of rent;

14

> (D) Of an annuity or other retirement or health benefit to a beneficiary, representative, or designee of a deceased or retired partner;
>
> (E) Of interest or other charge on a loan, even if the amount of payment varies with the profits of the business, including a direct or indirect present or future ownership of the collateral, or rights to income, proceeds, or increase in value derived from the collateral; or
>
> (F) For the sale of the goodwill of a business or other property by installments or otherwise.

D.C. Code § 29-602.02.

Subsection (a) provides—as the Trustee highlights in his brief—that a partnership may arise from the efforts of two persons to collaboratively undertake a for-profit business activity, regardless of their intent to form—or to not form—a partnership. D.C. Code § 29-602.02(a). Yet this first subsection is subject to the restriction of the ensuing subsection *and* the exceptions of the third subsection. That third subsection—which expressly exempts lending activity from partnership formations, D.C. Code § 29-602.02(c)(3)(E)—is discussed in greater detail below. *See, infra,* § IV(b). But there is actually no need to even reach that issue insofar as the second subsection facially dooms the Trustee's contentions in this case.

Specifically, "[a]n association formed under a statute other than this chapter, a predecessor statute, or a comparable statute of another jurisdiction shall not be a partnership under this chapter." D.C. Code § 29-602.02(b). Or, stated otherwise: a legal entity formed pursuant to a different provision of title 29 of the District of Columbia Code (or any comparable statutory scheme) cannot become a partnership.

The Uniform Limited Liability Company Act of 2010 is codified in title 29 of the District of Columbia Code. *See* D.C. Code § 29-801.01, *et seq.* Title 29 of the District of Columbia Code also provides for the recognition of foreign limited liability companies. *See* D.C. Code § 29-

15

105.03. Both of these legal schemes, accordingly, reside in the same "chapter" as the applicable partnership statute. And an entity formed—or recognized—under either the Uniform Limited Liability Company Act of 2010 or the District of Columbia's treatment of similar entities from other states is accordingly incapable of becoming a partnership.

Further, several state courts—applying common law theories of partnership formation—have noted the incompatibility of a separate legal entity and a partnership, insofar as an arrangement for the sharing of efforts and profits must take one form or the other. This notion is well explained by the Supreme Court of Montana, in an admittedly-dated but nonetheless exceedingly well-penned opinion:

> "If the parties have the rights of partners, they have the duties and liabilities imposed by law and are responsible *in solido* to all creditors. If they adopt the corporate form with the corporate shield extended over them to protect them against personal liability, they cease to be partners, and have only the rights, duties, and obligations of stockholders. They cannot be partners *inter sese* and a corporation as to the rest of the world."

*Sun River Stock & Land Co. v. Mont. Tr. & Sav. Bank*, 262 P. 1039, 1044-45 (Mont. 1928) (quoting *Jackson v. Hooper*, 75 A. 568, 571 (N.J. Eq. 1910)).

As expressed in more modern verbiage, by the Supreme Court of Colorado: "As a general rule, when partners organize a corporation to operate the business of the partnership and transfer the assets to the corporation, the partnership is dissolved." *Hooper v. Yoder*, 737 P.2d 852, 858 (Colo. 1987) (citing 2 S. Rowley, Partnership § 58.11 (2d ed. 1960)). *See also Weisman v. Awnair Corp. of Am.*, 144 N.E.2d 415, 418 (N.Y. 1957) ("This they may not do for the rule is well settled that a joint venture may not be carried on by individuals through a corporate form. The two forms of business are mutually exclusive, each governed by a separate body of law.") (citing *Brock v. Poor*, 216 N.Y. 387 (N.Y. 1915); *Crespi v. Crespi*, 238 A.D. 794 (N.Y. App. Div. 1933); *Seigel v. Liebowitz*, 230 A.D. 736 (N.Y. App. Div. 1930); *Berger v. Eichler*, 211 A.D. 479 (N.Y. App. Div.

1924); *Boag v. Thompson*, 208 A.D. 132 (N.Y. App. Div. 1924); *Thomashefsky v. Edelstein*, 192 A.D. 368 (N.Y. App. Div. 1920); *Jackson*, 75 A. 568.)

Even more recently—and geographically proximately—the Supreme Court of Maryland (née Maryland Court of Appeals) considered this issue in 2019, reversing a trial court's finding that three persons had entered into a partnership under the Maryland Revised Uniform Partnership Act ("RUPA"). *See MAS Assocs., LLC v. Korotki*, 214 A.3d 1076 (Md. 2019). RUPA contains pertinent provisions markedly similar to those of title 29 of the District of Columbia Code, including a proviso that "[a]n unincorporated association or entity created under a law other than the laws described in subsection (b) of this section is not a partnership." Md. Code Ann., Corps. & Ass'ns § 9A-202(c). And, in light of that language, the Old Line State's high court reasoned, *inter alia*:

> More importantly, to treat Harry, Joel, and Mark's payments as capital contributions made through Saralee and MAS to their alleged partnership would be to impermissibly blur the lines between LLCs and partnerships in contravention of RUPA's express terms. Under RUPA, codified in Corps. & Ass'ns § 9A-202(c), "[a]n unincorporated association or entity created under a law other than [RUPA, former-UPA, or another state's partnership statute] is not a partnership." Thus, an LLC cannot simultaneously be a partnership, because it is formed in accordance with the formalities outlined in the LLC Act.

*MAS Assocs.*, 214 A.3d at 1094.

Even one of the few cases relied upon by the Trustee, which comes from the United States District Court for the District of Columbia but in application of Virginia law, observes:

> Absent any showing of duress or fraud, the choice to incorporate is powerful evidence of an intent not to operate as partners; it has thus been held that in the absence of a formal agreement to operate *inter sese* as partners within a corporation, the burden of proving such an intention and demonstrable relationship lies with the party seeking to establish its existence.

*Wright v. Herman*, 230 F.R.D. 1, 9 (D.D.C. 2005) (citing *Heck & Paetow Claim Service, Inc. v. Heck*, 286 N.W.2d 831, 836 (Wis. 1980)).

17

Other modern holdings include a case from a State of Washington appellate court, in 2012, where a partnership theory was defeated by noting, *inter alia*, ". . . it is irrelevant whether the parties intended to use the corporate form merely as a medium for representing their partnership because RCW 25.05.055(2) provides that once an association has been formed under another statute, that association is not a partnership." *Chevalier v. Woempner*, 290 P.3d 1031, 1036 (Wash. App. 2012). *See also Quintero v. Urb. Infraconstruction LLC*, 2026 TXBC LEXIS 4, 7 (Tex. Bus. Ct. 2026)[5] (". . . as a matter of law, a limited liability company cannot be a general partnership, nor can a general partnership be a limited liability company.") (citing Tex. Bus. Org. Code § 152.051(c); *Super Star Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 839 (Tex. App.— Corpus Christi-Edinburg 2017)).

The mutual exclusivity of partnerships and LLCs, under the District of Columbia partnership statute (as amplified by case law from across the United States, stretching more than a century), comes to a head in this case for a very simple reason: the Trustee's entire theory is that assets owned by LLCs were, instead, owned by the alleged partnership between Messrs. Paret and Huertas. Neither the Motion nor the SOF points to a single real estate asset, promissory note, deed of trust, or other asset—real or personal—held in the name of this putative partnership. To the contrary, every single real estate asset is deeded in the name of an LLC, every single promissory note is held by an LLC, and every single deed of trust is in favor of an LLC.

Title 29 of the District of Columbia Code further provides that assets become part of a partnership if either (i) acquired in the name of the partnership; or (ii) acquired by one or more partners through an instrument specifically identifying such persons to be acting in the "person's capacity as a partner" or expressly acknowledging "the existence of a partnership but without an

---

[5] There does not appear to be a form of Bluebook citation for the Texas Business Court.

indication of the name of the partnership." D.C. Code § 29-602.04(a). There are, of course, no allegations of any such acquisitions having occurred in this case. Equally, the same statute later provides, *inter alia*:

> Property acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets, **shall be presumed to be separate property, even if used for partnership purposes**.

D.C. Code § 29-602.04(d) (emphasis added).

So even if there did, somehow, exist a partnership between Messrs. Paret and Huertas, the partnership never would have actually acquired any of the assets referenced in the Motion and the SOF, since all of those assets were titled in the name of LLCs. The Trustee has not pointed to a single titled or title-related document—whether a deed, a promissory note, a HUD-1 closing statement, or otherwise—that identifies the existence of a partnership, much less that identifies anyone as signing on behalf of a partnership. And there is thusly a presumption, under the foregoing provision of the District of Columbia Code, that none of the real estate assets, promissory notes, or deeds of trust referenced in the Motion and SOF were assets of this putative partnership.

Nor is this problem unique to the Trustee. Recognizing that titles control ownership, a federal court in Los Angeles has declined to find a partnership existed, in the realm of a musical collaboration, where ". . .the assets that Plaintiff characterizes as 'partnership assets'—the copyrights to their coauthored songs—are not owned by any partnership entity between Plaintiff and Defendant, or even by Plaintiff and Defendant jointly or in common. . ." *Love v. Mail on Sunday*, 489 F. Supp. 2d 1100, 1106 (C.D. Cal. 2007).

This case is, of course, proceeding in a bifurcated posture, and the issue of partnership assets and accounting is not reached in the Motion and will not be reached unless and until this

19

Honorable Court finds a partnership existed (which, as noted *passim*, the Defendants urge ought not occur). Thus, the argument premised on section 29.602-04 of the District of Columbia Code is introduced not to rebut any arguments concerning the titling of assets but, rather, to reveal the impossibility of the Trustee's underlying arguments concerning the existence of a partnership. The Trustee posits, *ad nausea*, that a partnership was formed for purposes of acquiring property and securing loans against such real estate assets. Yet statutory law makes clear that a partnership could not have actually done any of those things. And what the Trustee proposes accordingly becomes comparable to urging the creation of a partnership for purposes of selling the stud rights to unicorns, allowing children to factor their receivables from the Tooth Fairy, or arranging group travel to Shangri-La.

Plainly, the affairs of an LLC cannot, as a matter of law, also be the affairs of a partnership. And a partnership cannot hold assets titled in the name of an LLC. The District of Columbia Code is express on both of these fronts and a wide swath of case law exemplifies the rationale for these statutory provisions. So, for these reasons, the Trustee necessarily cannot succeed on the Motion and it is appropriate, instead, to enter summary judgment in favor of the Defendants.

### b.   The Lending Activities of WCP and DPCL Cannot Give Rise to a Partnership

Even if one looks beyond the impossibility of a partnership acting through LLCs, or of partnership assets being titled in the name of LLCs, the Trustee's Motion still merits denial—and summary judgment should still be entered in favor of the Defendants—for the simple reason that the law does not actually support the theory of partnership being espoused in this case. Such is both because of the nature of the assets the alleged partnership was putatively formed to hold (as addressed partially *supra* and expounded upon below) and because of the very course of dealings of Messrs. Paret and Huertas as alleged by the Trustee himself.

As noted in the preceding section of this brief, the portion of the District of Columbia Code governing the formation of partnerships has three subsections. *See, supra,* § IV(a). The former two provisions are discussed above. The third provision, however, is also of direct relevance to this case, insofar as that portion expressly exempts lending activity from the enumeration of conduct presumed to give rise to the formation of a partnership:

> A person that receives a share of the profits of a business shall be presumed to be a partner in the business, unless the profits were received in payment . . . (E) Of interest or other charge on a loan, even if the amount of payment varies with the profits of the business, including a direct or indirect present or future ownership of the collateral, or rights to income, proceeds, or increase in value derived from the collateral;

D.C. Code § 29-602.02(c)(3).

This Honorable Court has actually previously assessed a case in which an individual not only furnished a loan to a third party but, too, entered into a putative partnership agreement with that third party. *In re Washington Communications Group, Inc.*, 18 B.R. 437 (Bankr. D.D.C. 1982) presented a fact pattern whereby Landon Dowdey ("Mr. Dowdey") was contacted by a group of persons owning a collective of newsletters, where the collective of individuals sought financing. *Id.* at 419-20. Certain tax incentives would be made available to anyone who was an "investor" in the newsletters. *Id.* at 420. And so Mr. Dowdey extended a $50,000.00 line of credit to the group, with Mr. Dowdey assuming financial liability for twelve separate newsletters and "acquir[ing] a partnership interest in all the aforementioned newsletters." *Id.*

The agreement in *Washington Communications Group* not only expressly provided for the foregoing "partnership interest" but, too, set forth an exact split of profits between Mr. Dowdey and the existing publication group, going on to detail certain contingencies if the line of credit were extended into an option period and even setting forth certain buyout rights. *Id.* at 440-41. Responsibilities were divvied up, between the parties, pursuant to the agreement. *Id.* at 441.

21

This Honorable Court, even in the face of this rather formal, detailed, and extensive agreement, found a partnership did not come into existence because, *inter alia*, ". . . the mere identification of the agreement as one of partnership will not create a partnership if the other requisites of partnership are not present." *Id.* at 443. Judge Whelan reasoned that ". . . a written agreement designating a person as a partner has been held not to be conclusive if no partnership element is present aside from the fact that services are compensated by a share of the profits." *Id.* (citing *Fenwick v. Unemployment Compensation Commission*, 44 A.2d 172, 174-75 (N.J. Ct. App. 1945)).

Perhaps the most important holding of *Washington Communications Group*, however, was the one that is now well-supported by the foregoing provision of the District of Columbia Code: "One who makes a loan of money or credit to the owner of a business in consideration of a share of its profits in repayment of such loan does not thereby become a partner in the business." *Id.* at 444 (citing *Cohen v. Orlove*, 57 A.2d 810 (Md. 1948)). Indeed, in the words of this Honorable Court, if a loan is to be repaid, ". . . there is no partnership." *Id.* at 444 (citing *Rubenstein v. Small*, 273 A.D. 102 (N.Y. App. Div. 1947)).

The Trustee, by contrast, primarily relies on two cases in the memorandum supporting his Motion: *Queen v. Schultz*, 747 F.3d 879 (D.C. Cir. 2014) and *Beckman v. Farmer*, 579 A.2d 618 (D.C. 1990). Yet neither of these cases are applicable *sub judice* and the holdings of both cases actually militate against granting the Motion.

*Queen* concerns an alleged partnership between a talk show host in Fargo, North Dakota and two Washington, DC media figures who offered to help introduce the Midwestern personality to a larger market. *See Queen*, 747 F.3d at 882. Extensive written communications spelled out potential partnership terms. *Id.* at 882-83. Members of the alleged partnership even expended funds

22

renting a studio for production of a pilot episode of a new show, whilst going so far as to lease a Washington, DC apartment for the transplanted North Dakotan. *Id.* at 883. Yet when a local affiliate was about to pick up the show, the host backed out and instead signed a deal with MSNBC. *Id.*

The ensuing suit and appellate decision focus on two discreet issues: an entitlement to contribution for the out-of-pocket expenses fronted in bringing a North Dakotan to Washington, DC, *id.* at 883-84, and a claim that a breach of the duty of loyalty gives rise to an entitlement to share the salary (or, as it is, independent contractor fee) paid by MSNBC, *id.* at 887.

Critically, all of the persons involved in this case were natural persons. The monies at issue in *Queen* are monies paid for the production of a pilot, monies for living expenses, and monies ultimately paid by MSNBC to a natural person. There is no lender/creditor relationship alleged to exist between any of the three potential members of the alleged partnership. In fact, in *Queen*, the three potential partners were all on the same side of the contemplated partnership goal: trying to get a North Dakotan a television show in Washington, DC.

*Beckman* is similar, concerning the alleged partnership of multiple natural persons who jointly created a law firm. *See Beckman*, 579 A.2d at 622-23. In classic law firm style, monies were contributed by at least one member, distributions were made, a "draw" was promised to at least one attorney, and formal documents were circulated. *Id.* at 623. When the firm's finances turned tight, cutbacks were made and a windup was discussed. *Id.* at 625. But when a sizeable contingent fee was collected, a dispute as to partnership rights, *vel non*, ensued. *Id.*

The ultimate holding of *Beckman*—a lengthy and sometimes-meandering opinion from the District of Columbia Court of Appeals—is the wholly non-shocking proposition that persons holding themselves out as law firm partners, who referred to each other as law firm partners, who

23

approached the public as law firm partners, and who dealt with each other as law firm partners, *might* actually be law firm partners. *Id.* at 626, 628-29. The case was remanded for retrial, *id.* at 658, recognizing a jury would have to decide the partnership issue, with entry of summary judgment having been inappropriate, *id.* at 632.[6]

Again, much as with *Queen*, *Beckman* concerns an alleged partnership between natural persons, without the utilization of any separate legal entities, where the three persons were all on the same side of the alleged partnership's putative activities. Moreover, *Beckman* is a case—also as with *Queen*—where it was found entry of summary judgment, on the question of partnership formation, in such a circumstance is innately inappropriate. *See Queen*, 747 F.3d at 887 ("When a trial court 'must resort to inferences from extrinsic evidence of the parties' conduct and course of dealings to determine their legal relationship,' a 'court's conclusion that the issue of partnership *vel non* could be resolved as a matter of law bears a heavy burden of justification.'") (quoting *Beckman*, 579 A.2d at 630).

Neither of these cases—which form nearly the whole of the Trustee's position in the Motion—are helpful for four separate reasons. *First*, as is more relevant to the preceding section of this brief, neither *Beckman* nor *Queen* concern activities undertaken through LLCs, corporations, or other legal forms of entities; in both cases, individuals are acting in their own names. *Second*, in both cases the interests of the putative partnership members are aligned, not

---

[6] *Beckman* is a particularly strange opinion for myriad reasons, not the least of which being that roughly 2/3 of the document is rank dicta, with the appellate court openly acknowledging, *inter alia*, "[a]lthough we recognize the hypothetical possibility that these challenges -- and, indeed, all of appellants' remaining claims -- will become moot if a jury finds that no partnership existed, we elect to consider them at this time in the interest of limiting as much as possible the issues remaining to be resolved. Moreover, as will become apparent, we conclude that the issues already tried to a jury must be retried as well, and the interest of judicial economy dictates that they be retried in a single proceeding along with the issue of partnership *vel non*." *Beckman*, 579 A.2d at 632 n.19 ("*vel non*" in original).

adverse. *Third*, neither case concerns the relationship between a lender and a borrower. And, *fourth*, neither case concerns the ownership of titled property (with the exception of a law firm bank account, in *Beckman*, where apparently all alleged partners had signature rights).

As to the first distinction: the relevant argument is largely set forth above and will not be rehashed. Suffice it to posit, however, that neither *Beckman* nor *Queen* addresses the legal impossibility of someone asserting a partnership to have conducted business through the form of an LLC or corporation.

The second distinction is more subtle but nonetheless of import. In *Queen*, the alleged partners were collectively endeavoring to secure a television program for a talking head from Fargo. In *Beckman*, the alleged partners were collectively running a law firm (perhaps the most iconic form of "partnership" in the American legal system). And the goals of both putative partnership were thusly fully aligned with the aspirations of the alleged individual partners.

By contrast, the relationship between lender and borrower is innately adverse in nature. *See, e.g.*, *Ponder v. Chase Home Fin., LLC*, 666 F. Supp. 2d 45, 49 (D.D.C. 2009) ("The relationship between a debtor and a creditor is ordinarily a contractual relationship and not a fiduciary relationship.") (citing *Overseas Private Inv. Corp. v. Industria de Pesca, N.A.*, 920 F. Supp. 207, 210 (D.D.C. 1996)). *See also Geiger v. Crestar Bank*, 778 A.2d 1085, 1091 (D.C. 2001) (holding similarly).[7] The entities controlled by Mr. Paret (which ought not conflated with Mr. Paret, *see* D.C. Code § 29-801.04(a)) were uniformly borrowers in transactions and the entities with which Mr. Huertas is affiliated (again, not to be conflated with him—especially insofar as he is not the sole member of either DPCL or WCP) were uniformly lenders. The entities under Mr.

---

[7] There are, no doubt, certain exceptions to this general proposition in the context of consumer loans—especially residential home mortgages. Suffice it to posit, however, no one is alleging Mr. Paret was a consumer.

Paret's control accordingly had different financial interests than those of the entities with which Mr. Huertas is affiliated. As in any debtor/creditor relationship, those differing financial interests became exacerbated once Mr. Paret's entities commenced defaulting under loan documents.

This necessarily leads to the third distinction mentioned above: the innate tension between lenders and borrowers, which is facially unsuitable for the formation of a partnership, is openly acknowledged by the District of Columbia's partnership statute. As noted *supra*, the law expressly holds a partnership is *not* presumed to arise where monetary activity takes the form of "interest or other charge on a loan, even if the amount of payment varies with the profits of the business, including a direct or indirect present or future ownership of the collateral, or rights to income, proceeds, or increase in value derived from the collateral." D.C. Code § 29-602.02(c)(3). Neither *Queen* nor *Beckman* concern such lending relationships yet the entirety of this case is premised upon the relationship between lenders and borrowers, as documented in promissory notes and deeds of trust.

The final distinction is the absence of titled assets in the Trustee's two preferred cases. Such is not only relevant because of the provisions of the District of Columbia Code concerning the presumption that titled assets are *not* partnership assets unless specifically endorsed as such, D.C. Code § 29-602.04(d), but, too, because the assets in question in this case are largely comprised of real property. And the law furnishes additional protections to ensure no one is able to assert an ownership interest in real property unless they (or, as it is, their alleged partnership) is actually the party appearing on a deed thereto:

> Except as provided in subsection (c) of this section, no estate . . . for a longer term than 1 year, in any real property, corporeal or incorporeal, in the District of Columbia, or any declaration or limitation of uses in the same, for any of the estates mentioned, shall be created or take effect, except by deed signed and sealed by the grantor, lessor, or declarant, in person or by power of attorney or by will.

26

D.C. Code § 42-306(b).[8]

Indeed, the Trustee's theory of partnership ownership of real estate not only violates applicable partnership laws but, too, runs afoul of the real estate-centric provisions of the District of Columbia statute of frauds. And such is assuredly an issue not nearly addressed by either the *Queen* Court or the *Beckerman* Court.

There is thusly a plain contrast between the Trustee's two favored cases—which bear absolutely no resemblance to the facts *sub judice* and which do not genuinely touch on any of the legal issues *sub judice*—and this Honorable Court's much more topical precedent from *In re Washington Communications Group*. The contrast becomes all the more stark upon examination of the various statutes that show the wisdom of this Honorable Court's precedent when applied to the facts of this case as alleged by the Trustee himself.

### c. The Parties' Dealings Show Formal Business Ventures Were Used in Lieu of a Partnership

There is a final reason the Motion should be denied and summary judgment should be granted in favor of the Defendants: the Trustee has shown—perhaps inadvertently—that when entities controlled by Mr. Paret wished to do business with entities affiliated with Mr. Huertas, such was carried out through detailed, written agreements—not slapdash e-mail communications. Such is not merely indicative of the parties' course of dealings but, too, something of a capstone to the various points raised above.

As the Trustee obsessively flags in the SOF, the November 2019 Note creates a profit-splitting regime whereby DPCL received one half of all revenues realized from the development of 17 properties. *See* SOF, DE #55-2, at ¶¶ 19-26. *See also* November 2019 Note, DE #55-11, at

---

[8] The exception set forth in subsection (c) of this statute concerns commercial leases and is accordingly inapplicable *sub judice*.

p. 3. Similarly, the SOF demonstrates that the 1260 Holbrook Operating Agreement was drafted in such a manner as to establish Messrs. Paret and Huertas as members of the entity. *See* SOF, DE #55-2, at ¶¶ 31-33. *See also* 1260 Holbrook Operating Agreement, DE #55-13, *passim*.

Both of these documents specifically spell out the duties and obligations of the parties. The November 2019 Note provides for a loan to be made, interest to accrue, profits to be split, and myriad other things to occur. The 1260 Holbrook Operating Agreement is a prototypical LLC operating agreement. Neither document is short on legal formalities. And the two documents, taken together, govern the fate of the majority—if not the whole—of the loans and real estate assets complained of by the Trustee in this suit.

Yet the Trustee is not suing for breach of the November 2019 Note or for breach of the 1260 Holbrook Operating Agreement. Nor is the Trustee suing to pierce the corporate veil of 1260 Holbrook Holdings LLC. The Trustee is, rather, urging these formal legal documents—rife with provisions governing the respective rights and duties of the signatories thereto—should be disregarded and viewed, instead, as the machinations of a partnership allegedly formed *before* either of these documents were ever executed. Moreover, with the November 2019 Note, the Trustee is doing so notwithstanding that the members of the alleged partnership (Messrs. Paret and

Huertas) are legally distinct from the lender (WCP) and borrowers (Mr. Paret's various entities) listed on the note itself.[9]

This is where the myriad issues raised in this brief all come together. For the Trustee to succeed in establishing a partnership, he needs to show that partnership operated not merely through the conduit of WCP, DPCL, and numerous LLCs controlled by Mr. Paret—he must, also, show that partnership operated through the conduit of 1260 Holbrook Holdings LLC, an entity of which Messrs. Paret and Huertas were the two members. This is what is forbade by District of Columbia statutory law, D.C. Code § 29-602.02(b), and the throng of cases—spanning a litany of states and a temporal span of more than 100 years—cited *supra*.

For the Trustee to succeed, he must also overcome the creditor/debtor relationship established in the November 2019 Note alongside the ownership of the assets therein referenced resting in the names of separate legal entities controlled by Mr. Paret. This requires not only looking past the District of Columbia presumption against a partnership invading the lender/borrow space but, too, the statute of frauds that has so long endured as a hallmark of 1L flashcards.

---

[9] As observed *passim*, Mr. Huertas cannot be conflated with WCP nor may he be conflated with DPCL, insofar as both entities have members separate and distinct from Mr. Huertas. The Trustee at least feigns to not know this, and elected to not take any discovery on this issue. Yet this issue is, in various respects, also independently dispositive of the Motion, which rests on the theory of Mr. Huertas using WCP and DPCL as his personal instrumentalities and Mr. Paret using myriad LLCs—including at least one that has a member distinct from Mr. Paret, *see* November 2019 Note, DE #55-11, at p. 48—as his alter egos. District of Columbia law is plain that entities and their owners ought not be conflated. *See Martin v. Santorini Capital, LLC*, 236 A.3d 386, 394 (D.C. 2020) ("LLC members, like corporate shareholders, own an interest in an LLC; they are not the LLC nor do they own an LLC's property.") (citing *Wallasey Tenants Ass'n, Inc. v. Varner*, 892 A.2d 1135, 1141 n. 3 (D.C. 2006)). Yet, here, the Trustee is not merely trying to conflate Mr. Huertas with both WCP and DPCL but, worse, the Trustee is doing so without regard to the fact both entities have members other than Mr. Huertas.

For the Trustee to succeed, he additionally needs to overcome the obvious: when Mr. Huertas desired to do business with Mr. Paret, Mr. Huertas did so through formal, proper agreements—not off-the-cuff e-mail exchanges. The 1260 Holbrook Operating Agreement contains an integration clause. *See* 1260 Holbrook Operating Agreement, DE #55-13, at § 17.1. The November 2019 Note contains a confession of judgment clause, *see* November 2019 Note, DE #55-11, at pp. 9-10, and is accompanied by a deed of trust providing for the foreclosure of assets in the event of a default, *id.* at pp. 39-42, whilst both the note and the deed of trust are signed by Mr. Paret on behalf of a litany of entities, *id.* at pp. 11-27, 48-50, and an individual other than Mr. Paret signed as a member of one of the borrower entities, *id.* at p. 48.

Finally, for the Trustee's theory to succeed, these documents also have to be expunged from existence and disregarded *en toto*. One of the signatories on the deed of trust, being Mr. Paret's co-member in one of the LLCs, has to become a figment of the imagination. The very existence of 1260 Holbrook Holdings LLC has to be disregarded. And the members of DPCL and WCP, aside from Mr. Huertas, must be equally wiped out of all cognizance.

Of course, none of that is possible. And, excepting the co-existence of other members in DPCL and WCP, these are all realities manifest from the very documents appended to the Trustee's own Motion. Yet, realizing these realities to have been highlighted by the Trustee himself, and that each of these insurmountable obstacles is ascertainable from a simple application of governing law to the Trustee's own documents and theories, it does become clear that judgment should be entered in favor of the Defendants, and against the Trustee, pursuant to the allowances of Federal Rule of Civil Procedure 56(f).

## V.        Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion; (ii) enter judgment in favor of the Defendants, and against the Trustee, pursuant to the allowances of Federal Rule of Civil Procedure 56(f); and (iii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: April 26, 2026

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of April, 2026, a copy of the foregoing was served on all parties through this Honorable Court's CM/ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

31