**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In RE: | ) | **23-00217-ELG** |
| | ) | |
| CHARLES PAXTON PARET, | ) | **Chapter 7** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| WENDELL W. WEBSTER, Chapter 7 | ) | |
| Trustee for Charles Paret, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc 23-10025-ELG** |
| | ) | |
| DANIEL HUERTAS, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**TRUSTEE WENDELL W. WEBSTER'S REPLY IN FURTHER SUPPORT OF THE**
**MOTION FOR SUMMARY JUDGMENT ON COUNT I OF THE THIRD AMENDED**
**COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ..................................................................................................... 3

    A.    Defendants Failed to Controvert Material Facts Under Rule 56 and Local Rule 7 3

    B.    The Undisputed Factual Record Establishes Partnership Formation as a Matter of Law Because Natural Persons May Form a Partnership and Conduct its Affairs Through LLCs .......................................................................................... 7

        1.    D.C. Code § 29-602.02(b) Does Not Preclude the Huertas/Paret Partnership Merely Because Huertas Used LLCs to Conduct Partnership Business .......................................................................... 7

        2.    The Lending Exemption Does Not Apply Because DP Capital's Perpetual Revenue and Sale Participation Rights Are Equity Interests, Not Charges on a Loan .................................................................................. 8

        3.    Whether Other Members Exist in DP Capital or WCP Is Immaterial Because the Partnership Was Formed by Huertas and Paret Individually 10

    C.    The Beckman Factors Are Satisfied and the Opposition's Attempts to Distinguish Beckman and Queen Rest on Distinctions D.C. Courts Have Already Rejected . 11

    D.    The Opposition's Evidentiary Objections Fail Because Rule 56 Requires Only That Evidence Be Capable of Admission and the Opposition Concedes This Standard is Met .................................................................................... 12

III.    CONCLUSION ................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)......................................................................................................3

*Beckman v. Beckman*,
579 A.2d 618 (D.C. 1990) .........................................................................................12

*Burke v. Gould*,
286 F.3d 513 (D.C. Cir. 2002)......................................................................................5

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*,
391 U.S. 253 (1968)......................................................................................................3

*Headfirst Baseball LLC v. Elwood*,
168 F. Supp. 3d 236 (D.D.C. 2016)...............................................................................7

*Hooper v. Yoder*,
737 P.2d 852 (Colo. 1987)............................................................................................8

*Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*,
101 F.3d 145 (D.C. Cir. 1996)......................................................................................5

*MAS Associates, LLC v. Kortoki*,
465 Md. 457 (Md. 2019)................................................................................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)......................................................................................................3

*Southern Can Co. of Baltimore City v. Hartlove et al.*,
136 A. 624 (Md. 1927) .................................................................................................9

*Sun River Stock & Land Co. v. Montana Trust & Savings Bank*,
81 Mont. 222 (Mont. 1928)...........................................................................................8

*In re Washington Communications Group*, *Inc.*,
18 B.R. 437 (Bankr. D.D.C. 1982) ...............................................................................8

*Wright v. Herman*,
230 F.R.D. 1 (D.D.C. 2005)...................................................................................7, 11

**Statutes**

D.C. Code
  § 29-602.02 ................................................................................................................7
  § 29-602.02(b)............................................................................................................7
  § 29-602.02(c)(3)(E) ..................................................................................................9
  § 29-602.04(d)...........................................................................................................11

**Other Authorities**

Fed. R. Civ. P.
  56...................................................................................................................1, 3, 5, 12
  56(a) ...........................................................................................................................1
  56(c)(2) .....................................................................................................................12
  56(f)........................................................................................................................3, 13

Fed. R. Evid. 801(d)(2) ................................................................................................13

Local Civ. R.
  7.........................................................................................................................1, 3, 5

Trustee Wendell W. Webster ("Trustee") submits this reply brief in further support of his Motion for Summary Judgment on Count I of the Third Amended Complaint (the "Motion") against Defendants Daniel Huertas ("Huertas") and DP Capital, LLC ("DP Capital", and together, "Defendants") pursuant to Fed. R. Civ. P. 56(a).

## I.    INTRODUCTION

Defendants' Opposition significantly misses the mark.  First and foremost, its Statement of Material Facts in Dispute, Opp. Br. ("Opp.") at 5, substantially avoids the Trustee's asserted evidentiary record not in dispute.  Local Civil Rule 7(h)(1) of the United States District Court for the District of Columbia provides, in substance: Each motion for summary judgment must be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue. An opposition to such a motion must be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated. In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted unless such facts are controverted in the statement of genuine issues filed in opposition to the motion.

Of the Trustee's thirty-nine separately numbered material factual assertions, Defendants substantively responded to only five thereby failing under Rule 56 and Local Rules  to specifically controvert the overwhelming majority of the operative facts establishing shared profits, coordinated operational authority, integrated portfolio management, continuing revenue participation, and Huertas' repeated characterization of the arrangement as a "partnership." While Defendants devote substantial attention to formal labels, LLC separateness, abstract lending principles, and subjective after-the-fact disclaimers of intent, they leave substantially unrebutted

1

the governing documentary record establishing continuing co-ownership economics and integrated enterprise participation.

Furthermore, the Opposition interposes meritless arguments: First, Defendants misread D.C. statutory law and controlling precedent regarding partnership and limited liability companies. Opp. at 13. Second, Defendants mistakenly invoke the "lending exemption", Opp. at 20, despite DP Capital's perpetual right to half of all revenue and sale proceeds pursuant to the 2019 Commercial Deed of Trust Note, Mot. Ex. 8, and Huertas' sole authority under the Holbrook Operating Agreement, Mot. Ex. 10 at 4.

Defendants' Opposition ultimately misses the mark because it persistently attacks a theory that the Trustee is not actually advancing while leaving the governing economic realities substantially unrebutted. It devotes enormous attention to formal labels, LLC separateness, binding contract principles, and the proposition that counterparties to lending transactions are necessarily adverse actors incapable of partnership status. However, the Trustee's Motion does not depend upon collapsing entities, disregarding corporate formalities, or proving that informal emails themselves created an enforceable partnership relationship. Nor does the Motion rise or fall on whether DP Capital was technically a single-member LLC exclusively controlled by Huertas. The Trustee's theory instead focuses on the objective structure reflected in the executed commercial instruments and the parties' sustained operational conduct over time.

Under District of Columbia partnership law, the relevant inquiry is whether the parties objectively associated as co-owners of a business for profit through shared economics, operational control, and coordinated enterprise conduct. Partnership law in the District of Columbia is clear on this point. Courts examine substance over labels and focus upon objective manifestations

reflected in the parties' agreements and course of dealing, not merely internal LLC structures or litigation-driven disclaimers of subjective intent.

The Opposition's request for summary judgment in favor of Defendants under Rule 56(f) should be denied, and the Trustee's Motion should be granted, because the undisputed documentary record establishes partnership formation as a matter of law.

## II. ARGUMENT

### A. Defendants Failed to Controvert Material Facts Under Rule 56 and Local Rule 7

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but must set forth specific facts showing that there [are] genuine issue[s] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). (one ellipsis omitted) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288, (1968)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a motion for summary judgment, but "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

Defendants' failure to respond to the overwhelming majority of the Trustee's Statement of Material Facts ("SOF ¶ _") is particularly significant because the uncontroverted facts include the central evidentiary foundation of the partnership claim itself. Defendants responded only to SOF ¶¶ 17, 19, 28, 35, and 36 of the Trustee's 39 assertions. They offered no admissible evidentiary response to the remaining paragraphs, including numerous facts directly establishing shared profits, operational control, integrated enterprise management, and continuing co-ownership economics.

3

For example, Defendants did not controvert SOF ¶¶ 3-5, which establish that Huertas proposed a "51 percent Daniel, 49 percent Charles" structure, retained authority over "all financial aspects related to capital, partnerships, [and] ventures," and expressly described the arrangement as a "partnership." Nor did Defendants dispute SOF ¶¶ 8-12, which establish that Huertas and Paret agreed that profits would remain "50/50," that Huertas would maintain "51/49" decision-making authority even after stabilization, and that Paret would retain buyout rights if Huertas elected to sell the assets. Likewise, Defendants did not controvert SOF ¶¶ 13-16, which establish that Huertas represented he would obtain "50% ownership of the properties and 51% control," characterized the funding structure as "a loan *to the partnership,*" identified multiple properties as part of the shared ownership arrangement, and failed to dispute Paret's later written identification of properties subject to "50 percent ownership stake." Huertas himself wrote: "Daniel Huertas will manage all financial aspects related to capital, partnership, ventures and will have final word related to execution of the real estate."

Defendants also did not controvert SOF ¶¶ 20-27, which establish the core operative provisions of the November 2019 Commercial Deed of Trust Note itself. Those admitted facts include that the Note covered seventeen identified properties; granted DP Capital continuing rights to "50% of all gross revenues" generated from the Property and Supplemental Properties; granted DP Capital "50% of the gross sales proceeds" from those properties; provided that those rights survive repayment of all principal and interest and survive extinguishment of the Deed of Trust; required amendment of operating agreements to conform to the Note's terms; and granted DP Capital authority to block sales, leases, or encumbrances affecting the covered properties. Defendants likewise did not controvert SOF ¶ 26, which expressly states that the structure granted

4

*DP Capital a perpetual right to fifty percent of all revenues and sale proceeds from seventeen properties even after full repayment of principal and interest.* (emphasis added).

Nor did Defendants dispute SOF ¶¶ 31-34, which establish that the Holbrook Operating Agreement transferred to Huertas 51% membership interests and all management control of Holbrook Holdings LLC, designated Huertas as sole manager with authority to refinance, encumber, or sell the property, and was followed almost immediately by a refinancing transaction involving Congressional Bank. Finally, Defendants did not controvert SOF ¶¶ 37-39, which establish that Huertas executed refinance documents involving Holbrook and Washington Capital Partners, that the Commercial Note and Holbrook Operating Agreement concerned the same coordinated property portfolio, and that the emails, texts, Commercial Note, Operating Agreement, HUD-1s, and Subordination Agreement collectively concerned the same integrated enterprise structure.

These are not peripheral or immaterial allegations. They constitute the central factual predicates supporting the Trustee's theory of continuing co-ownership for profit under District of Columbia partnership law. Defendants' failure to specifically controvert those facts with admissible evidence permits the Court to treat them as admitted for purposes of summary judgment under Rule 56 and Local Civil Rule 7(h)(1).  See *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996); *Burke v. Gould*, 286 F.3d 513, 517–19 (D.C. Cir. 2002).

Defendants' limited responses remain instructive. As to SOF ¶17, Defendants argue that the Trustee improperly referred to certain communications as "WCP internal emails" because one communication originated from Paret rather than from within WCP itself. Opp. at 9. Defendants do not dispute the authenticity of the communications, the language used therein, the fact that Paret

5

and Huertas exchanged email communications, or the fact that the parties discussed Parets' and WCP's assets collectively within the same coordinated email framework. Huertas acknowledged the H/P Partnership in an email with Paul Flather, WCP loan and title processing officer. Mot. Ex. 7. at 1.

As to SOF ¶19, the Trustee does not contend that WCP, DP Capital, and Huertas should be legally collapsed into a single indistinguishable entity, nor does the Trustee seek to disregard corporate formalities or erase the separate existence of the affiliated LLCs. The relevant point is narrower and far more significant: the governing agreements and transactional structure reflect that WCP and DP Capital functioned within a coordinated enterprise arrangement implementing continuing shared participation between Huertas and Paret.

As to SOF ¶¶ 28, 35, and 36, Defendants focus primarily on drafting formalities, nomenclature, authentication objections, and technical distinctions while leaving the underlying transactional structure substantially unrebutted. Defendants emphasize that counsel formally drafted the agreements, question whether certain WCP entities were properly identified, and dispute whether the Subordination Agreement constitutes the final executed versions. Defendants do not deny that Huertas structured and negotiated the governing economic arrangements, exercised operational authority over the transactions, coordinated the refinance activity, or intentionally formalized continuing participation rights and governance provisions through clearly executed agreements, e.g. the Commercial Note and the Holbrook, Operating Agreement. Nor do Defendants dispute that the refinance transactions occurred, that coordinated financing and subordination arrangements existed, that proceeds flowed through WCP-related entities, or that the refinancing activity formed part of the broader integrated enterprise structure reflected throughout the governing documents.

6

### B. The Undisputed Factual Record Establishes Partnership Formation as a Matter of Law Because Natural Persons May Form a Partnership and Conduct its Affairs Through LLCs

### 1. D.C. Code § 29-602.02(b) Does Not Preclude the Huertas/Paret Partnership Merely Because Huertas Used LLCs to Conduct Partnership Business

The Opposition's central legal argument – that partnerships and LLCs are "mutually exclusive" under D.C. Code §29-602.02 – fundamentally misreads the statute and controlling precedent. Opp. at 13. The statute provides that an "association formed under a statute other than this chapter" shall not be a partnership. This means an LLC itself is not a partnership, but it does not mean that natural persons cannot form a partnership and then conduct that partnership's affairs through LLCs.

As explained in the Motion, *Wright v. Herman*, 230 F.R.D. 1 (D.D.C. 2005), directly held that a partnership can exist notwithstanding the existence of an LLC formed as a "vehicle" to carry out the parties' business. *See also Headfirst Baseball LLC v. Elwood*, 168 F. Supp. 3d 236, 244 (D.D.C. 2016) (accepting the legal theory that "the particular LLCs were merely the vehicles through which the business of their partnership was carried out"). The same principle applies here. The Trustee does not contend that the LLCs ceased existing or "became" a partnership. Rather, the Trustee contends that the LLCs functioned as vehicles through which Huertas and Paret operated a broader, integrated enterprise involving shared profits, operational coordination, and managerial authority, *i.e.*, a partnership. Huertas' intention to credit his involvement through his companies is illustrated by his own writing on September 30, 2019: "By Daniel Huertas and/or companies paying the attached invoices for properties, Daniel Huertas will have 50% ownership of the properties and 51% in regards of control. Any other partnerships set by Charles Paret will be taking from his side. " Mot. Ex. 6 at 2.

Defendants' reliance on cases outside of the District of Columbia is misplaced. The out-of-jurisdiction authorities cited in the Opposition are inapposite. Many involve situations where parties incorporated their business and transferred partnership assets to the corporation, thereby dissolving the partnership, *not* situations where natural persons formed a partnership and then used entities as vehicles for its operation.

The first case cited, *Sun River Stock & Land Co. v. Montana Trust & Savings Bank*, 81 Mont. 222 (Mont. 1928), represents largely irrelevant caselaw in which the Montana Supreme Court held that a de facto corporation could not be collaterally attacked and that the parties who adopted the form could not be treated as partners. Despite Defendants' assertions, *Sun River* is not germane to the analysis here.

*MAS Associates, LLC v. Kortoki*, 465 Md. 457, 487-88 (Md. 2019) is distinguishable because it involved individuals whose payments were characterized as capital contributions "through" LLCs. Here, by contrast, Huertas and Paret formed the partnership first, *see e.g.,* Mot. Exs. 2-6, and then Huertas conducted business through entities under his respective control. Defendants' additional authorities are likewise distinguishable. *See e.g., Hooper v. Yoder*, 737 P.2d 852, 858 (Colo. 1987) ("when partners organize a corporation to operate the business of the partnership *and transfer the assets to the corporation*, the partnership is dissolved." (emphasis added)).

### 2. The Lending Exemption Does Not Apply Because DP Capital's Perpetual Revenue and Sale Participation Rights Are Equity Interests, Not Charges on a Loan

Defendants' reliance on *In re Washington Communications Group*, 18 B.R. 437 (Bankr. D.D.C. 1982) is likewise misplaced. In that case, the profit-sharing arrangement was explicitly tied to a loan and its option period; here, DP Capital's economic rights are perpetual and independent of the existence of a loan. Mot. Ex. 8 at 2-3, 27. Even if the borrower LLCs prepaid the loan in

8

full, DP Capital retained a perpetual right to half of all gross revenues and gross sale proceeds from the subject properties. The present case contains substantial additional evidence supporting partnership formation, including express partnership terminology, shared governance rights, integrated operational control, agreed profit allocation, buyout provisions, coordinated enterprise management, and continuing enterprise participation extending beyond repayment obligations. That structure materially exceeds the ordinary "charges on a loan" contemplated by D.C. Code § 29-602.02(c)(3)(E).

The Commercial Note did not merely grant contingent repayment rights tied to temporary indebtedness. It granted continuing participation in one-half of enterprise revenues and sale proceeds across a portfolio of properties, with those rights expressly surviving repayment of principal and interest and extinguishment of the lien itself. *Id.* Simultaneously, the related Holbrook Operating Agreement vested Huertas with sweeping authority over refinancing, encumbrance, sale, distributions, and operational governance concerning the enterprise properties. Mot. Ex. 10 at 4 (granting Huertas sole and absolute discretion). Those continuing participation rights and operational control provisions reflect precisely the type of ownership-like economics and managerial authority courts recognize as indicative of partnership participation rather than a conventional creditor relationship.

Accordingly, Defendants' attempt to reduce the relationship to a simple lender-borrower transaction ignores the governing agreements' continuing participation structure, operational controls, portfolio-wide economics, and integrated enterprise governance. Under D.C. law, those features constitute substantial evidence of co-ownership for profit notwithstanding the formal use of LLC vehicles and commercial financing instruments to carry out the partnership's business. *See also Southern Can Co. of Baltimore City v. Hartlove et al.*, 136 A. 624, 630 (Md. 1927) ("[C]are

must therefore be taken to discriminate between the cases of an alleged loan, with a share of the profits by way of interest, and a real partnership disguised as a loan … [and] the interest is usually to be found … in the powers of control of the alleged lender" and whether the purported lender possesses "any voice or part in controlling the management of the business ….").

### 3. Whether Other Members Exist in DP Capital or WCP Is Immaterial Because the Partnership Was Formed by Huertas and Paret Individually

According to the Huertas Declaration ("Huertas Dec."), Huertas is "not the sole member" of DP Capital or WCP. The declaration conspicuously fails to identify when those alleged other members' interests were acquired or whether those interests existed during the operative 2019-2020 transactions at issue. That omission is significant because Defendants simultaneously ask the Court to rely on the alleged multi-member status of these entities while withholding the underlying facts necessary to evaluate that claim.

Even assuming that other members exist, the partnership between Huertas and Paret is established by their personal conduct and writings, not solely by Huertas' control of DP Capital or WCP. The partnership formation emails and text messages were exchanged between Huertas and Paret, individually. *See e.g.,* Mot. Ex. 2 at 1 (Huertas' offer); Ex. 3 at 1 (Paret's acceptance); Ex. 4 at 1 (Mr. Huertas: "Profit 50/50 correct and agree with everything else in this email."); Ex. 5 at 4 (Mr. Huertas: "We will always be 51/49 decision making. Profit remains 50/50"); Ex. 6 at 2 ("Daniel Huertas will have 50% ownership of the properties and 51% in regards to control …"). The Motion seeks only a declaration that a partnership exists, not a determination of which specific assets belong to it.

10

**C. The *Beckman* Factors Are Satisfied and the Opposition's Attempts to Distinguish *Beckman* and *Queen* Rest on Distinctions D.C. Courts Have Already Rejected**

The Opposition argues that *Beckman* and *Queen* are inapplicable because those cases involved natural persons without LLCs, aligned interests rather than an adverse lender/borrower relationship, and no titled real property. Opp. at 24.

As to the LLC distinction, *Wright*, discussed *infra*, disposes of this argument. A partnership can exist notwithstanding the existence of a limited liability company formed by one of the parties as a "vehicle" to carry out the parties' business. 230 F.R.D. at 8. Partnerships can and do operate through LLCs. As to Defendants' "adverse interests" argument, Huertas and Paret were not merely adverse lender and borrower. They expressly agreed to be co-owners with shared profits, shared debt, and coordinated management, which is precisely the alignment *Beckman* requires. *See e.g.*, Mot. Exs. 3-6.

As to titled property, D.C. Code §29-602.04(d) creates only a rebuttable presumption that property titled in a partner's name is separate property. The statute does not preclude a finding of partnership, it addresses only the classification of assets, which is an issue reserved for the next phase of this litigation. Again, the Motion seeks only a declaration that a partnership exists, not a determination of which specific assets belong to it.

The *Beckman* Factors – profit sharing, control, loss sharing, and self-characterization – are overwhelmingly satisfied by the undisputed documentary record: (1) 50/50 profit split; (2) 51/49 decision-making control; (3) debt split 51/49; and Huertas' own characterization of distributions as "loan[s] to the partnership." Mot. Ex. 6 at 2.

Huertas' post hoc declaration cannot override his objective conduct. The declaration never identifies who exercised managerial authority over DP Capital or WCP during the relevant transactions. It does not deny Huertas controlled the entities operationally. It does not deny that he

negotiated the transactions, drafted the structures, directed the refinancing, controlled distributions, or exercised authority over the properties.

Likewise, Huertas' statements that he never intended to make a "binding proposal … through e-mail or text message" and never "intended to enter into any agreement with Mr. Paret through e-mail or text message", Huertas Dec. ¶¶5-6, are immaterial. Partnership formation turns on objective conduct and the totality of the circumstances, not subjective after the fact disclaimers regarding intent. *Beckman*, 579 A.2d at 628 ("Ultimately, then, whether a partnership exists is an issue of fact, turning less on the presence or absence of legal essentials than on the intent of the parties gathered from their agreement, conduct, and the circumstances surrounding their transactions."). Here, the governing agreements, coordinated enterprise structure, post loan repayment ongoing revenue participation rights, Huertas' operational control, and his repeated characterization and embrace of "the partnership" collectively constitute substantial, objective evidence of co-ownership for profit notwithstanding Huertas' subsequent disclaimers.

### D. The Opposition's Evidentiary Objections Fail Because Rule 56 Requires Only That Evidence Be Capable of Admission and the Opposition Concedes This Standard is Met

The Opposition argues that the Trustee's exhibits lack authentication because no affidavit or declaration was appended to the Motion. Under FRCP 56(c)(2) evidence need only be capable of "being presented in a form that would be admissible in evidence" and the Opposition itself concedes that "most of the exhibits to the Motion can" meet this standard. Opp. at 13.

The Opposition does not challenge the authenticity of the September 2019 emails and text messages between Huertas and Paret, the November 2019 Commercial Deed of Trust Note, or the Holbrook Operating Agreement, which are documents that independently establish partnership formation and the vehicles used for its operation. Huertas' emails and text messages constitute

12

admissions of a part opponent under Fed. Rule of Evidence 801(d)(2) and are therefore admissible, substantive evidence when offered against him and the affiliated entity Defendants.

### III. CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court (i) deny Defendants' request for summary judgment under FRCP 56 (f), (ii) grant the Trustee's Motion; and (iii) afford such other and further relief as may be just and proper.

DATED: May 15, 2026

Respectfully submitted,

**BLANK ROME LLP**

*/s/ John E. Lucian*
John E. Lucian #464560
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Tel: (215) 569-5500
john.lucian@blankrome.com

**BLANK ROME LLP**
Lisa Coyle (pro hac vice)
1271 Avenue of the Americas
New York, New York 10020
Tel: (212) 885-5592
lisa.coyle@blankrome.com

**TEMPLE LAW OFFICES**
Donald M. Temple #408749
2522-B Virginia Avenue, N.W.
Washington, DC 20037
Tel: (202) 628-1101
dtemplelaw@gmail.com

*Counsel for Wendall W. Webster, Chapter 7 Trustee for Charles Paxton Paret*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2026, a copy of the foregoing motion was served on all counsel of record by electronic filing.

*/s/ John E. Lucian*
John E. Lucian #464560